Electronically Filed - Jackson - Independence - May 17, 2023 - 04:57 PM

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **PATRICIA A. SIMS,** | ) | |
| **on behalf of herself and others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CLASS ACTION PETITION** |
| | ) | |
| **KAHRS LAW OFFICES, P.A.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION PETITION

COMES NOW, Plaintiff Patricia A. Sims ("Sims"), on behalf of herself and others similarly situated, by and through her undersigned counsel, and states and alleges as follows:

### NATURE OF THE CASE

1.      This is a proposed class action which seeks injunctive relief and damages on behalf of consumers whose personally identifiable information ("PII") was publicly disclosed by Kahrs Law Offices, P.A. ("KLO") in court filings, including their full bank account number and full routing number.

### PROCEDURAL HISTORY

2.      This case was previously filed in the District of Kansas, Case No. 22-2112-JWB-TJJ, on March 23, 2022. The case was dismissed without prejudice as to refiling on March 31, 2023 by the Court after the Court held that Plaintiff lacked Article III standing. Pursuant to 28 U.S.C. § 1367(d) and RSMo. § 516.230, this matter is now being filed in Jackson County, Missouri.

3.      Class discovery is complete; class certification has previously been fully briefed

**EXHIBIT**

**6**

and ready to be filed.

## TOLLING OF THE STATUTE OF LIMITATIONS

4.      Plaintiff's and the putative classes' claims have been tolled while the District of Kansas action was pending.

5.      28 U.S.C. § 1367(d) provides that the period of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Missouri law does so provide: RSMo. § 516.230 provides that a plaintiff who has a timely brought action dismissed without prejudice may "commence a new action . . . within one year . . .."

6.      Plaintiff's prior action in the District of Kansas was timely brought before expiration of the statute of limitations.

7.      As such, Plaintiff has commenced this action within a year of the dismissal of the District of Kansas action, thus making her claims timely. Further, under *American Pipe* tolling, the timely filing of a class action lawsuit tolls or pauses the statute of limitations for all members of the putative class.

## PARTIES

8.      Plaintiff Patricia A. Sims is a Missouri resident and consumer.

9.      Defendant KLO is a Kansas professional association. KLO can be served by serving its registered agent, Jim Spencer, at 1617 N Waterfront Parkway, Suite 400, Wichita, Kansas 67206.

## JURISDICTION & VENUE

10.      This Court has jurisdiction over these claims because, Defendant has submitted itself to the jurisdiction of the courts of this state by transacting business within the state pursuant

2

to RSMo. § 506.500.1.

11.     Venue in this Court is proper pursuant to RSMo. § 508.010.4 because Plaintiff was first injured in Jackson County, Missouri.

**FACTS COMMON TO ALL COUNTS**

12.     Defendant KLO is a debt collector which collects debts owed to others in Kansas and Missouri, and perhaps other surrounding states.

13.     One of KLO' clients is Lakshmi Finance, LLC d/b/a Advance Financial ("Advance Financial").

14.     Advance Financial is a lender who predominantly lends money online.  Its only brick-and-mortar locations are in Tennessee but, according to its website, it also lends in other states, including Kansas, Nebraska, and Missouri.[1]

15.     Advance Financial uses a substantially similar agreement with each of its consumers.

16.     In filing lawsuits to collect alleged debts on behalf of Advance Financial, KLO attaches a copy of the agreement to the petition as the basis on which the debt is allegedly owed.

17.     KLO filed approximately 1,000 lawsuits on behalf of Advance Financial in Missouri since 2020.

18.     KLO has filed a copy of the debtor's alleged Agreement on each one of those lawsuits.

19.     KLO did not make any redactions to those Agreements or take other precautions to seal the Agreement or increase security so as to limit access to the Agreement to parties and counsel of parties when it filed those Agreements.

---

[1] https://www.af247.com/online-loans/ (last accessed May 11, 2023).

20. KLO disseminated copies of the unredacted Agreements to process server(s) and/or a process service company.

21. Thus, KLO filed approximately 1,000 lawsuits in Missouri publicly disclosing debtors' PII.

22. Upon information and belief, KLO made similar public disclosures as to debtors' bank account and routing numbers in its Kansas filings on behalf of Advance Financial.

**PLAINTIFF PATRICIA A. SIMS**

23. In March 2018, Sims was concerned that she might not have enough funds available to cover the taxes on her house.

24. Due to that concern, Patricia decided to see if she would qualify for a loan and what the terms of such loan might be.

25. Sims found Advance Financial online and decided to initiate the loan application process in case she needed additional funds.

26. Sims filled out an application and was approved, but she never requested nor received any funds from Advance Financial, a fact which was admitted later at the final arbitration hearing on March 28, 2023 by Advance Financial's corporate representative.

27. Despite this, on or about March 24, 2021, Advance Financial, through its attorney and agent KLO, filed a lawsuit in Jackson County, Missouri (Case No. 2116-cv07115; hereinafter "the Lawsuit") against Sims seeking $4,047.42.

28. Sims was served with the petition and summons on July 5, 2021.

29. In filing the Lawsuit, KLO filed a petition along with Exhibit A, a copy of the purported Advance Financial Line of Credit Disclosure and Account Agreement ("Agreement").

30. This Agreement contains the full bank account number and routing number for

Sims' personal bank account.

31.     Additionally, this Agreement contains Sims' full name, address, and telephone number.

32.     KLO filed a complete, *unredacted* copy of the Agreement with the Court, meaning that KLO made Sims' personal and confidential information publicly available at a minimum to court staff, process servers, and anyone with credentials to access Missouri's case net system.

33.     Further, KLO had Sims personally served with the summons and petition, including a copy of the Agreement. This means that KLO disseminated the unredacted Agreement to a process server and/or a process service company.

34.     On or about July 12, 2021, Sims' counsel left a voicemail for Advance Financial's counsel to inform it that Sims was represented by an attorney. Sims' counsel also mailed Advance Financial's counsel a Notice of Representation and Preservation the same day.

35.     Approximately a week later, on or about July 19, 2021, Advance Financial proceeded to dismiss its lawsuit against Sims *without* prejudice, and without providing an explanation to Sims or Sims' counsel.

36.     Approximately three months after Advance Financial dismissed its lawsuit, Sims brought a lawsuit against Advance Financial in Jackson County, Missouri.

37.     After discovering her PII was filed in unredacted format, Sims' counsel informed Advance Financial that it had discovered it filed her Agreement in its initial lawsuit without taking precautions to protect her PII.

38.     Upon information and belief, Advance Financial informed KLO of this disclosure of PII. As a result of Sims' notice, KLO moved to seal the Agreement. However, this meant Sims' bank account number and routing number were publicly available as a result of Defendant's

conduct for nearly a year before the information was sealed by KLO.

39.    KLO has moved to seal similar Agreements in other cases on behalf of Advance Financial. However, KLO has not been successful in sealing the record in all cases where it filed unredacted copies of the Agreement. Therefore, certain consumers' PII remains exposed to this day.

40.    Ms. Sims' claims against Advance Financial relates to the malicious prosecution of her by Advance Financial and are separate and distinct from those claimed in this action which relate solely from the damages relating to the exposure of her PII.

## CLASS ACTION ALLEGATIONS

41.    Pursuant to Missouri Rule 52.08(b)(2), Plaintiff brings this action on behalf of herself and the following proposed class ("Class"):

> All persons against whom Kahrs Law Offices, P.A. filed a lawsuit in Missouri in which Kahrs Law Offices, P.A. filed court documents which included the person's Personally Identifiable Information, including but not limited to the complete and unredacted bank account number(s) and/or routing number(s), on or after March 24, 2019 through the date the Class is certified.

42.    "Class Period" shall thus be defined as on or after March 24, 2019 through the date a Class is certified.

43.    Excluded from the proposed Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned; that judge(s)' spouse; and members of the judge(s)' staff(s).

44.    **Numerosity**: As stated, Defendant has filed approximately 1,000 lawsuits on behalf of Advance Financial against Missouri debtors. Thus, the proposed class would comprise at least

1,000 individuals.

45. **Commonality and Predominance**: Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include:

    a. Whether Defendant filed a copy of the Agreement in a debt collection lawsuit without redacting the debtor's financial account information;

    b. Whether Defendant was negligent with regard to its filing of lawsuits;

    c. Whether the public disclosure of a debtor's private financial account number violates various state laws; and

    d. Whether Plaintiff and Class members are entitled to injunctive relief, monetary damages, restitution, declaratory relief, and/or other remedies.

46. **Typicality**: Plaintiff's claims are typical claims of members of the proposed Class. Plaintiff and the members of the proposed Class all reside in Missouri and were sued by Advance Financial for an alleged debt pursuant to an Agreement.

47. **Adequacy**: Plaintiff is an adequate representative of the proposed Class because her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class-action litigation and will prosecute this action vigorously on the Class members' behalf.

48. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of

managing many actions arising from the same issues, individualized litigation increases the delay and expense to all parties and the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT ONE:**
**Injunctive Relief**
**Plaintiff individually and on behalf of the proposed Class**

49.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

50.     Plaintiff brings this Count One individually and on behalf of the proposed Class. This injunction is, and should be considered, a public injunction.

51.     On behalf of herself and all Missouri consumers, Plaintiff seeks an injunction preventing KLO from disclosing consumer's personal bank account information in public filings now and in the future. To the extent KLO have previously disclosed consumer's personal bank account information in public filings, Plaintiff seeks an injunction requiring KLO to take actions to seal and/or increase security on such filings if not already completed.

52.     As a result of KLO' actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their PII has been publicly disseminated, such that they are at risk for identity theft and identity fraud.

53.     Further, Plaintiff and the putative class members have suffered a loss of privacy and have been deprived of the value of their PII.

54.     This harm far outweighs any conceivable damage to KLO that could arise from such injunction.

8

55.     If not enjoined, KLO will continue to injure the general public through its unlawful practices as alleged herein, which are directed at the consuming public, including Missouri residents.

56.     An injunction, if issued, would be well within the public interest in enforcing confidentiality of personally identifiable information and protecting consumers from an increased risk of identity theft.

57.     Plaintiff and the putative class have no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests the Court enter a preliminary and/or permanent injunction, directing Defendant to remedy the previous public filing of personally identifiable information and not to disclose such information in public filings now and in the future.

**COUNT TWO:**
**Negligence**
**Plaintiff individually and on behalf of the proposed Negligence Sub-Class**

58.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

59.     Plaintiff brings this Count Two individually and on behalf of the proposed Class.

60.     Pursuant to RSMo. § 509.520.1(2), KLO owed a duty to Plaintiff and the putative class members not to file any pleadings, attachments, or exhibits with the court that contained the "financial account number of any party."

61.     Missouri Supreme Court Operating Rule 2.05(c) defines "Personal information" to include "Financial institution account numbers, credit card numbers, personal identification numbers, or passwords used to secure accounts."

62.     Similarly, Missouri Supreme Court Operating Rule 2.02 requires redaction of personal information in filings and further provides that "the responsibility for any mandatory

redaction of personal information rests solely with counsel, the parties, or any other person filing the document."

63.     At the time KLO filed the Lawsuit and Agreement, KLO was required to "affirmatively certify compliance with the redaction requirements of this [Missouri Supreme Court Operating Rule 2.02]". Missouri Supreme Court Operating Rule 2.02(b).

64.     KLO breached its duty when it publicly filed the Agreement without redacting Plaintiff and the putative class members' bank account numbers and/or routing numbers.

65.     But for KLOs' negligence in failing to redact and/or seal Plaintiff and the putative class members' financial account number in the Agreement, Plaintiff and the putative class members would not be damaged.

66.     As a direct and proximate result of KLO's breach, Plaintiff and the putative class members have been damaged.

67.     Because of the clear statutory obligation, Kahr's conduct also constitutes negligence per se.

68.     Because KLO was required to "affirmatively certify" compliance with the redaction requirements, its conduct was at best grossly negligent.

69.     Plaintiff and the putative class members' actual damages include, but are not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety.

70.     As a result of KLO's actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their PII has been publicly disseminated, such that they are at risk for identity theft, identity fraud, and/or account takeover.

71.     Further, Plaintiff and the putative class members have suffered a loss of privacy

and have been deprived of the value of their PII.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

<u>**COUNT THREE:**</u>
**Violations of the Missouri Right to Financial Privacy Act**
**Plaintiff individually and on behalf of the proposed Missouri Sub-Class**

72.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

73.     Plaintiff brings this Count Three individually and on behalf of the proposed Class.

74.     Under RSMo. § 408.680, a financial institution, or officer, employee, or agent thereof shall not provide to any government authority access to the financial record of any customer.

75.     Plaintiff and the putative class members are a "customer" as defined by RSMo. § 408.675.2(1) as they each "utilized services of" a financial institution.

76.     Advance Financial is a "financial institution" as defined by RSMo. § 408.675.2(2). Additionally, all, or substantially all creditors on whose behalf KLO filed cases would qualify as a "financial institution."

77.     By acting as a debt collector on behalf of Advance Financial, KLO is an agent of Advance Financial.

78.     The Missouri Judiciary is a "government authority" as defined by RSMo. § 408.675.2(4).[2]

---

[2] https://www.mo.gov/search-results?mode=state_agencies.

79.     The Agreement is a "financial record" as defined by RSMo. § 408.675.2(3) because it is an original or copy of a record held by a financial institution pertaining to a customer's relationship with the financial institution.

80.     By publicly filing the Agreement with the Missouri Judiciary, KLO disclosed Plaintiff and the putative class members' financial records in violation of RSMo. § 408.680.

81.     Plaintiff and the putative class members are given a private cause of action by RSMo. § 408.696.

82.     As a result of this violation, Plaintiff and the putative class members are entitled to statutory damages of $1,000.00, their actual damages, and reasonable attorneys' fees and costs.

83.     As a result of KLO' actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their personally identifiable information has been publicly disseminated, such that they are at risk for identity theft and identity fraud.

84.     Further, Plaintiff and the putative class members have suffered a loss of privacy and have been deprived of the value of their PII.

85.     Plaintiff and the putative class members' actual damages include, but are not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety.

86.     Defendant's conduct was intentional, willful, wanton, fraudulent, and/or with reckless disregard to the rights of Plaintiff and the putative class members.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for her costs and reasonable attorneys' fees, and for other and further relief as may be just and proper

under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

## **DESIGNATION OF PLACE OF JURY TRIAL**

Plaintiff designates Independence, Missouri as the place for this case to be tried to a jury.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich      MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

***Attorneys for Plaintiff and
the Proposed Class***

Electronically Filed - Jackson - Independence - May 17, 2023 - 04:57 PM

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER**

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal Names (s):

| | | |
|---|---|---|
| Alisha Allen PPS23-0003 | Bridgette Hight PPS23-0074 | Samantha Powell PPS23-0143 |
| Sallie Bailey PPS23-0222 | James Hise PPS23-0075 | Curtiss Press PPS23-0145 |
| Carl Barnett PPS23-0007 | Jennifer Hyman PPS23-0082 | Kenneth Prewett PPS23-0146 |
| Thomas Bogue PPS23-0015 | Patrick D Jones PPS23-0086 | Benjamin Purser PPS23-0148 |
| Scott Brady PPS23-0018 | Chelsey Ketron PPS23-0087 | Mark Rauss PPS23-0314 |
| Randy Burrow PPS23-0022 | Leisa Ketron PPS23-0088 | Kathy Rulo PPS23-0165 |
| Gary Burt PPS23-0023 | Brent Kirkhart PPS23-0089 | Edna Russell PPS23-0166 |
| Steven Butcher PPS23-0234 | Janice Kirkhart PPS23-0090 | Westley Seifert PPS23-0168 |
| Bobby Calvert PPS23-0026 | Tyler Kirkhart PPS23-0091 | Joe Sherrod PPS23-0169 |
| Carolyn Champlin PPS23-0029 | Cody Kyser PPS23-0093 | Thomas Skinner PPS23-0174 |
| Matthew Church PPS23-0350 | Kenneth Marshall PPS23-0454 | Anthony Spada PPS23-0179 |
| Glen Cobb PPS23-0030 | Michael C Meador PPS23-0111 | Barbara Steil PPS23-0182 |
| Monica Cobbs PPS23-0031 | Maria Meier PPS23-0402 | Jessica Stone PPS23-0406 |
| Kory Crawshaw PPS23-0448 | Heather Merfen PPS23-0115 | Randy Stone PPS23-0184 |
| David Dice PPS23-0353 | Matthew Millhollin PPS23-0117 | Sonja Stone PPS23-0185 |
| Christopher Drummond PPS23-0249 | Corbin Monie PPS23-0118 | Daniel Swinney PPS23-0190 |
| Anthony Dunne PPS23-0251 | Jason Moody PPS23-0456 | Ryan E Weekley PPS23-0199 |
| William Ferrell PPS23-0258 | Wayne Mullen PPS23-0457 | Ryan M Weekley PPS23-200 |
| Brandon Fisher PPS23-0053 | Jeremy Nicholas PPS23-0119 | Robert Weishar PPS23-0201 |
| James Frago PPS23-0054 | Michael Noble PPS23-0123 | Andrew Wickliffe PPS23-0203 |
| John Frago PPS23-0055 | Greg Noll PPS23-0124 | Gregory Willing PPS23-0206 |
| Bradley Gordon PPS23-0059 | Cody Patton PPS23-0133 | Conni Wilson PPS23-0208 |
| Thomas Gorgen PPS23-0060 | Mike Perry PPS23-0135 | Lana Wiseman PPS23-0209 |
| Daniel Grubbs PPS23-0394 | Carrie Pfeifer PPS23-0137 | Andrew Wheeler PPS23-0462 |
| Darnell Hamilton PPS23-0066 | Elizabeth Phillips PPS23-0309 | Greg Zotta PPS23-0344 |
| James Hannah PPS23-0067 | Craig Poese PPS23-0138 | |
| Rufus Harmon PPS23-0358 | Bill Powell PPS23-0141 | |
| Stephen Heitz PPS23-0269 | Dee Powell PPS23-0142 | |

Electronically Filed - Jackson - Independence - May 17, 2023 - 04:57 PM

who are qualified persons to serve process, are not parties to the case and are not less than eighteen (18) years of age, as private process servers in the above cause to serve process in this case.

Respectfully submitted,

/s/ Jenilee V. Zentrich
Bryce B. Bell          MO#66841
Jenilee V. Zentrich    MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
**Attorneys for Plaintiffs**

Electronically Filed - Jackson - Independence - May 17, 2023 - 04:57 PM

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, | ) | |
| **on behalf of herself and others** | ) | |
| **similarly situated,** | ) | |
| | ) | **Case No.** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal Names (s):

| | | |
|---|---|---|
| Alisha Allen PPS23-0003 | Bridgette Hight PPS23-0074 | Samantha Powell PPS23-0143 |
| Sallie Bailey PPS23-0222 | James Hise PPS23-0075 | Curtiss Press PPS23-0145 |
| Carl Barnett PPS23-0007 | Jennifer Hyman PPS23-0082 | Kenneth Prewett PPS23-0146 |
| Thomas Bogue PPS23-0015 | Patrick D Jones PPS23-0086 | Benjamin Purser PPS23-0148 |
| Scott Brady PPS23-0018 | Chelsey Ketron PPS23-0087 | Mark Rauss PPS23-0314 |
| Randy Burrow PPS23-0022 | Leisa Ketron PPS23-0088 | Kathy Rulo PPS23-0165 |
| Gary Burt PPS23-0023 | Brent Kirkhart PPS23-0089 | Edna Russell PPS23-0166 |
| Steven Butcher PPS23-0234 | Janice Kirkhart PPS23-0090 | Westley Seifert PPS23-0168 |
| Bobby Calvert PPS23-0026 | Tyler Kirkhart PPS23-0091 | Joe Sherrod PPS23-0169 |
| Carolyn Champlin PPS23-0029 | Cody Kyser PPS23-0093 | Thomas Skinner PPS23-0174 |
| Matthew Church PPS23-0350 | Kenneth Marshall PPS23-0454 | Anthony Spada PPS23-0179 |
| Glen Cobb PPS23-0030 | Michael C Meador PPS23-0111 | Barbara Steil PPS23-0182 |
| Monica Cobbs PPS23-0031 | Maria Meier PPS23-0402 | Jessica Stone PPS23-0406 |
| Kory Crawshaw PPS23-0448 | Heather Merfen PPS23-0115 | Randy Stone PPS23-0184 |
| David Dice PPS23-0353 | Matthew Millhollin PPS23-0117 | Sonja Stone PPS23-0185 |
| Christopher Drummond PPS23-0249 | Corbin Monie PPS23-0118 | Daniel Swinney PPS23-0190 |
| Anthony Dunne PPS23-0251 | Jason Moody PPS23-0456 | Ryan E Weekley PPS23-0199 |
| William Ferrell PPS23-0258 | Wayne Mullen PPS23-0457 | Ryan M Weekley PPS23-200 |
| Brandon Fisher PPS23-0053 | Jeremy Nicholas PPS23-0119 | Robert Weishar PPS23-0201 |
| James Frago PPS23-0054 | Michael Noble PPS23-0123 | Andrew Wickliffe PPS23-0203 |
| John Frago PPS23-0055 | Greg Noll PPS23-0124 | Gregory Willing PPS23-0206 |
| Bradley Gordon PPS23-0059 | Cody Patton PPS23-0133 | Conni Wilson PPS23-0208 |
| Thomas Gorgen PPS23-0060 | Mike Perry PPS23-0135 | Lana Wiseman PPS23-0209 |
| Daniel Grubbs PPS23-0394 | Carrie Pfeifer PPS23-0137 | Andrew Wheeler PPS23-0462 |
| Darnell Hamilton PPS23-0066 | Elizabeth Phillips PPS23-0309 | Greg Zotta PPS23-0344 |
| James Hannah PPS23-0067 | Craig Poese PPS23-0138 | |
| Rufus Harmon PPS23-0358 | Bill Powell PPS23-0141 | |
| Stephen Heitz PPS23-0269 | Dee Powell PPS23-0142 | |

**<u>ORDER</u>**

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is granted and the above-named individuals are hereby approved and appointed to serve process in the above-captioned matter.

Date: _____          _____

                                                Judge or Clerk

Electronically Filed - Jackson - Independence - May 17, 2023 - 04:57 PM

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **PATRICIA A. SIMS,** | ) | |
| **on behalf of herself and others** | ) | |
| **similarly situated,** | ) | |
| | ) | **Case No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KAHRS LAW OFFICES, P.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER FOR APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER**</u>

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal Names (s):

| | | |
|---|---|---|
| Alisha Allen PPS23-0003 | Bridgette Hight PPS23-0074 | Samantha Powell PPS23-0143 |
| Sallie Bailey PPS23-0222 | James Hise PPS23-0075 | Curtiss Press PPS23-0145 |
| Carl Barnett PPS23-0007 | Jennifer Hyman PPS23-0082 | Kenneth Prewett PPS23-0146 |
| Thomas Bogue PPS23-0015 | Patrick D Jones PPS23-0086 | Benjamin Purser PPS23-0148 |
| Scott Brady PPS23-0018 | Chelsey Ketron PPS23-0087 | Mark Rauss PPS23-0314 |
| Randy Burrow PPS23-0022 | Leisa Ketron PPS23-0088 | Kathy Rulo PPS23-0165 |
| Gary Burt PPS23-0023 | Brent Kirkhart PPS23-0089 | Edna Russell PPS23-0166 |
| Steven Butcher PPS23-0234 | Janice Kirkhart PPS23-0090 | Westley Seifert PPS23-0168 |
| Bobby Calvert PPS23-0026 | Tyler Kirkhart PPS23-0091 | Joe Sherrod PPS23-0169 |
| Carolyn Champlin PPS23-0029 | Cody Kyser PPS23-0093 | Thomas Skinner PPS23-0174 |
| Matthew Church PPS23-0350 | Kenneth Marshall PPS23-0454 | Anthony Spada PPS23-0179 |
| Glen Cobb PPS23-0030 | Michael C Meador PPS23-0111 | Barbara Steil PPS23-0182 |
| Monica Cobbs PPS23-0031 | Maria Meier PPS23-0402 | Jessica Stone PPS23-0406 |
| Kory Crawshaw PPS23-0448 | Heather Merfen PPS23-0115 | Randy Stone PPS23-0184 |
| David Dice PPS23-0353 | Matthew Millhollin PPS23-0117 | Sonja Stone PPS23-0185 |
| Christopher Drummond PPS23-0249 | Corbin Monie PPS23-0118 | Daniel Swinney PPS23-0190 |
| Anthony Dunne PPS23-0251 | Jason Moody PPS23-0456 | Ryan E Weekley PPS23-0199 |
| William Ferrell PPS23-0258 | Wayne Mullen PPS23-0457 | Ryan M Weekley PPS23-200 |
| Brandon Fisher PPS23-0053 | Jeremy Nicholas PPS23-0119 | Robert Weishar PPS23-0201 |
| James Frago PPS23-0054 | Michael Noble PPS23-0123 | Andrew Wickliffe PPS23-0203 |
| John Frago PPS23-0055 | Greg Noll PPS23-0124 | Gregory Willing PPS23-0206 |
| Bradley Gordon PPS23-0059 | Cody Patton PPS23-0133 | Conni Wilson PPS23-0208 |
| Thomas Gorgen PPS23-0060 | Mike Perry PPS23-0135 | Lana Wiseman PPS23-0209 |
| Daniel Grubbs PPS23-0394 | Carrie Pfeifer PPS23-0137 | Andrew Wheeler PPS23-0462 |
| Darnell Hamilton PPS23-0066 | Elizabeth Phillips PPS23-0309 | Greg Zotta PPS23-0344 |
| James Hannah PPS23-0067 | Craig Poese PPS23-0138 | |
| Rufus Harmon PPS23-0358 | Bill Powell PPS23-0141 | |
| Stephen Heitz PPS23-0269 | Dee Powell PPS23-0142 | |

**ORDER**

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is granted and the above-named individuals are hereby approved and appointed to serve process in the above-captioned matter.

Date: _____  05/18/2023 _____
DEPUTY COURT ADMINISTRATOR



# CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

308 W KANSAS
INDEPENDENCE, MISSOURI 64050

**BEVERLY A. NEWMAN**
Court Administrator

**ANTONIA CRAIG**
Director of Civil Records

MAY 18, 2023

ANDREW BAILEY, Attorney General
Supreme Court Building
PO Box 899
Jefferson City, Missouri  65102

RE :   PATRICIA A SIMS V KAHRS LAW OFFICES, P.A.

Case No:  2316-CV13284

Enclosed is a copy of the petition filed in the above case.  You are being notified of this action in accordance with Section 407.25 R.S.Mo.

COURT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

_____
Clerk

Enclosure
Mc:  Case File Folder

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

PATRICIA A SIMS,

                    PLAINTIFF(S),                      CASE NO.  2316-CV13284
VS.                                                    DIVISION 2

KAHRS LAW OFFICES, P.A.,

                    DEFENDANT(S).

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE**
**AND ORDER FOR MEDIATION**

_____

     NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **KENNETH R GARRETT III** on **18-SEP-2023** in **DIVISION 2** at **08:30 AM**.  All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting.  Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file.  All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at underlinewww.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

     A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2.  The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS.  Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

     At the Case Management Conference, counsel should be prepared to address at least the following:

     a.     A trial setting;

     b.     Expert Witness Disclosure Cutoff Date;

     c.     A schedule for the orderly preparation of the case for trial;

     d.     Any issues which require input or action by the Court;

     e.     The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

**/S/ KENNETH R GARRETT III**
KENNETH R GARRETT III**, Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was electronic noticed, faxed, emailed and/or mailed or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
BRYCE BRUCE BELL, 2600 Grand Blvd, SUITE 580, KANSAS CITY, MO 64108

JENILEE VIOLA ZENTRICH, 2600 GRAND BLVD, SUITE 580, KANSAS CITY, MO 64108

Defendant(s):
KAHRS LAW OFFICES, P.A.

Dated: 18-MAY-2023

BEVERLY A. NEWMAN
Court Administrator



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 2316-CV13284 |
| Plaintiff/Petitioner:<br>PATRICIA A SIMS | Plaintiff's/Petitioner's Attorney/Address:<br>JENILEE VIOLA ZENTRICH<br>2600 GRAND BLVD<br>SUITE 580<br>KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>KAHRS LAW OFFICES, P.A. | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Other Tort | |

vs.

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: KAHRS LAW OFFICES, P.A.
                    Alias:

RA; JIM SPENCER
1617 N WATERFRONT PARKWAY, 400
WICHITA, KS 67206

# PRIVATE PROCESS SERVER

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*JACKSON COUNTY*

<u>18-MAY-2023</u>
Date

_____
Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
☐   delivering a copy of the summons and petition to the Defendant/Respondent.
☐   leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
☐   (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
☐   other _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Subscribed and sworn to** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
                    ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                       (use for out-of-state officer)
*(Seal)*            ☐ authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

Case 4:24-cv-00347-FJG   Document 1-7   Filed 05/16/24   Page 23 of 240

## Directions to Officer Making Return on Service of Summons

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

Case 4:24-cv-00347-FJG    Document 1-7    Filed 05/16/24    Page 24 of 240

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

6/2020

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | Case No. 2316-CV13284 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

## REQUEST FOR SUMMONS FOR ENTRY

COMES NOW Plaintiffs, by and through their attorneys of record, and request a Summons for

Entry to be served via email to Defendant's counsel, Brittain McClurg, bmcclurg@mwcattorneys.com,

of Morrow Willnauer Church, LLC,  8330 Ward Pkwy #300, Kansas City, MO 64114.  Additional

documents to be served;  Notice of Case Management Conference and Class Action Petition.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich     MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and correct copy of the foregoing document was filed with the Court's CM/DCF e0Filing system on May 19, 2023 and thereby served on all attorneys of records.

*/s/ Jenilee V. Zentrich*

Electronically Filed - Jackson - Independence - May 19, 2023 - 08:59 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 2316-CV13284 |
| Plaintiff/Petitioner:<br>PATRICIA A SIMS | Plaintiff's/Petitioner's Attorney/Address<br>JENILEE VIOLA ZENTRICH<br>2600 GRAND BLVD<br>SUITE 580<br>KANSAS CITY, MO 64108 |
| vs. | |
| Defendant/Respondent:<br> KAHRS LAW OFFICES, P.A. | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** KAHRS LAW OFFICES, P.A.

Alias:

# FOR ENTRY

**C/O BRITTAIN MCCLURG**
**8330 WARD PARKWAY #300**
**KANSAS CITY, MO 64114**



*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

22-MAY-2023
Date

Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____(title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
          Printed Name of Sheriff or Server                                    Signature of Sheriff or Server

*(Seal)*        **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                              Date                                      Notary Public

| | |
|---|---|
| **Sheriff's Fees** | |
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCS) *For Court Use Only:* Document Id # 23-SMCC-5723   1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:24-cv-00347-FJG   Document 1-7   Filed 05/16/24   Page 28 of 240

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County

Electronically Filed - JACKSON - INDEPENDENCE - July 19, 2023 - 11:57 AM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2316-CV13284 |
| vs. | ) ) | |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS</u>

COMES NOW Defendant Kahrs Law Offices, P.A. ("Defendant"), by and through counsel, and pursuant to Rule 55.27(b)(6) requests this Court's Order dismissing Plaintiff's entire cause of action because this Court lacks authority to adjudicate Plaintiff's claim for a public injunction (Count I) and because Plaintiff fails to state a claim upon which relief can be granted as to her claims for injunctive relief, negligence, and violations of the Missouri Right to Financial Privacy Act "MRFPA") (Counts I, II, and III). In support of its Motion, Defendant states:

### Plaintiff's Allegations

In general, Plaintiff alleges that Defendant is a law firm which represents Advance Financial and that during its representation of Advance Financial, Defendant filed a suit against Patricia Sims. Petition at ¶¶ 13, 27. In filing this suit, Plaintiff alleges that Defendant filed an exhibit containing Plaintiff's bank routing number and bank account number without redaction. Petition at ¶¶ 29-32. Plaintiff admits the exhibit has been sealed. Petition at ¶¶ 29, 30, 38. According to Plaintiff, the exhibit has been sealed for more than fifteen months; yet, she does not allege any actual injury or any misuse of that account information. Petition at ¶¶ 27, 29, 38. Plaintiff has filed three causes of actions set forth in three counts: Count I seeks injunctive relief

prohibiting Defendant from filing unredacted account information in the future and to take measures to seal unredacted account information; Count II is a claim for negligence alleging that Defendant breached its duty to Plaintiff by including her unredacted account information in a court filing; and Count III is a claim alleging that Defendant violated the MRFPA by providing unredacted account information to the Missouri judiciary. All three claims fail as a matter of law.

<strong>Standard for Dismissal</strong>

When reviewing a motion to dismiss, "[t]he Court treats the facts contained in the petition as true and in the light most favorable to the plaintiff." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 915 (Mo. banc 2016). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." *Id*.

**I.     This Court lacks authority to adjudicate Count I of Plaintiff's Petition seeking injunctive relief because Sims' lacks standing, her claim is moot, and she fails to state a claim upon which relief can be granted.**

In *J.C.W. ex rel. Webb v. Wyciskall*a, 275 S.W.3d 249 (Mo. banc 2009), the Court explained that the concepts of standing and ripeness are better understood as a matter of justiciability rather than a matter of subject matter jurisdiction. *Mo. State Conf. of the NAACP v. Ashcroft*, 633 S.W.3d 843, 847 (Mo. App. W.D. 2021). "Justiciability is a 'prudential' rather than a jurisdictional doctrine and, prior to addressing the substantive issues [of a case], [a court] must determine whether a case meets the requirements for a justiciable controversy." *Id.* "A justiciable controversy exists where (1) the plaintiff has a legally protectable interest, (2) a substantial controversy exists between genuinely adverse parties, and (3) that controversy is ripe for judicial determination." *Id.* Furthermore, mootness implicates the justiciability of a controversy and "[w]hen an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Id.*

2

### A. Plaintiff lacks standing to seek injunctive relief on behalf of herself and the putative class.

In applying *Webb*, the Eastern District Court of Appeals held that standing relates to the court's authority to render a judgment and cannot be waived. *Eaton v. Doe*, 563 S.W.3d 745, 747 (Mo. App. E.D. 2018). A plaintiff must establish standing before the Court can decide the case on the merits. *Id.* "Generally, regarding standing, '[t]he issue is whether the plaintiff has a pecuniary or personal interest *directly at issue* and subject to immediate or prospective *consequential* relief.'" *Id.* (citing *Nixon v. Schweich*, 408 S.W.3d 774, 777 (Mo. banc 2016) (emphasis added). Thus, the Plaintiff bears the burden to establish, at the outset, that she has no adequate remedy at law and *irreparable harm will result if the injunction is not granted.*" *Id.* (emphasis added).

In Count I of the Petition, Ms. Sims, on behalf of other similarly situated individuals, seeks a public injunction "preventing [Defendant] from disclosing consumer's personal bank account information in public filings now and in the future." Petition at ¶ 51. Plaintiff further seeks "an injunction requiring KLO to take actions to seal and/or increase security on such filings *if not already completed.*" *Id.* However, this Court lacks authority to provide injunctive relief in the instant case because Ms. Sims lacks standing to seek injunctive relief. By her own admission, "[Defendant] moved to seal the Agreement [in Plaintiff's case]." Petition at ¶ 38. Plaintiff further alleges that "[Defendant] has moved to seal similar Agreements in other cases on behalf of Advance Financial." Petition at ¶ 39. As such, Plaintiff's financial information has already been sealed, and therefore, Plaintiff has no personal interest in seeking an injunction requiring Plaintiff to "take actions to seal and/or increase security" on related filings on her behalf or any other individuals' behalf. Furthermore, Plaintiff cannot establish that she faces irreparable harm if the injunction is not granted, because her information has already been sealed. For these reasons, Plaintiff's claim for injunctive relief is not justiciable, and this Court should dismiss Count I.

Electronically Filed - JACKSON - INDEPENDENCE - July 19, 2023 - 11:57 AM

**B.    Plaintiff's claim for injunctive relief is moot.**

"A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, *would not have any practical effect* upon any then existing controversy." *Humane Society of United States v. State*, 405 S.W.3d 532, 535 (Mo. banc 2013) (emphasis added). For the reasons stated previously, the Court cannot grant Plaintiff effective relief because her request for an injunction requiring Plaintiff to seal her records has already been accomplished and her case has been dismissed. Petition at ¶¶ 35, 37.

**C.    Plaintiff's claim for injunctive relief fails to state a claim upon which relief can be granted.**

Injunctive relief is a "harsh remedy which is to be used sparingly and only in clear cases." *Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 585 (Mo. App. E.D. 2006). "An indispensable requirement for obtaining injunctive relief is the wrongful and injurious invasion of some legal right existing in the plaintiff." *Id*. "A request for injunctive relief must be based on a *real apprehension* that future acts are not only threatened but will in *all probability be committed*." *Camden Cnty. v. Lake of the Ozarks Council*, 282 S.W.3d 850, 858 (Mo. App. S.D. 2009) (emphasis added); *accord A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857 (Mo. App. W.D. 1986).

Rule 55.05 of the Missouri Rules of Civil Procedure require that a pleading "shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief . . ." While a petition "need not plead evidentiary or operative facts showing an entitlement to the relief sought, *it must plead ultimate facts demonstrating such entitlement*." *Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 560 (Mo. App. W.D. 2005) (emphasis added). Because plaintiffs cannot merely assert conclusions, "[c]ourts disregard conclusions *not supported by facts* in determining whether a petition states a cause of action." *Id*. (emphasis added). Plaintiff pleads in conclusory fashion

4

that: "If not enjoined, [Defendant] will continue to injure the general public through its unlawful practices as alleged herein, which are directed at the consuming public, including Missouri residents." Petition at ¶ 55. In fact, Plaintiff readily admits that as soon as Defendant became aware of the court filings containing unredacted information, Defendant "move to seal the Agreement." Petition at ¶ 38. Additionally, the underlying suit was dismissed. Petition ¶ 35. As such, Plaintiff has not plead any facts to demonstrate a *real apprehension* by Ms. Sims that her account information is in *all probability* to be refiled. Therefore, Plaintiff fails to state a claim upon which relief can be granted as to her request for personal injunctive relief.

Plaintiff also seeks a public injunction, but Plaintiff fails to demonstrate any facts to demonstrate that any member of the general public has a *real apprehension* that Defendant is likely to disclose their financial information or that Defendant will in *all probability* file such information in the future. In contrast, Plaintiff has pleaded facts that belie any support that such apprehension exists. Specifically, Plaintiff admits that: "[Defendant] has moved to seal similar Agreements in other cases on behalf of Advance Financial. . . ." Petition at ¶ 39. Instead, Plaintiff relies on a conclusory allegation that: "[Defendant] will continue to injure the general public through its unlawful practices," but Plaintiff does not plead any facts to support this conclusion. Therefore, Plaintiff fails to state a claim for public injunctive relief.

### D. Conclusion

Accordingly, this Court should dismiss Plaintiff's claim for injunctive relief under Count I because Plaintiff lacks standing, her claim is moot, and/or she fails to state a claim upon which relief can be granted.

**II.    Plaintiff's claim for negligence set forth in Count II of her Petition should be dismissed for failure to state a claim upon which relief can be granted.**

To prevail on a claim of negligence, Plaintiff must plead four essential elements: "(1) the existence of a legal duty owed to the plaintiff, (2) breach of that duty through a negligent act by the defendant, (3) proximate causation between the breach and the resulting injury, and (4) resulting damages." *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo. App. W.D. 2004). In the instant case, Plaintiff fails to allege any facts to support she has sustained damages, and therefore, her claim must fail as a matter of law.

Additionally, Plaintiff has made a claim for "garden variety" emotional distress "including but not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety." Petition at ¶ 69. However, the Supreme Court of Missouri has made clear that: "[w]here the plaintiff is a direct victim of the defendant's negligence and seeks damage for emotional distress, *the plaintiff is required to prove two additional elements*: (1) the defendant should have realized that [its] conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be *medically diagnosable* and must be of sufficient severity *so as to be medically significant*." *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008) (citing *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. banc 1983)) (emphasis added); accord *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388 (8th Cir. 1992); *State ex rel. Benz v. Blackwell*, 716 S.W.2d 270 (Mo. App. E.D. 1986).  In *Detling v. Edelbrock*, 671 S.W.2d 265, 268 (Mo. banc 1984), tenants filed suit against their landlord alleging their dwelling was uninhabitable and sought damages for their "enormous annoyance, discomfort, frustration, mental anxiety and mental distress." The Court held that "[s]uch damages are, of course, compensable *in certain circumstances*[,]" reiterated the holding in *Bass*, and affirmed the dismissal of those claims because the tenants' amended petition "reveal[ed] no allegations that satisfy either the physical

6

injury required by *Williams* or the medically significant or diagnosable mental injury required by *Bass v. Nooney*." *Id*. Because Plaintiff has not alleged that Defendant's conduct involved an unreasonable risk of causing emotional distress nor that her emotional distress is medically diagnosable or is of sufficient severity to be medically significant, Plaintiff fails to state a claim for emotional distress.

Furthermore, Plaintiff alleges that she has "suffered and will continue to suffer severe and irreparable harm and injury in that [her routing and account number] has been publicly disseminated, such that they are at *risk* for identity theft, identity fraud, and/or account takeover." Petition at ¶ 70. (emphasis added). Plaintiff further alleges that she has been deprived of the value of [her routing and account number]. Petition at ¶ 71. However, the mere risk of future misconduct is insufficient to support a claim of damages.

In *Bray v. Brooks*, 41 S.W.3d 7, 9 (Mo. App. W.D. 2001), a real estate broker, Bray, drafted a sales contract, an addendum, a corporate resolution authorizing the sale of corporate assets, a promissory note, a security agreement to the promissory note, a real estate lease, and a covenant not to compete as part of a real estate transaction. Bray was not an attorney, and the sellers, the Brookses refused to pay portions of Bray's commission. *Id*. at 10. Bray sued for breach of contract, and the Brookses filed a counterclaim asserting that Bray had engaged in the unauthorized practice of law and asserted that Bray had negligently drafted some of the documents. *Id*. at 10-11. While Bray was found liable for the unauthorized practice of law, the Court of Appeals dismissed the negligence claim because the buyers were making payments under the promissory note. The Court held that:

> A review of [the Brookses'] counterclaim indicates a failure to plead the occurrence of any damage; in fact, the pleading specifically alleges that *there is only the possibility of future damage* if the [buyers] discontinue the deferred payments. The fact of damage is an essential element of a negligence claim. This

7

portion of the counterclaims fails to state a claim upon which relief can be granted. Because, in this case, *damages have not yet accrued*, and *may never accrue in the future*, the cause of action for negligence was filed prematurely.

*Id*. at 15.

Even if the court determines that the *risk of future misuse* is sufficient to support a claim of damages in this case, Plaintiff's statement that she "has suffered and will continue to suffer severe and irreparable harm and injury in that her [account information] has been publicly disseminated, such that [she is] at risk for identity theft, identity fraud, and/or account takeover," is nothing more than a conclusory statement. As stated previously, courts disregard conclusory statements because a petition must plead ultimate facts to support its claims. *Williams*, 174 S.W.3d at 560; Mo. Sup. Ct. R. 55.05.

Plaintiff alleges that Defendant disseminated the unredacted account information to: "court staff, process servers, and anyone with credentials to access Missouri's case net system." Petition ¶ 32, and ¶ 33 (one unidentified process server). Plaintiff does not identify the specific court staff or process servers that have actually seen the unredacted account information, or *even allege*, that any individual has seen the information. *See* Petition generally. Likewise, Plaintiff does not identify anyone with Case.net credentials that accessed the relevant court filing and actually saw the unredacted account information. *See* Petition generally. Furthermore, Plaintiff does not allege that any of these individuals have misused Ms. Sims' financial information or that any of these individuals are likely to misuse Ms. Sims' financial information. Plaintiff's hypothetical damages, pleaded without any factual basis, are insufficient to support a claim of negligence.

Because Plaintiff merely asserts that she is *at risk* of identity theft, and as such, her cause of action has not yet accrued and may never accrue in the future, this Court should dismiss Count II of Plaintiff's Class Action Petition for failure to state a claim upon which relief can be granted.

8

III.    **Plaintiff's claim for violations of the MRFPA set forth in Count III of her Petition should be dismissed for failure to state a claim upon which relief can be granted.**

Section 408.680.1 precludes a financial institution, or officer, or agent thereof, from providing "to any government authority access to the financial record of any customer except in accordance with the provisions of [the MRFPA.]" As such, to establish a claim for a violation of the MRFPA, Plaintiff must establish that: (1) Defendant was a financial institution or officer or agent thereof, (2) Defendant provided access to a financial record to a "government authority," and (3) the provision of the financial record was not authorized by section 408.675 to 408.700. At a minimum, Plaintiff fails to satisfy both the second and third elements.

A.    **The Missouri judiciary is not a "government authority" as defined by Section 408.675.2(4)**.

Section 408.675.2(4) defines "government authority" as "any agency or department of the state of Missouri or any agent thereof[.]" However, the Missouri judiciary is neither an "agency" nor "department" of the state. *In S.M.H. v. Schmitt*, 618 S.W.3d 531, 534 (Mo. banc 2021), the Court interpreted Section 105.711, a statute relating to the State Legal Expense Fund, and whether Missouri school districts were "state agencies." In doing so, the Court held that when a statute does not provide a definition of "agency," the Court will give the word its "plain and ordinary meaning as derived from the dictionary." *Id*. (citing *State v. Stewart*, 560 S.W.3d 531, 534 (Mo. banc 2018)). The Court noted that "agency" as defined in Webster's Third New International Dictionary was defined as "a department or other administrative unit of a government." However, the Court further clarified that "'state agency' or 'agency of the state' *in statutory and legal terminology* 'often refers to a division or department of state government performing (typically) *the functions of the executive branch* of state government." *Id*. (quoting *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 815 (Mo. App. W.D. 2011)). The Court ultimately concluded that school

9

districts are not part of the *executive branch* of state government, and therefore was not included in the definition provided under the Legal Expense Fund. *Id*.

Similarly, in *P.L.S. ex rel. Shelton*, when addressing the definition of "agency" the Court held that: "it is appropriate to take into consideration statues involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." *P.L.S ex rel. Shelton*, 360 S.W.3d at 815 (quoting *Citizens Elec. Corp. v. Dir. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989)). The Court relied on other statutes providing definitions for "agency." *Id*. at 815-816. Section 33.750(3)(6) defines "state agency" as "an authority, board, branch, commission, committee, department, division or other instrumentality of the *executive branch* of state government." *Id*. at 815 (emphasis in original). Furthermore, the Section 36.020(1) definition of "agency" specifically excludes "offices of the elected officials, the general assembly, *the judiciary* and academic institutions. *Id*. (emphasis added). Additionally, "state agency" as defined by section 536.010(8) is "each board, commission, department, officer or other administrative office or unit of the state *other than* the general assembly, *the courts*, the governor, or a political subdivision of the state, existing under the constitution or statute, and authorized by the statute to make rules or to *adjudicate contested cases*." *Id*. at 815 n.13 (emphasis added).

The sole authority that Plaintiff provides that the Missouri judiciary is a "state agency" is a reference to a government website. However, this citation is neither persuasive nor authoritative as there is no precedent authorizing Courts to look to governmental websites when interpreting statutes. Instead, the Courts must look to definitions codified in Missouri Statutes. After carefully researching this issue, Defendant is unaware of a single statute promulgated by the Missouri

General Assembly that includes the Missouri judiciary in the definition of "agency" or "agency of the state."

If the Court finds that the definition of "government authority" is ambiguous, then the Court must look to the canons of statutory construction. *Mo. State Conf. of the NAACP v. State*, 563 S.W.3d 138, 150 (Mo. App. W.D. 2018). In doing so, the Court must "presume every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Id*. (citing *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017).

Section 408.693.13 of the MRFPA provides that:

> Nothing in [the MRFPA] sections 408.675 to 408.700 shall preclude a financial institution, as an incident to perfecting a security interest or proving a claim in bankruptcy, or collecting on a debt owed to the financial institution itself or in its role as a fiduciary, from providing copies of any financial record relevant to such action *to any court of competent jurisdiction or government authority*. . . .

(emphasis added). The legislature clearly distinguishes "courts of competent jurisdiction" from "government authorities." Missouri Courts have held that "[t]he disjunctive 'or' in its ordinary sense marks an alternative generally corresponding to the term 'either.'" *State v. Graham*, 149 S.W.3d 465, 467 (Mo. App. E.D. 2004). Thus, when applying the principles of statutory construction, the Missouri judiciary cannot be a "government authority" under the MRFPA, and Plaintiff has failed to satisfy the second element of a claim for a breach of the MRFPA. Therefore, Count III of Plaintiff's Petition should be dismissed.

## B. The MRFPA provides an exception for court filings, and therefore, Plaintiff cannot satisfy the third element of an MRFPA claim.

Even if the Court determines that the Missouri judiciary is a "government authority" under the MRFPA, Plaintiff's claim still fails as a matter of law because the MRFPA provides an exemption for court filings. As referenced above, Section 408.693.13 of the MRFPA provides in relevant part that:

Nothing in [the MRFPA] sections 408.675 to 408.700 shall preclude a financial institution, as an incident to . . . collecting on a debt owed to the financial institution itself . . . from providing copies of any financial record relevant to such action *to any court of competent jurisdiction* . . . .

(emphasis added). In her Petition, Plaintiff again admits that: "In filing lawsuits *to collect alleged debts* on behalf of Advance Financial, Defendant attaches a copy of the agreement to the petition *as the basis on which the debt is allegedly owed.*" Petition at ¶ 16. Plaintiff readily acknowledges that the lawsuit, and others like it, were filed to collect debts owed to Advance Financial and that the agreements were attached to provide the basis for the debt owed. As such, Plaintiff, in her own pleading, has demonstrated facts that Defendant attached Ms. Sims' and other debtors' *relevant financial records* to a court of competent jurisdiction as an incident to collecting on a debt. Accordingly, there is no dispute that Section 408.693.13 of the MRFPA applies in this situation, and therefore, Plaintiff's claim fails as a matter of law.

WHEREFORE, Defendant Kahrs Law Offices, P.A. requests this Courts Order dismissing Plaintiff's Class Action Petition for Damages in its entirety and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: */s/Daniel F. Church*
    DANIEL F. CHURCH    #34936
    BRITTAIN E. McCLURG    #72016
    8330 Ward Parkway, Suite 300
    Kansas City, Missouri 64114
    (816) 382-1382
    Facsimile: (816) 382-1383
    dchurch@mwcattorneys.com
    bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY on this 19th day of July 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

       Bryce B. Bell
       Jenilee V. Zentrich
       Bell Law, LLC
       2600 Grand Blvd., Suite 580
       Kansas City, MO 64108
       bryce@belllawkc.com
       jz@belllawkc.com
       *ATTORNEYS FOR PLAINTIFF*


       */s/Daniel F. Church*
       ATTORNEY FOR DEFENDANT

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2316-CV13284 |
| vs. | ) ) | |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

COMES NOW Defendant Kahrs Law Offices, P.A., by and through its counsel of record, and pursuant to Rule 55.27 of the Missouri Rules of Civil Procedure, request this Court's order dismissing Plaintiff's cause of action for the reasons stated in Defendant's Suggestions in Support of Defendant's Motion to Dismiss and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: _/s/Daniel F. Church_
       DANIEL F. CHURCH       #34936
       BRITTAIN E. McCLURG   #72016
       8330 Ward Parkway, Suite 300
       Kansas City, Missouri 64114
       (816) 382-1382
       Facsimile: (816) 382-1383
       dchurch@mwcattorneys.com
       bmcclurg@mwcattorneys.com

       *ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 19th day of June 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFF*

_/s/Daniel F. Church_
ATTORNEY FOR DEFENDANT

2

Electronically Filed - JACKSON - INDEPENDENCE - July 19, 2023 - 03:35 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

PATRICIA A. SIMS, on behalf of herself )
and others similarly situated, )
)
                  Plaintiffs, )    Case No. 2316-CV13284
)
vs. )
)
KAHRS LAW OFFICES, P.A., )
)
                  Defendant. )

**ENTRY OF APPEARANCE**

COMES NOW Daniel F. Church of the law firm of Morrow Willnauer Church, L.L.C., and hereby enters his appearance as counsel of record for Defendant Kahrs Law Office, P.A. in the above-referenced matter. Daniel F. Church will be the lead attorney in this matter.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: */s/Daniel F. Church*
    DANIEL F. CHURCH    #34936
    BRITTAIN E. McCLURG    #72016
    8330 Ward Parkway, Suite 300
    Kansas City, Missouri 64114
    (816) 382-1382
    Facsimile: (816) 382-1383
    dchurch@mwcattorneys.com
    bmcclurg@mwcattorneys.com

    *ATTORNEYS FOR DEFENDANT*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY on this 19th day of July 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFFS*

 */s/Daniel F. Church*
ATTORNEY FOR DEFENDANT

2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself | ) | |
| and others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2316-CV13284 |
| | ) | |
| vs. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY OF APPEARANCE**

COMES NOW Brittain E. McClurg of the law firm of Morrow Willnauer Church, L.L.C., and hereby enters his appearance as counsel of record for Defendant Kahrs Law Office, P.A. in the above-referenced matter. Daniel F. Church will be the lead attorney in this matter.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: _/s/Brittain E. McClurg_
      DANIEL F. CHURCH       #34936
      BRITTAIN E. McCLURG  #72016
      8330 Ward Parkway, Suite 300
      Kansas City, Missouri 64114
      (816) 382-1382
      Facsimile: (816) 382-1383
      dchurch@mwcattorneys.com
      bmcclurg@mwcattorneys.com

      *ATTORNEYS FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 19th day of July 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFFS*

 */s/Brittain E. McClurg*
ATTORNEY FOR DEFENDANT

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

PATRICIA A. SIMS,                                    )
on behalf of herself and others          )
similarly situated,                              )
                                                               )
                Plaintiff,                           )
                                                               )
v.                                                             )         **CLASS ACTION PETITION**
                                                               )
KAHRS LAW OFFICES, P.A.,              )         **JURY TRIAL DEMANDED**
                                                               )
             Defendant.                          )

## PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT KAHRS LAW OFFICES, P.A.'S MOTION TO DISMISS

COME NOW, Plaintiff, by and through her undersigned counsel, and respectfully moves this Court for an Order extending her deadline two weeks up to and including August 14, 2023 to file a response to Defendant Kahrs Law Offices, P.A.'s Motion to Dismiss. In support of this Motion, Plaintiff states the following:

1.      Defendant Kahrs Law Offices, P.A. filed its Motion to Dismiss on July 19, 2023.

2.      Plaintiff's deadline to file a response is July 31, 2023.

3.      Due to the press of other business, Plaintiff's counsel respectfully requests an additional two weeks up to and including August 14, 2023 to submit her response.

4.      Plaintiff has consulted Defendant with respect to this motion, and Defendant has no objection to Plaintiff's request for an extension.

5.      Plaintiff submits that this requested extension is sought in the interest of justice and not for any undue purpose or delay.

6.      This is Plaintiff's first request for an extension to respond to Defendant Kahrs Law Offices, P.A.'s Motion to Dismiss.

WHEREFORE, Plaintiff, with no objection from Defendant, respectfully requests the Court grant her an additional two weeks up to and including August 14, 2023 to file a response to Defendant Kahrs Law Offices, P.A.'s Motion to Dismiss.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich     MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

**Attorneys for Plaintiff and
the Proposed Class**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system on July 31, 2023, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself | ) | |
| and others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2316-CV13284 |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Plaintiff Patricia A. Sims ("Sims"), on behalf of herself and others similarly situated, and for her Response in Opposition to Defendant's Motion to Dismiss, states:

**I.     Introduction**

This case is about a Missouri and Kansas debt collector—Defendant Kahrs Law Offices, P.A. ("Kahrs")—which publicly disclosed Sims' and hundreds of other consumers' and debtors' personally identifiable information ("PII") in public court filings and to third-party service processor(s).

A client of Kahrs is Lakshmi Finance, LLC d/b/a Advance Financial ("Advance Financial"). Advance Financial predominantly lends money online to consumers in Kansas, Nebraska, and Missouri. Since 2020, Kahrs has filed approximately 1,000 lawsuits in Missouri and 150 lawsuits in Kansas to collect debts owed to Advance Financial. In filing these lawsuits, Kahrs attaches a copy of the Advance Financial Line of Credit Disclosure and Account Agreement ("Agreement") between the consumer and Advance Financial to the petition as the basis on which the consumer owes debt. These Agreements contain consumers' complete, personal bank account number, complete routing number, full name, address, and telephone number. In the approximately

1,000 Missouri lawsuits and 150 Kansas lawsuits, Kahrs did not make any redactions to these Agreements nor did Kahrs take any precautions to limit the access of the Agreements to respective parties and counsel. Additionally, Kahrs disseminated copies of the unredacted Agreements to a third-party process serving company and third-party process server(s) to serve the lawsuits.

Due to concern about being unable to pay the taxes on her Missouri home, in March 2018, Plaintiff Sims initiated the online loan process with Advance Financial. While Sims filled out most, or all, of the application, she did not agree or finalize the application, nor did she accept or receive any funds from Advance Financial. Despite this, on or about March 24, 2021, Advance Financial, through Kahrs, filed a lawsuit in Jackson County, Missouri against Sims seeking $4,047.42. Sims was served on July 5, 2021, with the petition and summons for the lawsuit. The petition included a purported and completely *unredacted* copy of the Agreement between Advance Financial and Sims—meaning Kahrs had made Sims' personal and confidential information publicly available. Further, because Kahrs had Sims personally served, Kahrs unequivocally disseminated the purported and unredacted copy of Sims' Agreement to a third-party process server and/or a third-party process serving company.

On or about July 12, 2021, Sims' counsel left a voicemail for Advance Financial's counsel to inform it that an attorney represented Sims. The same day Sims' counsel mailed Advance Financial's counsel a Notice of Representation and Preservation. About a week later, on or about July 19, 2021, Advance Financial suddenly dismissed its lawsuit against Sims without prejudice, and without providing any explanation. Roughly three months after Advance Financial dismissed its lawsuit, Sims brought a lawsuit against Advance Financial in Jackson County, Missouri. Sims informed Advance Financial that it had discovered it filed her Agreement in its initial lawsuit without taking precautions to protect her PII. Upon information and belief, Advance Financial

2

informed Kahrs of Sims' PII disclosure because Kahrs subsequently moved to seal the Agreement. This confirmed that Sims' name, address, telephone number, routing number, and account number were publicly available for nearly a year because of Kahrs' conduct, and furthermore that the third-party process server(s) and/or third-party process serving company that Kahrs utilized were likely still in possession of Sims' Agreement.

## II.     Legal Standard

In considering a motion to dismiss, the Court must assume Plaintiff's pleadings are true and liberally construe all reasonable inferences in her favor. *E.g.*, *Smith v. Humane Soc. of U.S.*, 519 S.W.3d 789, 798 (Mo. banc 2017) (internal citation omitted).  Further, the Court must not weigh the credibility or persuasiveness of the facts alleged. *E.g.*, *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo. banc 2002) (internal citation omitted). To survive a motion to dismiss, the pleadings must "'invoke[] substantive principles of law entitling [P]laintiff to relief and allege[] ultimate facts informing [D]efendant of that which [P]laintiff will attempt to establish at trial.'" *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 82 (Mo. banc 2008) (internal citation omitted).

## III.     Argument

### a.     Plaintiff does not lack standing for her injunctive relief claim, the claim is not moot, and she does not fail to state a claim upon which relief can be granted.

To satisfy the "injury in fact" element of standing to obtain injunctive relief, Sims must demonstrate that her injury is likely to be redressed by a favorable ruling from this Court.[1] In the instant case, Sims demonstrates that she faces a threat of ongoing or future harm of identity theft or identity fraud as a result of her personal bank account information having been disseminated to

---

[1] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

a third-party.[2] A retroactive injunction enforcing permanent confidentiality of her personal information and erasure of her personal information from third party records would provide a form of redress as it could likely prevent the recurrence of the dissemination and disclosure of her confidential information and reduce the possibility of identity fraud or theft. This injunction can also likely redress the ongoing emotional distress Plaintiff suffers as a result of her fear of identity theft or fraud.[3] Furthermore, because the underlying suit against Sims was dismissed *without* prejudice and may be filed again containing the same personal information as did the first suit—an injunction prohibiting such future conduct is necessary to provide Sims redress.[4]

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[5] Here, although Plaintiff concedes that Defendant has filed a motion to seal the pleadings that contain her PII, and that the Defendant has dismissed the underlying suit *without* prejudice, the Supreme Court held in *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, that:

> Careful reflection on the long-recognized exceptions to mootness, however, reveals that the description of mootness as "standing set in a time frame" is not comprehensive. As just noted, *a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.*[6]

It is therefore evident that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."[7] The party alleging mootness of a claim bears the substantial

---

[2] Petition at ¶ 20.
[3] Petition at ¶¶ 69, 85.
[4] Petition at ¶ 35.
[5] *U.S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 89 S. Ct. 361 (1968).
[6] 528 U.S. 167, 190 120 S. Ct. 693 (2000) (emphasis added) (quoting *Concentrated Phosphate Export Assn.,* 393 U.S., at 203, 89 S.Ct. 361).
[7] *Id.*

burden to persuade the court that "the challenged conduct cannot reasonably be expected to start up again."[8]

Similar to the terms of the moratorium discussed in *Friends of the Earth,* here, the seal on the pleadings of the underlying case against Plaintiff are not permanent, and thus, Plaintiff's claims are not moot. Furthermore, Kahrs bears the burden of establishing that Plaintiff's confidential information will not be disclosed again and that the confidential information that has been disseminated will not subject her to identity theft or identity fraud. This burden is elevated due to the fact that Plaintiffs confidential information was disseminated to a third-party process server or process server company and as a result Plaintiff's confidential information is likely still stored within the server or server company's records.[9]

Finally, Plaintiff has stated a claim upon which relief can be granted for her claim for injunctive relief. Plaintiff has specifically alleged facts stating that there is a real apprehension that Defendant will disclose consumer's financial information given that Defendant allowed Plaintiff's information (and other consumers' information) to remain unsealed or unredacted for significant periods of time.[10] Given this blatant disregard for the financial information of approximately 1,000 Missouri debtors, there is a high likelihood that Defendant will likely file financial information in the future. Moreover, as pleaded, there are a number of those cases in which Defendant has not been successful in sealing the record containing consumer financial information.[11]

---

[8] *Id.* at 189.
[9] Petition at ¶ 20.
[10] Petition at ¶ 38.
[11] Petition at ¶ 39.

**b. Plaintiff's claim for negligence states a claim upon which relief can be granted.**

To prevail on her claim for negligence, Plaintiff must establish the following: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) causation; and (4) injury or actual damages. *Payne v. Fiesta Corp.*, 543 S.W.3d 109 (Mo. App. E.D. 2018). Defendant only challenges the fourth element, asserting that Plaintiff has failed to allege any damages as a result of Defendant's negligent conduct. Specifically, Defendant argues that Plaintiff has not pled recoverable damages.[12]

Defendant contends that Plaintiff's claim for garden variety emotional distress fails because she has not alleged that Defendant's conduct involved an unreasonable risk of causing emotional distress nor that the emotional distress is medically diagnosable or is of sufficient severity to be medically significant. However, Defendant ignores Missouri precedent establishing that a Plaintiff does not need to establish these additional elements if the injurious conduct was willful or wanton, or the defendant acted with an intent to injure.[13] Of course, Plaintiff has pled that Defendant's conduct was willful and/or wanton.[14]

In any event, the Missouri Supreme Court has found emotional distress damages recoverable in other, more analogous cases.[15] Further, Missouri's supreme court has recognized that the standard measure of damages is not always adequate and when that is the case "other measures of damages may be used."[16] That is why Missouri's jury instructions provide that when

---

[12] Motion at 6-8.
[13] *Signorino v. Nat. Super Markets*, 782 S.W.2d 100, 104 (Mo. App. W.D. 1989) (emotional distress damages recoverable without medical proof in false imprisonment case); *Fust v. Francois*, 913 S.W.2d 38, 48 (Mo. App. E.D. 1995) (same for malicious prosecution).
[14] Petition at ¶ 68, 86.
[15] *E.g.*, *Lewellen v. Franklin*, 441 S.W.3d 136, 147 (Mo. banc 2014) (MMPA case in which consumer was awarded damages for "damage to her good credit," "stress of being unable to make her loan payments" and "fear that she would go to jail.").
[16] *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. banc 1999) (quoted by *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 814 (Mo. App. W.D. 2014)); *see also Kerr v. First Commodity Corp. of Boston*,

a plaintiff has evidence of other damages, the jury may award "such sum as [it] believe[s] will fairly and justly compensate plaintiff for any other damages plaintiff sustained as a direct result of the occurrence submitted in the evidence."[17] Similarly, Kansas also does not require physical injury for emotional distress damages "where the injurious conduct is willful or wanton, or the defendant acts with intent to injury."[18]

Further, Plaintiff alleges that she has been deprived of the value of her routing and account number.[19] Defendant overlooks this allegation in arguing that "the mere risk of future misconduct is insufficient to support a claim of damages."[20] Yet, Plaintiff is not alleging that she will be deprived of the value of her PII in the future—Plaintiff has alleged that she has already suffered a loss in value of her PII because of Kahrs' misconduct. Therefore, the allegations in this matter are clearly distinguishable from *Bray v. Brooks*, as relied on by Defendant.[21]

### c. Plaintiff's claim for violations of the MRFPA states a claim upon which relief can be granted.

The Missouri Right to Financial Privacy Act, RSMo. 408.680 *et seq.*, prohibits a financial institution, or officer or agent thereof, from providing access to a customer's financial record to any government authority except in accordance with the ("MRFPA"). To establish a claim for a violation of the MRFPA, Plaintiff must establish the following: (1) Defendant was a financial institution or officer or agent thereof; (2) Defendant provided access to a financial record to a government authority; and (3) the provision of the financial record was not authorized by the

---

735 F.2d 281, 285 (8th Cir. 1984) ("Missouri permits the use of other measures of damages where the peculiar circumstances of the fraud make the benefit of the bargain rule an inadequate measure of damages, or where nothing of value is received from the transaction." (citations omitted)).

[17] *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 182 (Mo. App. 2006) (discussing M.A.I. 4.01 and 4.03).
[18] *Arnold v. MaxMind, Inc.*, 216 F. Supp. 3d 1275 (D. Kan. 2016).
[19] Petition at 71.
[20] Motion at 7.
[21] Motion at 7.

MRFPA. Defendant does not challenge the first element, so Plaintiff will only address the second and third elements.

### i. The Missouri judiciary is a "government authority" as defined by RSMo. 408.675.2(4).

The statute defines "government authority" as "any agency or department of the state of Missouri or any agent thereof."[22] The statute does not define "agency" or "department,"[23] though Defendant argues that this does not include the Missouri judiciary. Defendant provides an analysis of the terms "agency and "agency of the state" from other Missouri statutes and case law to support its position. However, this reasoning is flaw for several reasons.

First, some of the statutes and chapters cited by Defendant in support of its position specifically exclude the judiciary from the definition of agency.[24] Here, the MRFPA makes no such express exclusion for the judiciary and its related departments from the definition of "agency." Thus, those cases and statutes are easily distinguishable from the term "agency" as used in the MRFPA. Second, the phrase "any agency or department of the state of Missouri or any agent thereof" "is broad and unrestrictive and includes every entity through which the state acts. It is not limited to executive department administrative agencies."[25] Simply put, if the legislature wanted to limit the term "agency" to executive department administrative agencies, it could have done so.

Defendant, for purposes of disputing the third prong of the statute, further argues that the Missouri judiciary is not a government authority under the MRFPA because of an exemption identified in RSMo. 408.690.13 which state, in pertinent part:

> Nothing in sections 408.675 to 408.700 shall preclude a financial institution, as an incident to perfecting a security interest or proving a claim in bankruptcy, or collecting on a debt owing to the financial institution itself or in its role as a

---

[22] RSMo. 408.675.4.
[23] *Id.*
[24] *See* Motion at 10 discussing Section 36.020(1) and section 536.010(8).
[25] *Barrett v. Greitens*, 542 S.W.3d 370, 381 (Mo. App. W.D. 2017).

fiduciary, from providing copies of any financial record relevant to such action to any court of competent jurisdiction or government authority.

Even though this exemption does not apply here, Defendant's own reliance on this exemption for defeating the third prong undermines its argument that Plaintiff does not meet the second prong of the statute which requires that access to a "government authority" because the exemption clearly states that it is not a violation to provide financial records relevant to a debt collection activity "to any court of competent jurisdiction or government authority."[26] Defendant's argument, that the judicial branch is entirely separate from a "government authority" would make irrelevant the language "any court of competent jurisdiction." That is, if courts are not already within the purview of the MFRPA, then there is no reason to disjunctively exempt the provision of financial records to the courts. Instead, the law clearly makes a point to exempt proper debt collection in the court system.

Further, Defendant ignores the fact that by filing this information with the Missouri Circuit Courts, it provided a copy to the courts' **Department** of Civil Records.[27] And the State of Missouri's official website for the Judicial Branch describes the Office of the State Courts Administrator—which maintains Case.Net, the public case filing system on which Defendant filed Plaintiff's financial records—and the Missouri Supreme Court as "Agencies".[28]

Because Defendant voluntarily provided Plaintiff's financial record to various Missouri Courts, including the Missouri Office of the State Administrator and the Jackson County, Missouri Department of Civil Records, its conduct is subject to the Missouri Right to Financial Privacy Act and is not exempt.

---

[26] RSMo. 408.690.13.
[27] *E.g.*, https://www.16thcircuit.org/civil-records ("The Department of Civil Records receives, processes and maintains all Circuit and Associate Circuit Judge Records regarding Civil, Domestic and Small Claims cases.").
[28] Screenshot taken from https://www.mo.gov/government/judicial-branch/ on November 14, 2022.

## ii. The MRFPA's exception cited by Defendant is inapplicable to this matter.

This analysis must begin with the definitions in the statute.  Relevant to this issue is the definition of "financial record," which means "an original, copy, or information derived from any record held by a financial institution pertaining to a customer's relationship with the financial institution."[29]  A "financial institution" is defined to include "consumer finance institution[(s)], [and] persons who act as lender[(s)]" with respect to certain types of loans.[30] Lakshmi Finance, LLC d/b/a Advance Financial ("Advance Financial") undeniably qualifies as a financial institution. As Advance Financial's agent, Defendant is bound by 408.680.1 R.S.Mo., which states:

> A financial institution, or officer, employee, or agent thereof shall not provide to any government authority access to the financial record of any customer except in accordance with the provisions of sections 408.675 to 408.700.

The Missouri Right to Financial Privacy Act, enacted in 1989, is very similar to the Federal Right to Financial Privacy Act, enacted about a decade earlier.[31] The primary differences are that the federal statute pertains to disclosures made to the *federal* government, Missouri's statute pertains to disclosures made to the *state* government.  Each statute was enacted as, essentially, a response to *United States v. Miller*, where the Supreme Court had held that financial records maintained by a financial institution belonged to the institution, not the customer, so customers would have a protectable legal interest in those records.[32]

In short, the federal and Missouri statutes each restrict what information can be disclosed to the applicable governmental authority—here, Missouri—to the bare minimum.  Financial institutions cannot just turn over all of a customer's financial records in response to an appropriate

---

[29] 408.675.3 RSMo.
[30] 408.675.2 RSMo.
[31] *Compare* 408.675 RSMo. *et seq. with* 12 U.S.C. 3401 *et seq.*
[32] https://www.federalreserve.gov/boarddocs/supmanual/cch/priv.pdf (accessed Oct. 20, 2022).

request—they may only give the bare minimum. That's where Defendant's conduct crosses the threshold of providing only relevant financial records.

Instead of giving the Missouri judiciary the bare minimum needed to collect the alleged debt—a copy of the loan agreement with the bank account and routing numbers **<u>redacted</u>**—Defendant provided all that information. The loan agreement at issue is a creature of Advance Financial's creation; the majority of the loan agreement relates to the line of credit being taken out by the consumer, but it includes a provision about where the funds taken out will be deposited into the consumer's personal bank account. This provision includes the full bank account and routing number for the individual's personal account. A consumer's personal bank account and routing number is unrelated to collection of an alleged debt under the line of credit.

The statute expressly provides that the financial record must be relevant. If a financial record is not "relevant to such action," then it may not be provided, and this exception does not apply. This intent is made abundantly clear when one considers the other exceptions outlined in 408.690 RSMo. For example, government authorities may use specific methods (e.g., a subpoena) to obtain *limited* information from a financial record, such as an "account number" when done for a "legitimate government investigation."[33]

With this, we return to the definition of "financial record": "an original, copy, *or information derived from any record* held by a financial institution pertaining to a customer's relationship with the financial institution."[34] Plaintiff's bank account and routing number are "information derived from a[] record held by" Advance Financial, and that information was not relevant to the underlying suit. Therefore, because Kahrs provided *irrelevant* financial records, it is not protected by RSMo. 408.690.13.

---

[33] 408.690.11 RSMo.
[34] 408.675.3 RSMo. (emphasis added).

**IV.    Conclusion**

WHEREFORE, Plaintiff Patricia A. Sims, on behalf of herself and other similarly situated,

respectfully requests this Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich      MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed
electronically through the Court's electronic filing system on August 14, 2023, and thereby served
upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

PATRICIA A. SIMS, on behalf of herself )
and others similarly situated, )
           )
       Plaintiffs, )  Case No. 2316-CV13284
           )  Division 2
vs. )
           )
KAHRS LAW OFFICES, P.A., )
           )
       Defendant. )

## ORDER

   NOW ON THIS _____ day of August 2023, the Court takes up Defendant Kahrs Law

Offices, P.A.'s Motion for Extension of Time to File its Reply Suggestions in Support of its Motion

to Dismiss. Being fully apprised in the premises contained therein, and finding that Plaintiff does

not oppose the motion, Defendant's Motion is GRANTED.

   **IT IS ORDERED** that Defendant shall file its Reply Suggestions in Support of its Motion

to Dismiss on or before August 31, 2023.

_____      _____
Date                 Judge Kenneth Garrett, III
                   Division 2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2316-CV13284 |
| vs. | ) ) | |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE ITS
REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW, Defendant Kahrs Law Offices, P.A. ("Defendant"), by and through undersigned counsel and pursuant to Rule 44.01(b)(1) and requests this Court's Order extending the time for Defendant to file its Reply Suggestions in Support of Its Motion to Dismiss up through and including August 31, 2023.  In support of its motion, Defendant states that it has conferred with Plaintiff's counsel, and Plaintiff does not oppose this motion for extension of time.

WHEREFORE, Defendant Kahrs Law Offices, P.A. requests this Court's Order extending the time for Defendant to file its Reply Suggestions in Support of Its Motion to Dismiss up through and including August 31, 2023 and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: */s/Daniel F. Church*

| | |
|---|---|
| DANIEL F. CHURCH | #34936 |
| BRITTAIN E. McCLURG | #72016 |

8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
(816) 382-1382
Facsimile: (816) 382-1383
dchurch@mwcattorneys.com
bmcclurg@mwcattorneys.com
*ATTORNEYS FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY on this 18th day of August 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:


     Bryce B. Bell
     Jenilee V. Zentrich
     Bell Law, LLC
     2600 Grand Blvd., Suite 580
     Kansas City, MO 64108
     bryce@belllawkc.com
     jz@belllawkc.com
     *ATTORNEYS FOR PLAINTIFFS*



                       */s/Daniel F. Church*
                       ATTORNEY FOR DEFENDANT

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2316-CV13284 |
| vs. | ) ) | |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW Defendant Kahrs Law Offices, P.A. ("Defendant"), by and through counsel, and for its Reply Suggestions in Support of Its Motion to Dismiss, states:

Plaintiff's entire case should be dismissed because: (1) Plaintiff's claim for a public injunction is nonjusticiable and (2) Plaintiff fails to state a claim upon which relief can be granted with respect to all causes of action.

**Count I-Injunctive Relief**

Plaintiff seeks a public injunction "preventing [Defendant] from disclosing consumer's personal bank account information in public filings now and in the future." Petition at ¶ 51. Plaintiff further seeks "an injunction requiring KLO to take actions to seal and/or increase security on such filings *if not already completed*." *Id.* This claim fails for three reasons: (1) Plaintiff lacks standing to seek injunctive relief, (2) Plaintiff's request for injunctive relief is moot, and (3) Plaintiff fails to state a claim upon which relief can be granted.

**A. Plaintiff lacks standing to seek injunctive relief.**

In her response, Plaintiff argues that she has standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in which the United States Supreme Court addressed Article III standing

under the United States Constitution. Specifically, Plaintiff argues that: "To satisfy the 'injury in fact' element of standing to obtain injunctive relief, Sims must demonstrate that her injury is likely to be redressed by a favorable ruling from this Court." Response at 3. In *Lujan*, the Supreme Court held that *Article III* standing exists when (1) the plaintiff has suffered an "injury in fact," (2) there is a causal connection between the injury and the conduct complained of, and (3) it must be "'likely' as opposed to 'speculative' that the injury will be redressed by a favorable decision." Notably, the District Court of Kansas already dismissed Plaintiff's claim for lack of Article III standing. Petition at ¶ 2.

The Missouri Supreme Court has held that: "Generally, regarding standing, '[t]he issue is whether the plaintiff has a pecuniary or personal interest *directly at issue* and subject to immediate or prospective *consequential* relief.'" *Id*. (citing *Nixon v. Schweich*, 408 S.W.3d 774, 777 (Mo. banc 2016) (emphasis added). Thus, the Plaintiff bears the burden to establish, at the outset, that she has no adequate remedy at law and *irreparable harm will result if the injunction is not granted*." *Id*. (emphasis added). In her response, Plaintiff argues that "a retroactive injunction enforcing permanent confidentiality of her personal information and erasure of her personal information from third party records would provide a form of redress." However, that is a blatant mischaracterization of the injunction sought by Plaintiff in the instant case, and that relief is well beyond the control of Defendant. Instead of Plaintiff's new characterization of her injunctive relief, she has requested that this Court enter a public injunction "preventing [Defendant] from disclosing consumer's personal bank account information in public filings now and in the future." Petition at ¶ 51. Plaintiff further seeks "an injunction requiring KLO to take actions to seal and/or increase security on such filings *if not already completed*." *Id*. Plaintiff cannot now, in her Response, create a new request for injunctive relief out of whole cloth.

Electronically Filed - JACKSON - INDEPENDENCE - August 30, 2023 - 02:05 PM

Furthermore, even if this Court were to consider Plaintiff's new request for injunctive relief, Defendant would not be able to substantially perform the contested injunction—specifically the erasure of [Plaintiff's] information from third party records." In support of her argument, Plaintiff argues that, although the filings have been sealed, "the seal on the pleadings of the underlying case against Plaintiff are not permanent." Defendant does not have the authority to unseal any document that has been sealed by Court order, and Defendant certainly does not have the ability to "erase" Plaintiff's information from the Court's docket. As to injunctive relief, this Court cannot require Defendant to take any action against a third party.

**B.  Plaintiff's claim for injunctive relief is moot.**

Plaintiff's claim for injunctive relief is moot because the relief she seeks has already been granted. Plaintiff argues that "there are circumstances in which the prospect of that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." Response at 4 (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Plaintiff concedes that her request for injunctive relief is based on speculation, including a brand-new allegation that "Plaintiff's confidential information *is likely* still stored within the [process] server or [process' server company's records."

Not only is Plaintiff's claim for injunctive relief based on speculation, but there are also no facts to indicate there is any danger to Plaintiff that Defendant will refile her loan agreement with Advance Financial without redaction. Plaintiff relies exclusively on the fact that the Underlying Suit was dismissed without prejudice, however, Plaintiff overlooks the fact that the dismissal occurred on July 19, 2021 (more than two years ago) and that the statute of limitations would bar the filing of the Underlying Suit. Plaintiff has not produced any facts to support a basis for her

3

belief that the Underlying Suit will be filed. Her entire claim for injunctive relief rests entirely on speculation.

### C. Plaintiff fails to state a claim for injunctive relief.

Injunctive relief is a "harsh remedy which is to be used sparingly and only in clear cases." *Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 585 (Mo. App. E.D. 2006). "An indispensable requirement for obtaining injunctive relief is the wrongful and injurious invasion of some legal right existing in the plaintiff." *Id.* "A request for injunctive relief must be based on a *real apprehension* that future acts are not only threatened but will in *all probability be committed*." *Camden Cnty. v. Lake of the Ozarks Council*, 282 S.W.3d 850, 858 (Mo. App. S.D. 2009) (emphasis added); *accord A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857 (Mo. App. W.D. 1986).

For the reasons set forth above, Plaintiff has failed to plead *any* facts to support an allegation that Defendant will in *all probability* refile the Underlying Suit or refile any other cause of action against her. Plaintiff. Because plaintiffs cannot merely assert conclusions, "[c]ourts disregard conclusions *not supported by facts* in determining whether a petition states a cause of action." *Id.* (emphasis added). Plaintiff pleads in conclusory fashion that: "If not enjoined, [Defendant] will continue to injure the general public through its unlawful practices as alleged herein, which are directed at the consuming public, including Missouri residents." Petition at ¶ 55. In fact, Plaintiff readily admits that as soon as Defendant became aware of the court filings containing unredacted information, Defendant "move to seal the Agreement." Petition at ¶ 38. Additionally, the underlying suit was dismissed. Petition ¶ 35. As such, Plaintiff has not plead any facts to demonstrate a *real apprehension* by Ms. Sims that her account information is in *all*

4

*probability* to be refiled. Therefore, Plaintiff fails to state a claim upon which relief can be granted as to her request for personal injunctive relief.

Plaintiff also seeks a public injunction, but Plaintiff fails to demonstrate any facts to demonstrate that any member of the public has a *real apprehension* that Defendant is likely to disclose their financial information or that Defendant will in *all probability* file such information in the future. In contrast, Plaintiff has pleaded facts that belie any support that such apprehension exists. Specifically, Plaintiff admits that: "[Defendant] has moved to seal similar Agreements in other cases on behalf of Advance Financial. . . ." Petition at ¶ 39. Instead, Plaintiff relies on a conclusory allegation that: "[Defendant] will continue to injure the general public through its unlawful practices," but Plaintiff does not plead any facts to support this conclusion. Therefore, Plaintiff fails to state a claim for public injunctive relief.

### D. Conclusion

Accordingly, this Court should dismiss Plaintiff's claim for injunctive relief under Count I because Plaintiff lacks standing, her claim is moot, and/or she fails to state a claim upon which relief can be granted.

### Count II- Negligence

To prevail on a claim of negligence, Plaintiff must plead four essential elements: "(1) the existence of a legal duty owed to the plaintiff, (2) breach of that duty through a negligent act by the defendant, (3) proximate causation between the breach and the resulting injury, and (4) resulting damages." *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo. App. W.D. 2004). In the instant case, Plaintiff fails to allege any facts to support she has sustained damages, and therefore, her claim must fail as a matter of law.

Plaintiff relies extensively on Plaintiff's "garden variety" emotional distress "including but not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety." Petition at ¶ 69. However, these claims are not recoverable under Missouri law for claims of negligence (1) the defendant should have realized that [its] conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be *medically diagnosable* and must be of sufficient severity *so as to be medically significant*." *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008) (citing *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. banc 1983)) (emphasis added); accord *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388 (8th Cir. 1992); *State ex rel. Benz v. Blackwell*, 716 S.W.2d 270 (Mo. App. E.D. 1986).

In Plaintiff's Response, she relies on *Signorino v. National Super Markets*, 782 S.W.2d 100 (Mo. App. W.D. 1989) and *Fust v. Francois*, 913 S.W.2d 38 (Mo. App. E.D. 1995)[1], and *Lewellen v. Franklin*, 441 S.W.3d 136 (Mo. banc 2014). *Signorino* held that medical evidence of emotional damages was not necessary for cases of *false imprisonment* (an intentional tort), and *Fust* held that medical evidence of stress was not needed to claim emotional damages in a case of *malicious prosecution* (also an intentional tort). *Lewellen* addressed which damages were recoverable *fraudulent misrepresentation claim* arising under the MMPA, which is of course an intentional tort. Plaintiff has not identified a single case of negligence, where a Plaintiff was permitted to recover garden variety emotional damages absent a medical diagnosis and evidence of its medical significance.

Plaintiff further asserts in her Response, "that she has been deprived of the value of her routing and account number." However, Plaintiff has not identified any individual who has access

---

[1] It is noteworthy that both *Signorino* and *Fust* were decided by the Missouri Court of Appeals more than twelve years before the Missouri Supreme Court handed down *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008).

to this information who intends to misuse the information. Plaintiff has only indicated that the information was made available to Defendant, a process server, and personnel of this Court. There is no allegation that any of those individuals intend to misuse Plaintiff's information. As such, Plaintiff has failed to specify that she is has in fact sustained any compensable injury under a theory of negligence. Because Plaintiff merely asserts that she is *at risk* of identity theft, and as such, her cause of action has not yet accrued and may never accrue in the future, this Court should dismiss Count II of Plaintiff's Class Action Petition for failure to state a claim upon which relief can be granted.

**Count III-Missouri Right to Financial Privacy Act**

In the third Count of her Petition, Plaintiff seeks relief under the Missouri Right to Financial Privacy Act ("MRFPA"), however, Plaintiff's claim fails because the Missouri judiciary is not a "government authority" as defined by the MRFPA, and even if the judiciary is a "government authority," the filing of relevant financial documents is exempted from the MRFPA.

### A. The judiciary is not a "government authority."

The MRFPA defines "government authority" as "any agency or department of the state of Missouri or any agent thereof." RSMo. 408.675.4. Defendant engaged in a painstaking analysis of Missouri statutes that provide definitions for "agency" or "department," and Missouri case law is clear that these words define arms of the executive branch as opposed to the legislature or judiciary. *S.M.H. v. Schmitt*, 618 S.W.3d 531, 534 (Mo. banc 2021); *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 815 (Mo. App. W.D. 2011). Plaintiff has not provided any authority establishing that the MRFPA's definition of "government authority" includes the Missouri judiciary.

Plaintiff relies on *Barrett v. Greitens*, 542 S.W.3d 370, 381 (Mo. App. W.D. 2017), which again predates the Missouri Supreme Court decision in *S.M.H*. The issue in *Barrett* was the

7

interpretation of Article IV of the Missouri constitution, which provided two different uses of the word agency within its subsections, and the Missouri Court had to interpret the legislature's meaning. *Barrett*, 542 S.W.3d at 380-83. Specifically, the issue was whether the phrase "state or any of its agencies" in Article IV, Section 27.1 applied to the Missouri Public Defender. *Id*. at 380. The Missouri Public Defender claimed to have "judicial power" because the General Assembly designated it as "an independent department of the judicial branch of state government." *Id*. at 380, n.4. The Court held this distinction was irrelevant because the General Assembly could have easily placed the Public Defender under the Executive Branch." *Id*. The Court held that the Public Defender did not exercise "judicial power," which it defined as "the power of a court to decide and pronounce a judgment and carry it into effect . . ." *Id*. at 380 (citing *Muskrat v. United States*, 219 U.S. 346, 356 (1911)).

Furthermore, the Court found that "state agency" was not defined. *Id*. at 381. In Article IV, Section 13 of the Missouri Constitution, the Missouri Constitution referenced "*all* state agencies," and the Court noted that under this provision, the Auditor had historically prepared reports on all three branches of governments. *Id*. at 381-82. However, in Article IV, Section 16 of the Missouri Constitution, the legislature referenced "other agencies of the state exercising administrative or *executive* authority." *Id*. The Court held that because the limiting adjective "executive" was utilized in Section 16, then the reference to "all agencies" in Section 13 was not limited to executive agencies. *Id*. This situation is dissimilar to the legislature's actions in the MRFPA.

In the MRFPA, the legislature does not make two distinct references to "agencies." Instead, it references "agencies or departments of the state," and Missouri Supreme Court precedent is clear that this reference is limited to the agencies and departments of the executive branch. *S.M.H.*, 618

8

S.W.3d at 531. Furthermore, limiting the definition of "agencies" to the executive branch is in keeping with the purpose of the MRFPA.

As Plaintiff argues, the federal Right to Financial Privacy Act was drafted by the United States Congress in response to the decision by the United States Supreme Court in *United States v. Miller*, 425 U.S. 435 (1976), which held that individuals did not have a reasonable expectation of privacy under the Fourth Amendment. *See Young v. United States Dep't of Justice*, 882 F.2d 633, 636 (2d Cir 1989) (discussing the legislative history of the federal Right to Financial Privacy Act). The House Report explained:

> [The federal Right to Financial Privacy Act] is intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate *law enforcement activity*. Therefore, [it] seeks to strike a balance between customers' right of privacy and the need of *law enforcement agencies* to obtain financial records pursuant to legitimate investigations.

*Id*. (emphasis added) (citing H.R.Rep. No. 1383, 95th Cong., 2d Sess. at 33 (1978)).

The federal Right to Financial Privacy Act provides: "No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this title." 12 U.S.C. § 3403(a). Just like the MRFPA, it defines "government authority as "any agency or department of the United States, or any officer, employee, or agent thereof[.]" 12 U.S.C. § 3401.

In *Doe v. Board on Professional Responsibility of District of Columbia Court of Appeals*, 717 F.2d 1424 (D.C. Cir. 1983), the Court held that the judicial branch, even when acting through its Board of Professional Responsibility ("Board"), was not a "government authority" as defined by the federal Right to Financial Privacy Act. The question before the Court was whether the Board had to comply with the notification requirements of the federal Right to Financial

Privacy Act. The lower Court held that the federal "Right to Financial Privacy Act does not apply to the Court of Appeals so that the Board was not required to comply with its notice provisions." *Id*. at 1427.; *accord Taggart v. N.W. Mort'g., Inc.*, Case No. 09-1281, 2010 U.S. Dist. LEXIS 145821 (E.D. Pa. Oct. 20, 2010) ("The federal judiciary is not included in the [federal Right to Financial Privacy Act's] definition of a government authority.").

In *Mead*, the Plaintiff alleged that the City First Bank of DC unlawfully disclosed information contained in Mead's financial records to third parties, including the District Court for the District of Columbia], in violation of the [federal Right to Financial Privacy Act'. *Mead v. City First Bank of DC, N.A.*, 616 F.Supp.2d 78, 79 (D.C. Cir. 2009). "[T]he only alleged disclosures of information contained in Mead's bank records to a government entity are statements made by City First's lawyer to the district court during a hearing on Mead's motion for a temporary restraining order filed in this action." *Id*. at 80. The Court held that because the federal Right to Financial Privacy Act does not apply to disclosures made to the judiciary, Mead failed to state a claim entitling him to relief under the federal Right to Financial Privacy Act. *Id*. at 81.

Plaintiff has failed to identify any Missouri or federal authority that included the judiciary in a definition for "government authority" under the MRFPA or similar right to financial privacy law. Just as in *Mead*, the only disclosure of information giving rise to an MRFPA claim is disclosure to the judiciary, and therefore, Plaintiff fails to state a claim upon which relief can be granted.

**B.  Even if the judiciary is a "government authority," the filing of relevant financial documents is exempted from the MRFPA.**

Even if this Court includes the Missouri judiciary in the definition of "government authority," the filing of relevant financial documents is exempt from the MRFPA. Plaintiff argues that the MRFPA and the federal Right to Financial Privacy Act allows a financial institution to

provide only the "bare minimum." Again, Plaintiffs cite no provision in the MRFPA or the federal Right to Financial Privacy Act that provides that language, and Plaintiff also fails to cite any case law that supports her proposition.

In the Underlying Suit, Defendant filed a breach of contract action against Plaintiff, which was premised on the Agreement attached to the Underlying Petition. Section 408.690.13 expressly permits a financial institution to collect on a debt owed to the financial institution to provide "copies of any financial record relevant to such action to any court of competent jurisdiction or government authority." The attachment of the contract forming the basis for the breach of contract claim is plainly relevant to the proceeding. The Missouri Rules of Civil Procedure even require that: "When a claim or defense is founded upon a written instrument, the same shall be recited verbatim in the pleading or a copy shall be attached to the pleading as an exhibit." Mo. R. Civ. P. 55.22(a).

### C. Conclusion

For the reasons set forth above, this Court should dismiss Plaintiff's MRFPA claim for failure to state a claim upon which relief can be granted because the Missouri judiciary is not a "government authority" as defined by the MRFPA, or in the alternative, if the Missouri judiciary is a "government authority," then Defendant's disclosure was exempted by Section 408.690.13.

WHEREFORE, Defendant Kahrs Law Offices, P.A. requests this Courts Order dismissing Plaintiff's Class Action Petition for Damages in its entirety and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: /s/Daniel F. Church

DANIEL F. CHURCH                    #34936
BRITTAIN E. McCLURG                 #72016
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
(816) 382-1382
Facsimile: (816) 382-1383
dchurch@mwcattorneys.com
bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 30th day of August, 2023 the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFF*

/s/Daniel F. Church
ATTORNEY FOR DEFENDANT

FILED
DIVISION 2
17-Sept.-2023  06:15
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

PATRICIA A. SIMS,           )
                            )
            Plaintiff,      )
                            )
v.                          )        Case No. 2316-CV13284
                            )        Division 2
KAHRS LAW OFFICES, P.A.,    )
                            )
            Defendant.      )

## ORDER

COMES NOW the Court on Defendant's Motion to Dismiss, filed herein on July 19, 2023. After reviewing the Motion, considering the Suggestions and Reply, and being fully advised in the laws and premises of the Motion, the Court finds the following:

Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**.

Defendant motions the Court to dismiss all counts of Plaintiff's petition pursuant to Rule 55.27(b)(6). Plaintiff's claim contains three Counts; Count I: Injunctive Relief, Count II: Negligence, and Count III: Violations of the Missouri Right to Privacy Act (MRPA).

When reviewing a motion to dismiss, "[t]he Court treats the facts contained in the petition as true and in the light most favorable to the plaintiff." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 915 (Mo. banc 2016). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." *Id.*

## I. Count I: Injunctive Relief

In Count I of the Petition, Ms. Sims, on behalf of other similarly situated individuals, seeks a public injunction "preventing [Defendant] from disclosing consumer's personal bank account information in public filings now and in the future." Petition at ¶ 51. Plaintiff further seeks "an injunction requiring KLO to take actions to seal and/or increase security on such filings if not already completed." *Id.* Plaintiff requests the Court enter a preliminary and/or permanent injunction, directing Defendant to remedy the previous public filing of personally identifiable information and not to disclose such information in public filings now and in the future. Petition at ¶ 57.

Defendant argues that Count I should be dismissed because Plaintiff lacks standing, her claim is moot, and she fails to state a claim upon which relief can be granted.

### a. Plaintiff Lacks Standing

In *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), the Court explained that the concepts of standing and ripeness are better understood as a matter of justiciability rather than a matter of subject matter jurisdiction. *Mo. State Conf. of the NAACP v. Ashcroft*, 633 S.W.3d 843, 847 (Mo. App. W.D. 2021). "Justiciability is a 'prudential' rather than a jurisdictional doctrine and, prior to addressing the substantive issues [of a case], [a court] must determine whether a case meets the requirements for a justiciable controversy." *Id.* "A justiciable controversy exists where (1) the plaintiff has a legally protectable interest, (2) a substantial controversy exists between genuinely adverse parties, and (3) that controversy is ripe for judicial determination." *Id.* Furthermore, mootness implicates the justiciability of a controversy and "[w]hen an event occurs that

makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Id.*

In applying *Webb*, the Eastern District Court of Appeals held that standing relates to the court's authority to render a judgment and cannot be waived. *Eaton v. Doe*, 563 S.W.3d 745, 747 (Mo. App. E.D. 2018). A plaintiff must establish standing before the Court can decide the case on the merits. *Id.* "Generally, regarding standing, '[t]he issue is whether the plaintiff has a pecuniary or personal interest *directly at issue* and subject to immediate or prospective *consequential* relief.'" *Id.* (citing *Nixon v. Schweich*, 408 S.W.3d 774, 777 (Mo. banc 2016) (emphasis added). Thus, the Plaintiff bears the burden to establish, at the outset, that she has no adequate remedy at law and *irreparable harm will result if the injunction is not granted*." *Id.* (emphasis added)

In Count I of the Petition, Ms. Sims, on behalf of other similarly situated individuals, seeks a public injunction "preventing [Defendant] from disclosing consumer's personal bank account information in public filings now and in the future." Petition at ¶ 51. Plaintiff further seeks "an injunction requiring KLO to take actions to seal and/or increase security on such filings if not already completed." *Id.* However, by her own admission, "[Defendant] moved to seal the Agreement [in Plaintiff's case]." Petition at ¶ 38. Plaintiff further alleges that "[Defendant] has moved to seal similar Agreements in other cases on behalf of Advance Financial." Petition at ¶ 39. As such, Plaintiff's financial information has already been sealed, and therefore, Plaintiff has no personal interest in seeking an injunction requiring Plaintiff to "take actions to seal and/or increase security" on related filings on her behalf or any other individuals' behalf. Furthermore, Plaintiff cannot establish that she

faces irreparable harm if the injunction is not granted, because her information has already been sealed.

Plaintiff maintains that she has satisfied standing via an "injury in fact" because of the threat of ongoing or future harm of identity theft or identity fraud as a result of her personal bank account information having been disseminated to a third-party, which is likely to be redressed by a favorable ruling of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). However, Plaintiff concedes that Defendant has filed a motion to seal the pleadings that contain her PII, and that the Defendant has dismissed the underlying suit without prejudice. Therefore, an order granting an injunction by this Court will not provide any remedy as the filings containing Plaintiff's personally identifiable information in already sealed.

Plaintiff also contends that because the underlying suit was dismissed without prejudice, that they could potentially in the future re-file the suit and disclose Plaintiff's personal information again. This potentiality however does not meet the standard under Missouri law. "…[T]he issue is whether the plaintiff has a pecuniary or personal interest *directly at issue* and subject to *immediate or prospective consequential relief." Nixon,* 408 S.W.3d 774 at 777 (emphasis added). An injunction by this Court will do nothing in the way of providing an immediate or prospective consequential relief by enjoining defendants from disclosing her personal information which has already been sealed.

Therefore, Plaintiff lacks standing for Count I seeking injunctive relief. Because of the lack of standing, Count I is dismissed and the Court need not analyze Defendants two other objections to Count I: mootness, and failure to state a claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss as to Count I is **GRANTED.**

## II.     Count II: Negligence

To prevail on a claim of negligence, Plaintiff must plead four essential elements: "(1) the existence of a legal duty owed to the plaintiff, (2) breach of that duty through a negligent act by the defendant, (3) proximate causation between the breach and the resulting injury, and (4) resulting damages." *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo. App. W.D. 2004).

Plaintiff's petition pleads as follows:

60. Pursuant to RSMo. § 509.520.1(2), KLO owed a duty to Plaintiff and the putative class members not to file any pleadings, attachments, or exhibits with the court that contained the "financial account number of any party."

61. Missouri Supreme Court Operating Rule 2.05(c) defines "Personal information" to include "Financial institution account numbers, credit card numbers, personal identification numbers, or passwords used to secure accounts."

62. Similarly, Missouri Supreme Court Operating Rule 2.02 requires redaction of personal information in filings and further provides that "the responsibility for any mandatory redaction of personal information rests solely with counsel, the parties, or any other person filing the document."

63. At the time KLO filed the Lawsuit and Agreement, KLO was required to "affirmatively certify compliance with the redaction requirements of this [Missouri Supreme Court Operating Rule 2.02]". Missouri Supreme Court Operating Rule 2.02(b).

5

64. KLO breached its duty when it publicly filed the Agreement without redacting Plaintiff and the putative class members' bank account numbers and/or routing numbers.

65. But for KLOs' negligence in failing to redact and/or seal Plaintiff and the putative class members' financial account number in the Agreement, Plaintiff and the putative class members would not be damaged.

66. As a direct and proximate result of KLO's breach, Plaintiff and the putative class members have been damaged.

67. Because of the clear statutory obligation, Kahr's conduct also constitutes negligence per se.

68. Because KLO was required to "affirmatively certify" compliance with the redaction requirements, its conduct was at best grossly negligent.

69. Plaintiff and the putative class members' actual damages include, but are not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety.

70. As a result of KLO's actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their PII has been publicly disseminated, such that they are at risk for identity theft, identity fraud, and/or account takeover.

71. Further, Plaintiff and the putative class members have suffered a loss of privacy and have been deprived of the value of their PII.

In reviewing the petition in the light most favorable to the Plaintiff, and treating the facts contained in the Petition as true, the Court finds that Plaintiff has properly submitted a cause of action for negligence sufficient to withstand a motion to dismiss by pleading

allegations that address all elements of a negligence claim including duty, breach, causation, and injury.

**IT IS FURTHER ORDERED** that Defendant's Motion to dismiss as to Count II is **DENIED.**

### III. Count III: Violations of the Missouri Right to Financial Privacy Act Plaintiff individually and on behalf of the proposed Missouri Sub-Class

The Missouri Right to Financial Privacy Act, RSMo. 408.680 et seq., prohibits a financial institution, or officer or agent thereof, from providing access to a customer's financial record to any government authority except in accordance with the ("MRFPA"). To establish a claim for a violation of the MRFPA, Plaintiff must establish the following: (1) Defendant was a financial institution or officer or agent thereof; (2) Defendant provided access to a financial record to a government authority; and (3) the provision of the financial record was not authorized by the MRFPA. Defendant challenges whether Plaintiff has met the second and third elements. For efficiency's sake, the Court will examine the third element first.

Section 408.693.13 of the MRFPA provides that:

> Nothing in [the MRFPA] sections 408.675 to 408.700 shall preclude a **financial institution**, as an incident to perfecting a security interest or proving a claim in bankruptcy, **or collecting on a debt owed to the financial institution itself** or in its role as a fiduciary, from providing copies of any financial record relevant to such action to **any court of competent jurisdiction** or government authority. . . . (emphasis added).

This section clearly provides an exception to the general rule of 408.680 prohibiting financial institutions from providing access to financial records to government authorities

by exempting them from providing such information in debt collection actions to courts of competent jurisdiction. This provision is a clear authorization of such an activity by the MRPFA. Plaintiff argues that the MRFPA and the federal Right to Financial Privacy Act allows a financial institution to provide only the "bare minimum", which should not include account and routing numbers. Plaintiff cites no provision in the MRFPA or the Federal Right to Financial Privacy Act that provides that language, and Plaintiff also fails to cite any case law that supports her proposition. Plaintiff fails to satisfy element three of a claim under the MRFPA.

This Court finds that Plaintiff has failed to state a claim for relief for violations under the MRPFA because the disclosure of financial information to courts of competent jurisdiction is explicitly authorized by the Act under 408.693.13. As for the second element, there is a dispute as to whether a state court counts as a "government authority" under the statute. Since this Court has already determined that Plaintiff failed to state a claim as to element three, it does not now need to analyze what the legislature intended by the term "government authority" in element two. For these reasons and others not specifically stated herein:

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss as to Count III is **GRANTED.**

**IT IS SO ORDERED.**

_____17-Sep-2023_____
DATE

JUDGE KENNETH GARRETT III

FILED
DIVISION 2
04-Oct-2023    15:05
CIRCUIT COURT OF JACKSON COUNTY, MO
BY_____

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

PATRICIA SIMS,                            )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          Case No. 2316-CV13284
                                          )          Division 2
KAHRS LAW OFFICES, P.A.,                  )
                                          )
                    Defendant.            )

## CIVIL CASE MANAGEMENT SCHEDULING ORDER

Now on October 4, 2023 this matter was called before the Court.  A completed and signed copy of this Order was hand-delivered, mailed, faxed and/or emailed to each party on the date set forth in the Certificate of Service below.  The Court, being fully advised in the premises, does hereby enter the following Orders:

**IT IS HEREBY ORDERED** that this case is set for a pre-trial conference on **OCTOBER 3, 2024 at 3:30 p.m**.

**IT IS HEREBY ORDERED** that this case is set for jury trial on **OCTBOBER 15, 2024 commencing at 9:00 a.m**.  The parties estimate that the complete trial will last **4 days.**

**IT IS FURTHER ORDERED** and the parties are hereby advised and understand that **no continuances will be granted absent a showing of good cause and extraordinary circumstances, made known to the Court as soon as possible.**  Failure to complete discovery consistent with this Scheduling Order will **not** be a basis for continuing the trial date.

**IT IS FURTHER ORDERED**, with the Court having now established a trial date for this case, that pursuant to the parties' request and representation that they have agreed to prepare a stipulated case management scheduling order, said order shall be prepared, signed by all attorneys of record, and submitted to the Court for signature within **fifteen (15) days** of the date of this

HB: 4859-4813-1611.1

Order.  In the event such Order is not so prepared and submitted, the Court shall enter its own scheduling order.  The parties are hereby advised that even if they create and establish their own scheduling order pursuant hereto, the terms hereinafter set forth regarding the scheduling and procedure for a pre-trial conference **shall** apply.

**IT IS FURTHER ORDERED** that the parties shall comply with the following schedule:

1.   Any and all requests to amend pleadings and/or add parties shall be filed no later than **December 1, 2023.**

2.   Plaintiff shall disclose and designate all experts on or before and shall make retained expert witnesses available for deposition by no later than **January 31, 2024.**

3.   Defendants shall disclose and designate all experts on or before shall make their retained expert witnesses available for deposition by no later than **March 15, 2024.**

4.   Any and all requests for class certification shall be filed no later than **January 3, 2024**. Responses to any such request shall be filed no later than fourteen (14) days after the motion is filed. Replies to any such requests shall be filed no later than seven (7) days after a response is filed.

5.    All discovery shall be *completed* and shall close (i.e. all depositions taken and responses completed to timely propounded discovery requests) on or before **July 15, 2024**.  Discovery includes, but is not limited to, interrogatories, requests for production of documents, depositions, and requests for admissions.  Completion of discovery contemplates and includes timely responses to discovery requests. Discovery may not be conducted after the closure date except by agreement of the parties or a prior order of the Court for good cause shown upon the filing of a timely motion to extend discovery filed *before* the original closure date.  *An agreement of the parties to conduct discovery after the closure day shall **not** constitute grounds for continuance of the trial. The failure of the parties to timely complete discovery shall **not** constitute grounds for continuance of the trial.*  Nothing contained herein shall excuse a party from the continuing obligation to update responses to discovery or to respond to discovery requests made before the closure date set forth above.

6.   Any and all dispositive motions shall be filed on or before **August 15, 2024.** Any dispositive motion filed after said date will be considered together with the trial of the case.

7.   The parties are ordered to participate in mediation, which mediation shall take place on or before **April 30, 2024**.  The parties shall agree upon a mediator no later than thirty (30) days before the deadline for mediation as set forth above.  If the parties are unable to agree upon a mediator by said date, they shall notify the Court and

the Court shall appoint a mediator. The attorneys who will actually try this case shall attend the mediation. Each party shall personally appear at the mediation and actively participate in the process. A representative of/from each party with settlement authority shall attend the mediation. Each party shall pay, directly to the mediator, their respective pro-rata cost of the mediation.

**IT IS FURTHER ORDERED** that the parties shall comply with the following procedures pertaining to a pre-trial conference and other related pre-trial procedures – the terms of this section shall apply in **all** cases, even in those cases where the parties have stipulated and agreed to the creation of their own scheduling order:

1. The pre-trial conference will be held *approximately* two weeks before trial. Counsel who will actually try the case *must* attend the pre-trial conference. Individual parties must be available by telephone to discuss the case, including settlement of the case. If a party is not an individual, an authorized representative thereof who is capable of discussing the case and/or authorized to make settlement decisions must be available by telephone.

2. No later than one week before the date of the pre-trial conference with the Court, counsel shall meet with each other for an informal pre-trial conference, at which time they shall:

   (a) Discuss and thoroughly exhaust all settlement possibilities;

   (b) Enter into all possible stipulations of fact;

   (c) Pre-mark exhibits and exchange exhibit lists;

      (i) Plaintiff shall use **numbers** and Defendant shall use **letters**;

   (d) Exchange exhibits and stipulate, whenever possible, as to waiver of foundation and identification of exhibits; and

   (e) Identify and discuss their respective deposition designations and interrogatory designations, discuss any objections thereto, and resolve, whenever possible, any objections regarding such designations.

3. No later than **fourteen (14) days** before the pre-trial conference, counsel **shall** provide to the Court and/or file with the Court all Motions in Limine, deposition designations and interrogatory designations. Any party opposing same **shall** provide to the Court and/or file with the Court, their opposition/objections thereto, no later than **seven (7) days** before the pre-trial conference. Courtesy copies of any such pleadings filed with the Court **shall** be provided to Division 2 (such courtesy copies shall be marked as "courtesy copies" and shall reflect the file stamp date of the original). Courtesy copies **shall** be emailed to Div2.cir16@courts.mo.gov.

**Any Motions in Limine, deposition designations, interrogatory designations, and/or opposition/objections thereto, which are not timely filed and provided to the Court as set forth above, will not be considered by the Court.**

4.  No later than **seven (7) days** before the pre-trial conference, counsel **shall** provide the Court with an electronic copy of "clean" and "dirty" proposed jury instructions (prepared in accordance with Missouri Rule of Civil Procedure 70), by e-mailing said proposed instructions to Div2.cir16@courts.mo.gov in Word (.doc) format.

5.  The parties **shall** file and exchange witness and exhibit lists and all exhibits they anticipate offering **seven (7) days** prior to the pre-trial conference.

6.  At the pre-trial conference, counsel and the Court will discuss the following subjects, plus any others deemed appropriate:

    (a)  Status of settlement negotiations and examine the possibility of settlement;

    (b)  Length of trial;

    (c)  Number of prospective jurors to be requested, number of alternate jurors to be seated, juror note taking, and juror questions;

    (d)  Invoking the rule;

    (e)  Special or unusual proposed voir dire questions (such as insurance);

    (f)  Legal, procedural, and evidentiary issues;

    (g)  Motions in Limine and opposition thereto, provided they have been timely filed and provided to the Court as set forth in paragraph 4 above. The Court will rule thereon;

    (h)  Proposed jury instructions. In addition to the electronic copies of instructions provided according to paragraph 4 above, the parties **shall** provide the Court and opposing counsel with an original and one hard copy of the proposed jury instructions – i.e. one "clean" copy and one "dirty" copy (prepared in accordance with Missouri Rule of Civil Procedure 70). Counsel shall be prepared to fully discuss the instructions at the pre-trial conference.

    (i)  Deposition designations, reasons for reading portions of depositions (instead of live testimony), foundations for same, including possible waiver thereof or agreement thereon, and objections to reading certain portions of depositions, provided they have been timely filed and/or provided to the Court as set forth in paragraph 4 above. The Court will rule thereon;

    (j)  Designation of any answers to interrogatories or responses to request for admissions which any party proposes to read at trial, and any objections to

reading same, provided they have been timely filed and/or provided to the Court as set forth in paragraph 4 above. The Court will rule thereon;

(k)     Any stipulations of fact and stipulations as to exhibits; and

(l)     Provide and/or file with the Court, an original and one copy of any trial briefs, exhibit lists, and witness lists, and provide copies of same to opposing counsel.

7.     In the event no pre-trial matters are filed prior to the pre-trial conference, the Court will cancel the pre-trial conference and order the requisite number of jurors. Any matters filed after the pre-trial deadlines shall be taken with the trial.

**IT IS FURTHER ORDERED** that all proposed orders and proposed judgments **shall** be emailed to the Court at Div2.cir16@courts.mo.gov in **Word format** **only** and shall not be e-filed. All stipulated orders or consent judgments **shall** be emailed to the Court at Div2.cir16@courts.mo.gov in any format and **shall not be e-filed**.

**IT IS FURTHER ORDERED** that the dates herein set forth shall be changed only by leave of Court.

**IT IS FURTHER ORDERED** that the parties and their attorneys are required to comply with the directives and requirements set forth in the document entitled "Policies, Procedures and Courtroom Decorum" as posted on the Division 2 website.

**IT IS SO ORDERED.**

_____
October 04, 2023
**Date**

_Kenneth R. Garrett III_

**KENNETH R. GARRETT, III, Judge Division 2**

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above and foregoing was hand delivered, emailed, mailed, and/or faxed on this October 4, 2023, to the parties/attorneys who appeared in court as identified in this Order and to other parties/attorneys who are involved in this case but did not appear in court.

**IN THE  16TH JUDICIAL CIRCUIT  COURT, _____ JACKSON COUNTY _____, MISSOURI**

Patricia Sims

       Plaintiff,

               vs.

Kahrs Law Offices, P.a.

       Defendant.

Case Number:  2316-CV13284

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Patricia A Sims, Plaintiff, in the above-styled cause.

/s/ T. Grant Honnold
Thomas Grant Honnold
Mo Bar Number: 75844
Attorney for Plaintiff
2600 Grand Blvd.
Suite 580
Kansas City, MO 64108
Phone Number: (816) 886-8206
tgh@belllawkc.com

### Certificate of Service

I hereby certify that on _____ October 26th, 2023 _____, a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ T. Grant Honnold
Thomas Grant Honnold

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2316-CV 13284 |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE**
**MOTION TO AMEND PLEADINGS AND/OR ADD PARTIES**

COMES NOW, Plaintiff, by and through her undersigned counsel, and respectfully moves this Court for an Order extending her deadline 14 days, up to and including December 15, 2023, to file her Motion to Amend Pleadings and/or Add Parties. In support of this Motion, Plaintiff states the following:

1. The court entered its Case Management Order on October 4, 2023.

2. The current deadline to file the Motion to Amend Pleadings and/or Add Parties is December 1, 2023

3. Due to the holiday and the press of other business, Plaintiff's counsel requests an additional 14 days, up to and including December 15, 2023, to file her Motion to Amend Pleadings and/or Add Parties.

4. Plaintiff has consulted Defendant with respect to this motion, but Plaintiff does not know Defendant's position.

5. The extension of this deadline would cause no prejudice as no other deadlines would be affected.

6.      Plaintiff submits that this requested extension is sought in the interest of justice and not for any undue purpose or delay.

7.      This is Plaintiff's first request for an extension to file her Motion to Amend Pleadings and /or Add Parties.

WHEREFORE, Plaintiff, respectfully requests the Court grant her up to and including December 15, 2023 to file her Motion to Amend Pleadings and/or Add Parties.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell            MO#66841
Jenilee V. Zentrich      MO#72781
T. Grant Honnold         MO#75844
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
**Attorneys for Plaintiff**

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court's e-Filing system on December 1, 2023, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2316-CV 13284 |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME OF TIME FO FILE MOTION TO AMEND PLEADINGS AND/OR ADD PARTIES**

ON THIS day, the court takes up Plaintiff's Motion for Extension of Time to File the Motion to Amend Pleadings and/or Add Parties. After review of the Motion, this Court now enters the following order:

Upon good cause shown, Plaintiff's Motion is hereby GRANTED. Plaintiff shall have up to and including December 15, 2023 to file the Motion to Amend Pleadings and/or Add Parties.

**IT IS SO ORDERED.**

_____
Date

_____
Judge of the Circuit Court

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS,<br>on behalf of herself and others<br>similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 2316-Cv13284** |
| | ) | |
| v. | ) | **CLASS ACTION PETITION** |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

<u>**MOTION FOR LEAVE TO AMEND PETITION**</u>

COME NOW, Plaintiff, by and through her undersigned counsel of record, and respectfully moves this Court for Leave to Amend her Petition. A copy of her Proposed First Amended Petition is attached hereto as Exhibit 1. Plaintiff's proposed amended pleading seeks to add three claims against Defendant and provide additional factual support for Plaintiff's claims. Good cause exists to allow this amendment:

1.      The deadline to amend was December 1, 2023, pursuant to the most recent Scheduling Order, which was entered on October 4, 2023. On December 1, 2023, Plaintiff filed a Motion for Extension of Time to file an amended pleading. That Motion for Extension of Time has not yet been ruled upon.

2.      The core of Plaintiff's claims remains unchanged. Rather, Plaintiff seeks to add additional legal theories. The three proposed claims all arise out of the same set of facts as the current claims, i.e., based on Defendant's unredacted filing of Plaintiff and the putative class members' personal bank account number and routing number.

3.      Rule 55.33(a) requires that motions such as this be freely granted when justice

requires.

4.      Missouri sets forth five factors to consider in determining whether to allow pleadings to be amended: (1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in previous pleadings; (3) timeliness of the application; (4) whether an amendment would cure any defects in the previous pleadings; and (5) injustice to the party(ies) opposing the motion. *Moore v. First Star Bank*, 96 S.W.3d 898, 904 (Mo. App. S.D. 2003). These factors must be analyzed against the backdrop that Missouri's rules "stress granting amendments to pleadings liberally." *Id.* at 903.

5.      <u>Factor One: Hardship.</u> Plaintiff would be prejudiced if this amendment is not granted. Plaintiff would be denied the ability to plead important allegations derived from review of discovery and consideration thereof. Plaintiff would also be deprived of an opportunity to assert different legal theories on behalf of herself and the proposed Class members.

6.      <u>Factor Two: Reasons for not previously including.</u> Plaintiff had not previously plead the legal theories she advances in the proposed amended pleading as she was continuing to research the viability of the legal theories and claims. Plaintiff also seeks to refine her factual allegations after the Court's dismissal of Count I and Count III of her Petition.

7.      <u>Factor Three: Timeliness.</u> Plaintiff requested a two-week extension in which to file the present Motion. While that extension has not yet been ruled upon by the Court, Plaintiff had good cause to request the extension and requested the extension prior to the expiration of the deadline to Amend Pleadings.

8.      <u>Factor Four: Defects in prior pleadings.</u> Thus far, the Court has not held any of Plaintiffs' prior pleadings contained defects that might need to be cured.[1] Thus, this factor is

---

[1] Plaintiff acknowledges the Court's September 17, 2023 Order dismissing Count I: Injunctive Relief and Count III: Violations of the Missouri Right to Privacy Act. Plaintiff is not seeking to readd these claims in the proposed amended

neutral.

9.     <u>Factor Five: Injustice to the party opposing the motion</u>.  Under Missouri law, prejudice is measured by whether the party opposing the motion to amend is deprived of a legitimate claim or defense because they were caught by surprise after that party's strategy had been developed. *Clark v. Kinsey*, 488 S.W.3d 750, 763 (Mo. App. E.D. 2016). The addition of claims based on the same facts and circumstances as existing claims will not prejudice Defendant. Nor will the addition of factual allegations based on discovery in this matter deprive Defendant of any defenses. Discovery is ongoing and does not close until July 15, 2024.

For the foregoing reasons, each of the factors either weighs in Plaintiffs' favor or is neutral, and therefore Plaintiff respectfully requests this Court grant her Motion for Leave to File an Amended Pleading.

---

pleading. However, Plaintiff has left them in her proposed First Amended Petition so as to preserve them in the record for purposes of appeal.

Respectfully submitted,

/s/ Jenilee V. Zentrich
Bryce B. Bell            MO#66841
Jenilee V. Zentrich     MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system on December 15, 2023, and thereby served upon all attorneys of record.

/s/ Jenilee V. Zentrich

Electronically Filed - JACKSON - INDEPENDENCE - December 15, 2023 - 07:05 PM

Electronically Filed - JACKSON - INDEPENDENCE - January 03, 2024 - 05:38 PM

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2316-Cv13284 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE HER MOTION FOR**
**CLASS CERTFICIATION**

COME NOW, Plaintiff, by and through her undesigned counsel of record, and respectfully moves this Court enter an order extending the time in which Plaintiff must file Plaintiff's Motion for Class Certification by seven (7) days, up to an including January 10, 2024. In support of her motion, Plaintiff states as follows:

1.    The operative scheduling order for this matter was entered October 4, 2023.

2.    The operative scheduling order provides that all requests for class certification be filed no later than January 3, 2024.

3.    Due to the press of other business, and the holiday season, Plaintiff's counsel seeks an extension of this deadline for Plaintiff's Motion for Class Certification to be filed.

4.    Pursuant to Missouri Rule of Civil Procedure 44.01(b), Plaintiff respectfully requests that the Court enter an order extending the time in which Plaintiff must file Plaintiff's Motion for Class Certification by an additional seven (7) days, up to and including January 10, 2024.

5.      Good cause exists for the extension, and this motion is not made for purposes of delay, nor will it prejudice either party.

6.      Plaintiff has consulted Defendant with respect to this motion, but Defendant has not yet responded. As such, Plaintiff does not know if Defendant opposes her request for an extension of time.

7.      This is the first time Plaintiff or Plaintiff's counsel has requested an extension of time with respect to filing Plaintiff's Motion for Class Certification.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order extending the time in which Plaintiff must file Plaintiff's Motion for Class Certification by seven (7) days, up to and including January 10, 2024.

Respectfully submitted,

*/s/ T. Grant Honnold*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich    MO#72781
T. Grant Honnold       MO#75844
**Bell Law, LLC**
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Courts' e-Filing system on January 3, 2024 and thereby served upon all Attorneys of Record.

*/s/ T. Grant Honnold*

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | |
|---|---|
| **PATRICIA A. SIMS,** | ) |
| **on behalf of herself and others** | ) |
| **similarly situated,** | ) |
| | ) |
| **Plaintiff,** | )      **Case No. 2316-Cv13284** |
| | ) |
| **v.** | ) |
| | ) |
| **KAHRS LAW OFFICES, P.A.,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>ORDER</u>**

This matter is before the Court on Plaintiff's Motion for Extension of Time filed on January 3, 2024. The Court finds that the Motion is well-founded and should be granted.

IT IS THEREFORE ORDERED that the deadline for Plaintiff to file Plaintiff's Motion for Class Certification is extended and Plaintiff shall file Plaintiff's Motion for Class Certification by January 10, 2024.

DATED this _____ day of January, 2024.

_____
JUDGE

Electronically Filed - JACKSON - INDEPENDENCE - January 09, 2024 - 04:08 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

PATRICIA A. SIMS, on behalf of herself          )
and others similarly situated,                           )
                                                                        )
                                            Plaintiff,          )          Case No. 2316-CV13284
                                                                        )
vs.                                                                    )
                                                                        )
KAHRS LAW OFFICES, P.A.,                             )
                                                                        )
                                            Defendant.       )

<u>**DEFENDANT'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR**</u>
<u>**LEAVE TO AMEND PETITION**</u>

COMES NOW Defendant Kahrs Law Offices, P.A., by and through its counsel of record, and provides its Suggestions in Opposition to Plaintiff's Motion for Leave to File Amend Petition:

Plaintiff's original Class Action Petition ("Petition") was filed on May 17, 2023, and in that Petition, Plaintiff filed three claims: (1) Injunctive Relief, (2) Negligence, and (3) Violations of the Missouri Right to Financial Privacy Act ("MRFPA"). On September 17, 2023, this Court dismissed Plaintiff's claims for injunctive relief and for the alleged violation of the MRFPA. Now, Plaintiff seeks leave to assert additional claims against Defendant in this action. Rule 55.33(a) provides that "leave shall be freely given *when justice so requires.*" (emphasis added). In this case, justice does not require leave for Plaintiff to amend her Petition.

Courts consider a number of factors in determining whether to grant leave to amend a petition. *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 328 (Mo. App. W.D. 2023). The factors include: "the reasons for the moving party's *failure to include the matter in the original proceedings;* whether there is *any prejudice* to the non-moving party; and whether there will be hardship to the party requesting amendment if the request is denied." *Id.* A Court does not abuse its discretion in denying a motion to amend when "the moving party fail[s] to show the pleadings

include any facts that were *unknown* when the original pleading was filed." *Id.* (quoting *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 92 (Mo. App. E.D. 2012)). Additionally, "[a] trial court does not err when it denies a motion to amend a pleading to assert a claim that possesses no merit." *Id.* (quoting *Fosket v. City of Dixon*, 398 S.W.3d 571, 573 (Mo. App. S.D. 2013)).

Therefore, Plaintiff's motion for leave to amend her petition must fail for two reasons: (1) all of the claims asserted in the Petition were known or should have been known at the time the original petition was filed on May 17, 2023 and/or (2) the additional claims asserted lack merit.

### A. All claims were known or should have been known by Plaintiff at the time the original Petition was filed on May 17, 2023.

The Court must consider the procedural history of this case. Plaintiff initially filed her class action Petition in the United States District Court for the District of Kansas on March 23, 2022. The case was litigated in that Court for just over one year until the case was dismissed for lack of jurisdiction on March 31, 2023. During its pendency in federal court, the parties conducted extensive discovery, including interrogatories, requests for production, and depositions of the parties. In fact, Plaintiff acknowledged in her Petition that: "Class discovery is complete; class certification has previously been fully briefed and ready to be filed." Petition ¶ 3. Further in her Motion, Plaintiff acknowledges that: "The core of Plaintiff's claims remains unchanged. Rather, Plaintiff seeks to add additional theories." Plaintiff's Motion for Leave to Amend ¶ 2. Plaintiff concedes that these new theories "arise out of the same set of facts as the current claims, i.e., based on Defendant's unredacted filing of Plaintiff and the putative class members' personal bank account number and routing number." Plaintiff's Motion for Leave to Amend ¶ 2. Because these facts were known to Plaintiff at the time the Petition was filed in this Court, Plaintiff should be denied leave to amend her Petition.

Furthermore, Plaintiff indicates that she failed to include the new legal theories because "she was continuing to research the viability of the legal theories and claims." Plaintiff's Moton for Leave to Amend ¶ 6. Plaintiff provides no case law where deficient legal research was a viable basis for obtaining leave to amend. Allowing Plaintiff to amend her Petition at this point, after class discovery has been completed for no reason other than Plaintiff's lack of diligence in filing her claims, will be substantially prejudicial to Defendant, who will need to depose Plaintiff a second time, and likely Plaintiff will seek the deposition of Defendant again.

As such, the factors set forth in *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 328 (Mo. App. W.D. 2023), weigh strongly against allowing Plaintiff leave to amend her Petition.

**B. The new claims asserted in Plaintiff's Proposed Petition lack merit.**

"A trial court does not err when it denies a motion to amend a pleading to assert a claim that possesses no merit." *Moore*, 534 S.W.3d at 328. Each of the claims asserted by Plaintiff in the Amended Petition fails as a matter of law.[1]

**1. Injunctive Relief and MRFPA claim**

In her Proposed Petition ("Amended Petition"), Plaintiff seeks to reassert two claims that have previously been dismissed by this Court: (1) the claim for injunctive relief, and (2) the alleged violation of the MRFPA. Plaintiff acknowledges that the Court has previously dismissed these claims, however, Plaintiff argues the claims must be included for purposes of preserving the claims for appeal. This is not the case. In *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 543 (Mo. App. E.D. 2001), the Court held that: "The general rule is that the filing of an amended pleading

---

[1] Defendant acknowledges that it previously sought dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted, and the Court denied that motion with respect to the negligence motion. Defendant maintains that the negligence claim does not state a claim upon which relief can be granted, but Defendant will not reiterate those arguments herein. However, Defendant incorporates its argument set forth in its Suggestions in Support of its Motion to Dismiss.

operates as an 'abandonment' of the original petition." However, there is an exception: "when a plaintiff has suffered dismissal or summary judgment with respect to some but not all of the claims in his petition, and the plaintiff then files an amended pleading omitting mention of the defendants in whose favor judgment has already been granted, the appellate court will <u>not</u> deem that the plaintiff has 'abandoned' his claims . . . ." *Id.* (citing *Prayson v. Kan. City Power & Light Co.*, 847 S.W.2d 852, 859 (Mo. App. W.D. 1992)). As such, there is no need for Plaintiff to refile these claims in her Petition, and doing so, will waste the parties' time and the Court's time, which was the rationale in *Beckmann*: "the court and the parties should not be required to engage in useless procedural gestures in order to preserve the propriety of the dismissal for review." *Id.* (quoting *R.C. v. Sw. Bell Tel. Co.*, 759 S.W.2d 617, 619-20 (Mo. App. E.D. 1988).

### 2. Alleged violations of the Fair Debt Collection Practices Act

Plaintiff also attempts to reassert a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), which was previously pled in the Class Action Complaint filed in the United States District Court of Kansas. The Court specifically dismissed that claim because Plaintiff lacked standing. In its Memorandum and Order, attached hereto as Exhibit A, the Court held:

> Relevant to standing, Plaintiff has asserted that she suffered the following concrete injuries as a result of [Defendant's] conduct: 1) the loss of the value of her personal information; 2) 'risk of identity theft and identity harm;' and 3) garden variety emotional distress.

Exhibit A at 5 (quoting Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 3-4). Plaintiff merely "allege[d] that she and the class have been 'deprived of the value' of their [personally identifiable information]. Exhibit A at 11 (quoting Plaintiff's Complaint at ¶¶ 48, 84, 100). The Court noted that Plaintiff's allegation was conclusory, that:

> Even if Plaintiff's [personally identifiable information] has monetary value, she fails to allege any facts explaining how this value was lost due to the disclosure. For example, she does not allege that she tried to sell her information and couldn't sell it or was offered less than its value due to the disclosure by [Defendant].

Exhibit A at 11.

The Court further held that the alleged "risk of identity theft and identity harm" due to the disclosure of her PII was insufficient to confer standing under the FDCPA. Exhibit A at 11. The Court reasoned: "An allegation of mere risk of future harm—without plausible allegations that such risk is either imminent or caused a separate concrete harm—cannot be the basis for standing." Exhibit A at 11-12 (citing *TransUnion v. Ramirez*, 141 S.Ct. 2190, 2210-11 (2021). Because "Plaintiff's 'risk' of injury is not concrete in that Plaintiff has failed to allege any facts that would lead the court to determine that Plaintiff is at imminent risk of identity theft," the alleged risk is too speculative to satisfy the requirement that threatened injury must be "certainly impending." Exhibit A at 12.

Plaintiff additionally included "garden variety emotional distress," and the Court again held that was insufficient to confer standing under Article III. The Court construed the Class Action Complaint "as stating she was aggravated, inconvenienced, embarrassed, frustrated, and suffered distress as a result of her information being filed on the public docket in the Missouri Court system." Exhibit A at 13. "Based on [Plaintiff's] allegations, the court [found] that these alleged *intangible* injuries are not sufficient to establish a concreted injury under the FDCPA." Exhibit A at 13.

Plaintiff has not alleged any additional injury beyond what was included in the Class Action Complaint filed in federal court or the initial Petition filed in this Court. As such, Plaintiff's new claim for violating the FDCPA still fails, and for that reason, Plaintiff should not be given leave to amend.

Even if the Court determines that Plaintiff has standing under the FDCPA, then Plaintiff fails to state a claim upon which relief can be granted. To prevail on an FDCPA claim, the plaintiff

must plead four elements: "(1) plaintiff must be a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt at issue must arise 'out of a transaction entered into primarily for personal, family, or household purposes;" (3) defendant must be a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) through its actor omissions defendant must have violated the FDCPA." *Tavernaro v. Pioneer Credit Recovery*, 2020 U.S. Dist. LEXIS 176456, *5-6 (D. Kan. Sept. 25, 2020). Although Plaintiff has sufficiently pled the first three elements of *Tavernaro*, Plaintiff has not sufficiently pled that Kahrs' actions violate the FDCPA. Plaintiff generally alleges that Defendant committed an unfair practice when it publicly filed Plaintiff and the putative class members' financial information and allegedly placed them at risk of identity theft/ identity fraud. First, this statement is a legal conclusion, which should not be given deference by this Court, and second, Plaintiff's legal conclusion is erroneous because several courts have held that the publication of personal information in court filings does not violate the FDCPA. Defendant is unaware of any case where the publication of financial account information in a court filing has been held to constitute a violation of the FDCPA, and in all of the briefing on this issue while the case was pending in the District Court of Kansas, also Plaintiff failed to identify such a case.

In *Feltman v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2008 U.S. Dist LEXIS 99966, *13 (N.D. Ill. Dec. 11, 2008), the plaintiff alleged that a law firm violated the FDCPA when the firm submitted exhibits containing Feltman's social security number on multiple occasions. The Court first determined that the claim was time-barred but went on to hold that the publication did not violate section 1692d reasoning that:

> [W]e do not think that filing an exhibit in a lawsuit is conduct, the natural consequence of which is to harass, abuse or oppress. The document containing Feltman's social security number was a copy of the application for credit at issue in the case, was relevant to the case, and was legitimately filed. Although we understand Feltman's concern that her social security number may have been disclosed, we note that the case never went to trial, so it is unlikely that anyone

outside of the clerk's office or the judge's chambers saw the documents at issue. *Moreover, this is simply not the behavior contemplated by § 1692d.*

*Id*. at 16-17. (emphasis added). The Court dismissed Feltman's FDCPA claim. *Id*. at 17. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 236 (4th Cir. 2015) (failure to redact social security number was not an "unfair or unconscionable means of debt collection under the FDCPA"); *Diaz v. Midland Funding, LLC*, 2017 U.S. Dist. LEXIS 156440 (D. N.J. Sept. 22, 2017) (publication of a debtor's full social security number did not violate the FDCPA even though New Jersey procedural rules prohibited the publication of more than three digits).

Similarly, in *Pittenger v. John Soliday Fin. Grp., LLC*, 2010 U.S. Dist LEXIS 45465, *10-11 (N.D. Ohio May 10, 2010), the court relied on *Feltman* and held that the publication of a debtor's social security number, birthdate, and other personal information in a state court filing did not violate the FDCPA.

In *Tschudin v. Brumbaugh & Quandahl, P.C., LLO*, 2014 U.S. Dist. LEXIS 175662, *1 (D. Neb. Dec. 8, 2014), a law firm attached to a state court complaint an exhibit containing a debtor's loan account number, date of birth, and social security number. The debtor filed suit alleging the publication of the debtor's information violated the FDCPA and was an invasion of privacy under Nebraska law. *Id*. at *1-2. The Court relied on *Feltman* and *Pittenger* and held that the debtor failed to state a claim as a matter of law and dismissed the FDCPA claim with prejudice. *Id*. at *6. Because the publication of financial information is not an unfair or unconscionable practice, Plaintiffs' claim for a violation of the FDCPA fails as a matter of law.

### 3. Breach of Implied Contract

Plaintiff seeks to add additional contract terms that were never contemplated by the parties at the time the contract was executed. "It is a general rule of law that when parties reduce their agreements to writing it is *presumed that the instrument contains their entire contract*, and the

Electronically Filed - JACKSON - INDEPENDENCE - January 09, 2024 - 04:08 PM

court *will not read into it additional provisions* unless this be necessary to effectuate the intention of the parties as disclosed by the contract as a whole." *Conservative Fed. Sav. & Loan Assoc. v. Warnecke*, 324 S.W.2d 471, 478 (Mo. App. E.D. 1959). Before courts "insert an implied term into a contract: (1) the implication must arise from the language used in the contract or it must appear from the language used that the implication was so clearly within the contemplation that they deemed it unnecessary to express it; (2) the implication must be indispensable to effectuate the intention of the parties; (3) the implication can only be justified on the grounds of legal necessity; (4) the implication can only be justified where it can be rightly assumed that it would have been made if attention had been called to it; and (5) there can be no implication where the subject is completely covered by the contract. *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 696 (Mo. App. E.D. 2001) (citing *Conservative Fed. Sav. & Loan Assoc.*, 324 S.W.2d at 479).

Plaintiff acknowledges that she had a written agreement with Advance Financial, however, there is no allegation that the parties contemplated the disclosure of financial information in subsequent court filings. The purpose of providing the financial information was to provide a method for an electronic transfer of funds. Neither party contemplated that the unredacted account agreement would be filed in connection with a default. As such, Plaintiff's claim for breach of implied contract fails as a matter of law, and Plaintiff should not be given leave to amend her petition.

**4.     Alleged Violations of the Missouri Merchandising Practices Act ("MMPA")**

Plaintiff's claim for violations of the MMPA fails as a matter of law. To prevail on an MMPA, Plaintiff must establish that she (1) purchased merchandise (which includes services) *from Defendants*; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices

Act. *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016) (citing *Hess v. Chase Manhattan Bank, USA N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007)) (emphasis added). Plaintiff's claim does not satisfy the first and fourth elements of *Murphy*.

First, Plaintiff does not allege that she purchased merchandise or services from Defendant. Instead, Plaintiff's claim arises because she was compelled to obtain legal services because of Defendant's actions. Amended Petition ¶ 137-38. Plaintiff omits that the legal services were obtained, not from Defendant, but from her counsel in this litigation. As such, Plaintiff's MMPA claim is wholly without merit and should be rejected for that basis alone.

Even if the Court finds that the first element is satisfied, Plaintiff still fails to satisfy the fourth element of *Murphy*, which requires Plaintiff to assert Defendant committed an act declared unlawful under the Merchandising Practices Act. In her Amended Petition, Plaintiff merely identifies one alleged violation—that Defendant "fail[ed] to perform reasonable due diligence to identify information to redact before publicly filing the Agreement." Amended Petition ¶ 142. This is not unlawful conduct under the Merchandising Practices Act, and Plaintiff does not explain how the MMPA applies in this case. The Amended Petition merely cites sections of the Missouri Code of State Regulations without applying the facts to the code in any fashion. There is absolutely no allegation set forth in the petition that Defendant engaged in fraud or deception or other illegal conduct. The unintentional failure to redact financial information is not an unconscionable practice. Consequently, Plaintiff's claim for a violation of the MMPA as set forth in her Amended Petition fails as a matter of law, and this Court should deny leave to Amend.

WHEREFORE, Defendant Kahrs Law Offices, P.A., requests this Court's Order denying Plaintiff's Motion to Amend her Petition and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: _/s/Daniel F. Church_
    DANIEL F. CHURCH       #34936
    BRITTAIN E. McCLURG    #72016
    8330 Ward Parkway, Suite 300
    Kansas City, Missouri 64114
    (816) 382-1382
    Facsimile: (816) 382-1383
    dchurch@mwcattorneys.com
    bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 9th day of January the above and foregoing was filed with the Clerk of the Court using the electronic filing system which services notice via electronic mail, to:

Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFF*

*/s/Daniel F. Church*
ATTORNEY FOR DEFENDANT

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2316-CV13284 |
| | ) | Division 2 |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

COMES NOW, Defendant/Counterclaim Plaintiff Patricia Sims ("Sims") and, pursuant to Mo. Sup. Ct. R. 52.08, moves the Court for an order certifying this case to proceed as a class action; appointing Sims as representative of the proposed class defined herein; and appointing Sims' counsel as counsel for that class. In support of this Motion, Sims provides the following memorandum of law:

# INTRODUCTION

**I.      Defendant Kahrs Law Office, P.A. publicly filed unredacted personally identifying information of Plaintiff and the proposed class members.**

Defendant Kahrs Law Office, P.A. ("KLO") is a debt collector.[1] Its principal place of business is in Wichita, Kansas.[2] This case pertains to KLO's conduct in publicly filing unredacted personally identifying information ("PII") in debt collection lawsuits it files in Missouri. According to KLO, PII includes bank account and routing numbers.[3]  KLO admits that Missouri has rules which require it to redact PII from publicly filed documents.[4] It simply did not follow those rules.[5]

From at least 2020, and continuing through at least early 2022, KLO attached a complete, unredacted copy of the alleged contract between Advance Financial and the alleged debtor to its debt collection lawsuits.[6] Advance Financials' contract documents are form documents, used in Missouri,[7] which include the alleged debtors' complete bank account and routing numbers.[8] When KLO filed these lawsuits on behalf of Advance Financial, KLO did not redact, in whole or in part, the alleged debtors' bank account and routing numbers.[9] Additionally, KLO's filings included the alleged debtors' first and last name, middle initial, address, telephone number, and the last four digits of their social security number.[10]

---

[1] **Exhibit 1** (Deposition of Mark Kahrs) at 47:16-21.
[2] **Exhibit 1** at 48:2-7.
[3] **Exhibit 1** at 11:10-24.
[4] **Exhibit 1** at 12:1-19, 13:2-14:17, 15:24-3, Deposition Exhibit 49, Deposition Exhibit 52; *see also* 509.520 R.S.Mo.; Missouri Supreme Court Operating Rule 2.02.
[5] While the merits issue of whether this failure was intentional or negligent is not before the Court at this juncture, the evidence on this point will be uniform given the policies and procedures at issue, as detailed more below.
[6] **Exhibit 2** (Laurie Kahrs Deposition) at 110:10-11:2, 142:3-16.
[7] **Exhibit 1** at 19:24, 28:24-30:11, Deposition Exhibit 10.
[8] **Exhibit 2** at 142:3-16.
[9] *Id.*
[10] *Id.*

## II. KLO's policies and procedures are uniform and do not vary materially from case to case.

KLO's relevant policies and procedures are uniform with no material differences from class member to class member:

- From 2019 through January 2022, KLO's policies and procedures "were pretty consistent."[11]

- Changes in January 2022 were made in response to notification to KLO by Plaintiff of the public filing of the confidential financial information at issue in this case.[12]

- The evidence shows that these policies and procedures are uniform as to each potential class member.[13]

- The instructions and training given to KLO employees with regard to redactions are also the same.[14]

- All the pleadings filed by KLO are drafted and approved by an attorney through the use of JST, which "macro[es]" information into a template.[15]

- Mark Kahrs is generally the attorney responsible for reviewing the military affidavit, and an attorney—either Mark Kahrs or Laurie Kahrs—is responsible for reviewing the contract documents which are filed with the pleading.[16]

In short—whatever way those policies and procedures may lead the jury, they are common to the class.

---

[11] **Exhibit 2** at 110:11-17.
[12] **Exhibit 2** at 110:11-22, 112:10-113:3, 113:22-114:10, Deposition Exhibit 29.
[13] **Exhibit 1** at 34:16-35:13.
[14] **Exhibit 2** at 120:21-25; **Exhibit 1** at 60:23-61:4.
[15] **Exhibit 2** at 53:16-19; **Exhibit 1** at 42:3-43:6.
[16] **Exhibit 2** at 53:16-54:8; **Exhibit 1** at 35:24-36:13, 40:7-21.

3

**III.    KLO's conduct has irreparably harmed Plaintiff and the class members.**

Now that it has been exposed, Plaintiff's and the class members' PII "cannot be eradicated from the public domain and can never be made private again."[17] Plaintiffs' expert,[18] Anthony D'Angelo, goes into extensive detail in his report concerning the ways in which this public disclosure has already harmed Plaintiff and the class.

**a.    Account Takeover ("ATO") Fraud.**

KLO's public disclosure dramatically increases the risk of Plaintiff's and the class members' falling victim of "account takeover fraud, commonly referred to as ATO fraud."[19] Malicious actors perpetrate ATO identity fraud to gain unauthorized access to bank accounts, credit cards, e-mail accounts, social media, consumer loyalty accounts, and others.[20] This fraud causes real harm. Javelin Strategy and Research published a study reflecting that "approximately 42 million Americans were victims of identity fraud in 2021 resulting in losses totaling 52 billion dollars."[21] ATO fraud specifically increased by approximately 90% year-over-year from 2020 to 2021, with losses estimated at $11.4 billion.[22] Professionals in the IT Security sector worldwide are increasingly citing ATO fraud as among the most pervasive—and escalating—threats in the industry.[23]

Victims of ATO fraud see a variety of damage. For example, nearly half have money stolen, 42% see unauthorized credit or debit card purchases, 29% suffer identity theft, and 16% suffer subsequent account takeovers.[24]

---

[17] **Exhibit 3** (D'Angelo Report) at ¶ 21.
[18] Mr. D'Angelo's qualifications are outlined in his Report at ¶¶ 5-6, 8-16 (**Exhibit 3**).
[19] **Exhibit 3** at ¶ 28.
[20] **Exhibit 3** at ¶ 29.
[21] **Exhibit 3** at ¶ 26.
[22] **Exhibit 3** at ¶ 31.
[23] **Exhibit 3** at ¶ 32.
[24] **Exhibit 3** at ¶ 41-42.

4

**b. Tax Return Fraud.**

KLO's conduct also significantly increased Plaintiff's and the class members' susceptibility to other forms of fraud, such as tax return fraud.[25] Tax return fraud occurs when someone utilizes a person's PII to steal their tax refund.[26]

**c. Social Security Fraud.**

Social Security fraud can occur after a person's sensitive PII has been improperly disclosed, as here.[27] Social Security fraud occurs when the imposter steals a person's PII and extract payments from Social Security under the guise of being their victim.[28] This can happen without the victim knowing. Frequently, the perpetrator will not pay taxes on those payments, resulting in the IRS pursuing the victim.[29] Fixing this fraud is an exhausting and time-intensive process which requires working with the Internal Revenue Service, Social Security Administration, and the relevant law enforcement agencies.[30] But even then, the victim must diligently monitor their credit accounts and tax filings for the rest of their lives.[31] Alternatively, a victim could secure a new Social Security number—an option which comes with its own set of headaches, such as the loss of credit history.[32]

**d. Negative Credit Reporting.**

The exposure of sensitive PII can also harm a victim's credit, as the malicious actor can take out loans, rent apartments, obtain cell phone service, and other items in the victim's name.[33]

---

[25] **Exhibit 3** at ¶ 43-45.
[26] **Exhibit 3** at ¶ 43-45.
[27] **Exhibit 3** at ¶ 46.
[28] **Exhibit 3** at ¶ 46.
[29] **Exhibit 3** at ¶ 47.
[30] **Exhibit 3** at ¶ 48.
[31] **Exhibit 3** at ¶ 48.
[32] **Exhibit 3** at ¶ 49-50.
[33] **Exhibit 3** at ¶ 51.

5

### e. Criminal Activity.

Another possibility is criminal activity. A malicious actor can use the victim's PII to commit crimes, which would be pinned on the victim.[34] Any criminal arrest would appear on a background check, impacting job prospects, credit rating, and applications for things like apartments, mortgages, or other forms of credit.[35] The time required for a victim to clear their name—assuming they even can—is substantial, requiring the victim to obtain a "clearance record," "certificate of release," or similar record to prove innocence should the need arise in the future.[36]

### f. Repairing the damage—if possible—often takes years and requires diligence for the rest of the victim's life to prevent future harm.

When a victim is able to reverse the impact of identity fraud, it can take years to do so.[37] COVID has only made the situation worse, as the time it takes to fix these issues has grown substantially.  Specifically, only 1% of survey respondents were able to resolve identity fraud in a single day.[38] Up to 37% of pre-pandemic victims whose PII was compromised in 2019 had not resolved the problems by May 2020.[39] That number has only grown.  By April 2021, as many as 75% of victims who suffered identity fraud in 2020 had still been unable to resolve the problems.[40]

This is generally limited, however, to stopping future harm.  Most victims still find themselves out of pocket significant sums.  While most—fortunately—suffer losses under $500.00, 21% suffered losses in excess of $20,000.00.[41] According to the Federal Trade Commission, the average financial loss to identity theft was $1,350 in 2020, increasing to $1,551

---

[34] **Exhibit 3** at ¶ 52.
[35] **Exhibit 3** at ¶ 53.
[36] **Exhibit 3** at ¶ 54.
[37] **Exhibit 3** at ¶ 58-59.
[38] **Exhibit 3** at ¶ 61.
[39] **Exhibit 3** at ¶ 61.
[40] **Exhibit 3** at ¶ 61.
[41] **Exhibit 3** at ¶ 63.

in 2021.[42] When the problem entails ATO fraud, victims lose—on average—approximately $12,000.00.[43]

The elderly are particularly susceptible, and typically suffer more losses. Define Financial released statistics in 2022 showing that victims under 60 would average $300.00 in losses, while victims over 60 suffered an average of $1,100.00 in losses.[44]

Because—once in the public domain—this information can never be made private again, the only way a victim can mitigate the risk of future harm is to exercise extreme diligence. Indeed, it could require the following activities for the rest of the victim's life:

- Placing fraud alerts with the three major U.S. credit reporting agencies (CRAs);

- Procuring copies of credit reports from the three CRA's;

- Placing a security freeze on their credit report—which must be lifted and then reinstated whenever the victim wishes to apply for any form of credit or do anything which would require their credit to be checked;

- Obtaining documents related to fraudulent transactions or accounts opened using their personal information;

- Obtaining information from debt collectors;

- Disputing fictitious accounts with debt collectors and the CRAs;

- Blocking the reporting of damaging information to the CRAs so it doesn't appear in credit reports—which the CRAs are not always willing to do;

- Stop businesses from reporting inaccurate information to the CRAs;

- Contacting the businesses and banks where identity fraud occurred;

- Reporting the identity theft to the Federal Trade Commission (FTC);

- Filing an identity theft report with local law enforcement;

---

[42] **Exhibit 3** at ¶ 64.
[43] **Exhibit 3** at ¶ 65.
[44] **Exhibit 3** at ¶ 66.

- Contacting the IRS if tax-related identity theft is suspected or benefits are impacted;

- File an online complaint with the FBI's Internet Crime Complaint Center;

- Alert health insurance companies and medical care providers;

- Reach out to the state DMV or licensing agency;

- Regularly review financial statements, credit, utility, medical, criminal and other statements for suspicious activity; and,

- Routinely monitor public records and criminal records for inaccurate information.[45]

Of course, taking these actions requires the victim to know they are necessary, that they are possible, and how to do them. Here, there is no evidence that KLO has even notified putative class members of the situation,[46] only adding to the risk, as the victims have no way of knowing what has now been imposed upon them against their will.

Fortunately, there are many identity theft protection services. While far from perfect, they do help. These services, however, are not a one-time payment. Rather, they are subscription services, which will require the victim to pay for them for the rest of their lives. The price of these services can range from $6.75 per month to $50.00 per month, or more.[47] These costs are fixed, and do not vary from class member to class member.

---

[45] **Exhibit 3** at ¶ 78, 95.

[46] KLO has filed a motion to seal or increase security in many of these cases and mailed a copy to the alleged debtor. However, that motion (1) does not actually acknowledge that the disclosure did in fact happen; (2) does not identify what information was publicly disclosed or to whom that information belonged; and (3) does not provide steps the debtor can take to secure their information and/or mitigate their damages. **Exhibit 4** (example motion to increase security filed in the lawsuit against Plaintiff). Accordingly, that motion does not provide this notice, and this deficiency is likely the reason several courts have rejected KLO's motion.

[47] **Exhibit 3** at ¶ 87, 92-93.

## IV. Overview of the Claims.

Stemming from KLO's public disclosure of sensitive PII, Plaintiff—individually and on behalf of the proposed class—brings one claim:[48] Plaintiff alleges that KLO's conduct in publicly filing this sensitive PII was negligent.

### THE PROPOSED CLASS & SUB-CLASS

Sims seeks certification of the following Class:

> All persons against whom Kahrs Law Offices, P.A. filed a lawsuit in Missouri in which Kahrs Law Offices, P.A. filed court documents which included the person's Personally Identifying Information, including but not limited to the complete and unredacted bank account number(s) and/or routing number(s), on or after March 24, 2019 through the date the Class is certified.

Sims also seeks certification of the following Sub-Class:

> All Class members against whom Kahrs Law Offices, P.A. filed a lawsuit on or after March 24, 2021 through the date the Class is certified or who were never served with summons.

### ARGUMENTS & AUTHORITIES

"Class actions serve an important function in our system of civil justice," enabling vindication of "the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[49] Classes also promote judicial economy, by enabling plaintiffs—like here—to pool claims that would be uneconomical to litigate individually.[50]

---

[48] Plaintiff's Motion for Leave to File an Amending Pleading is currently pending. Plaintiff's proposed First Amended Petition contains six claims but Count One and Count Three have previously been dismissed by this Court and are only in the proposed First Amended Petition for purposes of preserving the record for appeal. If Plaintiff's Motion for Leave to Amend is granted, Plaintiff would seek to represent a class on her four claims in the proposed First Amended Petition.

[49] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 and n. 11 (1981) (internal citation and quotation omitted).

[50] *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2004); *Beatty v. Metropolitan St. Louis Sewer Dist.*, 914 S.W.2d 791, 794 (Mo. banc 1995) (overruled on other grounds); *Phillips Petrol. v. Shutts*, 472 U.S. 797, 808-09 (1985).

9

"Whether to certify a class is committed to the broad discretion of the trial court. In exercising this discretion, the Court should err on the side of class certification because it has the authority to later redefine or even decertify the class if necessary."[51] In Missouri, this manifests as a presumption in favor of certifying a class because classes may later be modified and/or decertified.[52] Additionally, class-certification rules are broadly interpreted, with all doubts resolved in favor of certification.[53]

Missouri Supreme Court Rule ("Rule") 52.08 governs class actions and imposes four prerequisites for certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Sims seeks to certify a Rule 52.08(b)(3) class, which requires two additional showings: that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Because Rule 52.08 and Federal Rule of Civil Procedure 23 are nearly identical, "it is well settled that federal interpretations of Rule 23 are relevant in interpreting Rule 52.08."[54]

Sims bears the burden of proof for these elements.[55] In evaluating this showing, the Court should not "blindly rely" on any conclusory allegations, but the Court "must accept the substantive allegations of the complaint as true."[56] Sims' burden of proof is that of a *prima facie* showing of

---

[51] *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 503 (D. Kan. 2014); *see also Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 166 (Mo. Ct. App. E.D. 2019).

[52] *Doyle v. Fluor Corp.*, 199 S.W.3d 784, 787-88 (Mo. Ct. App. E.D. 2006); *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 164 (Mo. Ct. App. W.D. 2006); *see also* Mo. Sup. Ct. R. 52.08(c)(1).

[53] *Adams v. Mitsubishi, Ltd.*, 133 F.R.D. 82, 88 (E.D.N.Y. 1989); *Sollenbager v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 435 (D.N.M. 1988); *Keasler v. Nat. Gas Pipeline of Am.*, 84 F.R.D. 364, 365 (E.D. Tex. 1979).

[54] *DaimlerChrysler*, 204 S.W.3d at 161.

[55] *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 617 (D. Kan. 2014).

[56] *Nieberding*, 302 F.R.D. at 617; *see also Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409, 413-14 (Mo. Ct. App. W.D. 2015) ("the named plaintiffs' allegations are accepted as true"); *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) (observing that a district court must "accept the substantive allegations of the complaint as true").

the elements for class certification.[57] Sims can meet her burden of proof by relying on his allegations, which are "taken as true to the extent they are uncontroverted by the defendant's [evidence],"[58] or "demonstrate[ed] via affidavit or other written materials."[59] If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by [defendants]."[60]

While Sims is cognizant of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Missouri courts after *Dukes* continue to recognize that the determination of class certification primarily revolves around the allegations in the petition, which are taken as true for the purposes of this motion.[61] *Elsea*, decided four years after and citing *Dukes*, explained:

> Thus, the trial court has no authority to conduct a preliminary inquiry into whether the plaintiff has stated a cause of action or will prevail on the merits. Although the class certification decision lies in the circuit court's discretion the courts should err in close cases in favor of certification because the class can be modified as the case progresses. The issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action. While some evidence relating to the merits may be considered in determining whether the class certification prerequisites have been met, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class.[62]

In *Elsea*, the trial court heard—and accepted—expert testimony and evidence presented by defendants in denying class certification.[63] Applying the principles above, the court of appeals held that the trial court erred in both refusing to accept the plaintiff's allegations and evidence as true, as well as focusing on remaining individual questions related to the case.[64] "[T]he possibility, or

---

[57] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).
[58] *Am. Land Program, Inc. v. Bonaventura*, 710 F.2d 1449, 1454 (10th Cir. 1983).
[59] *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).
[60] *Am. Land*, 710 F.2d at 1454, n.2.
[61] *See, e.g., Elsea*, 463 S.W.3d at 409, 417 (*reh'g and/or t'fer denied* (Apr. 28, 2015); *t'fer denied* (June 30, 2015)).
[62] *Id.* at 416 (internal citations and quotations omitted).
[63] *Id.* at 419.
[64] *Id.*

even inevitability, that the class will include members not injured by the defendant's conduct does not preclude class certification."[65] And, although some discussion of the merits is inevitable, "the court should not pass judgment on the merits of the case at the class certification stage."[66] "Rule 23 grants courts no license to engage in free-ranging merits inquiries. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[67] "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[68]

Further, Missouri has adopted the general rule that an evidentiary hearing is not necessary to determine whether a class action may be maintained.[69] Instead, trial courts are permitted to exercise their discretion and determine whether class certification is proper based on briefs, affidavits, and other evidence presented.[70] Sims believes this motion is more than sufficient to warrant class certification but would gladly participate in a hearing if the Court deems it necessary or appropriate.

## I. The Proposed Class is Ascertainable.

Ascertainability tests the definition of the class itself and is ultimately a question of whether class members can be identified by reference to objective criteria.[71] The goal of the ascertainability requirement is to ensure that the members of a proposed class "can be identified at the

---

[65] *In re Syngenta AG MIR 162 Corn. Litig.*, Case No. 14-MD-2591-JWL, 2016 WL 5371856, at *1, 4 (D. Kan. Sept. 26, 2016).
[66] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citation omitted).
[67] *See also Amgen v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citations omitted).
[68] *Shook*, 386 F.3d at 971.
[69] *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119, 133 (Mo. banc 1979); *DaimlerChrysler*, 204 S.W.3d at 167; *State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 380 (Mo. Ct. App. W.D. 1997).
[70] *Id.*
[71] *McKeage v. TMBC, LLC*, 847 F.3d 992, 998-99 (8th Cir. 2017); *see also DaimlerChrysler*, 204 S.W.3d at 178; *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. banc 2008).

commencement of the action."[72] Generally, a class is ascertainable if the class would still exist (i.e., be bound by a judgment) even if the defendant were to win at trial.[73] Ascertainability therefore requires that a class not be defined by subjective criteria or by criteria that require an analysis of the merits of the case.[74]

The present class definitions easily satisfy this standard. Notably, the identity of the class members is already known to the parties, having been derived from a review of Defendant's case files using the same objective criteria which does not turn on the ultimate result of the case.

## II.    The Rule 52.08(a) Prerequisites are Satisfied.

### a.    The proposed class is sufficiently numerous.

This case satisfies Rule 52.08(a)(1)'s requirement that the class be "so numerous that joinder of all members is impracticable," which does not require Sims to show an exact number of putative class members. Instead, Sims may satisfy numerosity by giving "some evidence or [a] reasonable, good-faith estimate of the number of purported class members."[75] "[W]hether the numerosity requirement is met is largely determined by the potential number of plaintiffs."[76] And, while "putative class size alone is not necessarily determinative, it is an important consideration in satisfying the numerosity requirement."[77] Courts have "said that, generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the numerosity requirement has been met.[78]

---

[72] *DaimlerChrysler*, 204 S.W.3d at 178 (citing *Craft v. Philip Morris Cos., Inc.*, 190 S.W.3d 368, 387 (Mo. Ct. App. E.D. 2005)).
[73] *Id.* at 179-80; *see also Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985); *Dafforn v. Rousseau Assocs., Inc.*, Case No. F 75-74, 1976 WL 1358, 1976-2 Trade Cases P 61, at 219 (N.D. Ind. July 27, 1976).
[74] *DaimlerChrysler*, 204 S.W.3d at 178 (citing *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000)).
[75] *Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 167 (Mo. Ct. App. E.D. 2019) (reversing denial of certification and holding 82 class members satisfied numerosity).
[76] *Id.* at 168.
[77] *Id.* at 167.
[78] *Id.*  at 186. (quotations omitted).

Here, the size of the proposed class has approximately 952 members. About half of the class members would also be a member of the proposed sub-class, making the size of each class and sub-class at least several hundred people. Due to the large number of class members and the fact class members have limited means to pursue individual lawsuits, the class members will suffer serious impediment to litigation and great inconvenience if joinder is required. Joinder is, therefore, impracticable.

### b. Common questions of law and fact exist.

This prerequisite is satisfied when "there are questions of law or fact common to the class." The common question must be of such a nature that it is capable of class-wide resolution such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim."[79] "What matters to class certification is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[80]

In the present case, the duties breached by Defendants all relate to protection of sensitive financial information. All class members suffered the public disclosure of the same information— their bank account and routing numbers. Moreover, while the *extent* of damage may vary from class member to class member, the nature of relief sought is common throughout the class, and the relief is uniformly calculable using the same methodology.[81]

Finally, the class members' claims share myriad common questions, including, but not limited to, the following:

1.      Did Defendant owe the class members a duty of care to act reasonably under the circumstances?

---

[79] *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc*., 524 S.W.3d 116, 129-30 (Mo. Ct. App. W.D. 2017) (citing *Dukes*, 564 U.S. at 350).
[80] *Id*. (emphasis in original).
[81] *See generally* **Exhibit 3**.

2.      Did Defendant breach its duty of care by publicly filing, without redaction, the class members' bank account and routing numbers?

3.      Did Defendant's public filing of the class members' bank account and routing numbers damage the class members and, if so, in what amount?

4.      What are the class members' damages?

5.      Should punitive damages be assessed against Defendant and, if so, in what amount?

These questions are undoubtedly common, easily satisfying the commonality requirement. If Plaintiff's Motion for Leave to Amend is granted, there would be additional common questions for the new claims, such as:

<u>Count Four: Violations of the Fair Debt Collection Practices Act</u>

1.      Is KLO a debt collector within the meaning of 15 U.S.C. 1692a(6)?[82]

2.      Did KLO's public filing of the unredacted personal bank account and routing numbers violate 15 U.S.C. 1692f?[83]

3.      What are the class members' damages?

<u>Count Five: Breach of Implied Contract</u>

1.      Did Defendant receive the class members PII as part of the class members' loan agreement with Advance Financial?

2.      Did Defendant enter an implied contract with the class members to reasonably safeguard their PII?

3.      Did Defendant breach the implied contract with the class members?

4.      What are the class members' damages?

<u>Count Six: Violations of the Missouri Merchandising Practices Act</u>

1.      Did Defendant fail to perform reasonable due diligence to identify PII to redact before publicly filing the Agreement?

2.      Did Defendant's conduct constitute an unfair practice?

3.      What are the class members' damages?

Likewise, these questions would also be common.

---

[82] *Lawrence v. First Fin. Investment Fund V, LLC*, 336 F.R.D. 366, 382-83 (D. Utah 2020) (Whether defendant is a "'debt collector' under the FDCPA is primarily a legal question that can be answered only with evidence specific to [Defendant].").

[83] *See Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 505 (D. Kan. 2015) (whether "form collection letters sent by defendants to all class members violated" specific provisions of the FDCPA was a common question); *Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096, 1112-13 (D. Colo. 2015) (whether "materially identical Scripted Voicemail" received by class members "violated the FDCPA" was a common question); *Lawrence v. First Fin. Investment Fund V, LLC*, 336 F.R.D. 366, 383 (D. Utah 2020) (whether debt collector violated FDCPA by suing class members "without complying with the Registration Statute" was common, predominating question which "will be resolved the same way whether there is one plaintiff affected by the conclusion or [over 1,000]").

**c. Sims' claims are typical of those of the class she seeks to represent.**

This case also meets Rule 52.08(a)(3)'s requirement that Sims' claims be typical of the class's claims. Typicality does not require the claims be identical; to the contrary, "[f]actual variations in the individual claims will not normally preclude class certification if the *claim arises from the same event or course of conduct as the class claims*, and gives rise to the same legal or remedial theory."[84] Courts have explained that "[t]he typicality requirement . . . is designed to screen out class actions involving legal or factual positions of the representative class which are ***markedly*** different from those of other class members."[85] Indeed, typicality exists where the plaintiff's interests and claims aren't "significantly antagonistic" to the claims of the proposed class.[86]

Accordingly, the typicality requirement can be boiled down to three essential elements: (1) Sims' claims arises from the same event or course of conduct as the class claims; (2) the facts underlying Sims' claims aren't markedly different from those underlying the putative class claims; and (3) the facts underlying Sims' claims give rise to the same legal or remedial theory as those of the putative class members.[87] Further, courts have held that typicality—even after *Dukes*—is coextensive with commonality, such that "the typicality inquiry would not bar any cases that passed the commonality inquiry."[88]

---

[84] *DaimlerChrysler*, 204 S.W.3d at 169 (citing *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457 (W.D. Mo. 2004)) (emphasis in original); *see also Smith v. Leif Johnson Ford, Inc.*, 632 S.W.3d 798 (Mo. Ct. App. E.D. 2021) ("Typicality is fairly easily met so long as other class members have claims similar to the named Plaintiff."); *Moore v. Scroll Compressors, LLC*, 632 S.W.3d 810, 816 (Mo. Ct. App. S.D. 2021) (quoting *Elsea*, 463 S.W.3d at 420).
[85] *DaimlerChrysler*, 204 S.W.3d at 169 (emphasis added) (citing *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 77 (D.N.J. 1993)).
[86] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010).
[87] *DaimlerChrysler*, 204 S.W.3d at 169.
[88] *Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 440 (D.N.M. 2015); *see also Custom Hair Products by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020).

16

Thus, by passing the commonality and predominance inquiries, a plaintiff's claims are also typical, even if they "have factual circumstances that differ from those of the bulk of the absent portion of the class" because typicality "is necessarily an imprecise, 'eye-test' standard, in which the Court tries to discern whether the putative class counsel has made a reasonable effort to collect class representatives who reflect the absent class members' posture in the litigation."[89] Given that the overlap between Sims' claims, as well as the facts and remedial theory underlying them, are very nearly or totally completely relative to those of the putative class members, there can be no reasonable doubt that his claim is typical of those of the proposed class members. Sims' claims—as well as the class members' claims—stem from Defendant's public disclosure of her bank account and routing numbers.

### d. Sims and Her Counsel are Adequate.

Rule 52.08(a)(4)'s final requirement focuses on whether the named plaintiff "will fairly and adequately protect the interests of the class." It "serves to uncover conflicts of interest between named parties and the class," while also "factor[ing] in competency and conflicts of class counsel."[90] Additionally, the adequacy requirement ensures that the absent members of the proposed class will be fairly and adequately represented.[91]

Thus, the adequacy requirement is bipartite: the proposed representative plaintiff and their counsel don't have any conflicts with the interests of the proposed class, and they will prosecute the action vigorously on behalf of the class.[92] Both requirements are met here.

---

[89] *Anderson Living Trust*, 306 F.R.D. at 441.

[90] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 626 n.20 (1997); *see also Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008) (the "primary criterion for determining whether the class representative [will] adequately represent[] his class . . . is whether the representative, through qualified counsel, [will] vigorously and tenaciously protect[] the interests of the class.").

[91] *DaimlerChrysler*, 204 S.W.3d at 172 (citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977)).

[92] Rule 52.08(a)(4); *State ex rel. Union Planters Bank, N.A*, 142 S.W.3d at 735.

***Sims is adequate.*** Nothing in the record indicates that Sims has any conflict of interest with any putative class member. Like the other class members, her personal bank account and routing numbers were publicly filed and disseminated to third parties by Defendant. She has already dedicated time and energy to prosecuting this action and will continue to do so, and she has a sufficient stake in the outcome of this litigation, to seek redress from the public disclosure of her PII, that she is committed to pursuing it to the end for themselves and the putative class.

***Proposed class counsel is adequate.*** Bryce B. Bell and Jenilee V. Zentrich are adequate class counsel, having extensive experience in consumer protection cases and class actions. Bryce Bell has previously been appointed as class counsel in other consumer protection classes in the District of Kansas[93] and both have been appointed by other Courts in this region, including this one.[94] Plaintiff's counsel have extensive experience litigating consumer protection act claims.[95] The work Plaintiff's counsel has put into this case to date only confirms their adequacy.

## III.   This Case Meets Rule 52.08(b)(3)'s Requirements.

In addition to satisfying the prerequisites of Rule 52.08(a), a party moving for class certification must also satisfy at least one of the three requirements of Rule 52.08(b). Plaintiff seeks certification of a Rule 52.08(b)(3) class for monetary relief.

---

[93] *E.g.*, *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2193785, at *2 (D. Kan. May 21, 2019); *see also Riley v. PK Management, LLC*, Case No. 18-cv-2337-KHV-TJJ, 2019 WL 3998757, at *5 (D. Kan. Dec. 20, 2019) ("[D]efendants do not dispute that the proposed class counsel will vigorously prosecute the action on behalf of the class.").

[94] *E.g.*, *Hedgepath v. Kauffman*, Case No. 1916-cv01507 (Jackson County, Missouri Dec. 5, 2022) (appointing Bryce Bell and Jenilee Zentrich co-class counsel), *petition for leave to appeal denied* (WD85890, Jan. 9, 2023); *Thomas Johnson v. The Penn Warranty Corp.*, Case No. 1616-cv17539 (Jackson County, Missouri) (class certified with Bryce Bell as co-class counsel on May 19, 2017); *In re Epiq Systems, Inc. Stockholder Litig.*, Consolidated Case No. 1616-cv18720 (Jackson County, Missouri) (class settlement approved with finding that Bell Law, LLC was adequate co-class counsel on December 8, 2017); *Borchers v. Xceligent, Inc.*, Case No. 1716-cv08149 (Jackson County, Missouri) (class settlement approved with finding that Bryce Bell was adequate co-class counsel on June 17, 2019).

[95] *See supra* notes 91 and 92; *see also, e.g.*, *Morgan v. Central RV, Inc.*, Case No. 17-2300 (D. Kan.) (KCPA omission claim, jury rendered full verdict for Plaintiff); *Pinkney v. TBC Corp.*, Case No. 19-2680 (D. Kan.) (KCPA misrepresentation claim).

### a. Common questions predominate over any individual issues.

Rule 52.08(b)(3)'s predominance requirement concerns "the relation between common and individual questions in a case."[96] As mentioned earlier, common questions are those where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."[97] Individual questions, by contrast, are those requiring "evidence that varies from member to member."[98] The predominance requirement is satisfied if "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[99]

Predominance under Rule 52.08(b)(3) is closely related to the commonality question under Rule 52.08(a), although the "common-question-predominance requirement of Rule 52.08(b)(3) is far more demanding than the commonality prerequisite."[100] The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"— i.e., whether there is "a common legal grievance."[101]

Thus, Rule 52.08(b)(3) and Federal Rule 23(b)(3) "do[] not require a plaintiff seeking class certification to prove that each 'element of her claim is susceptible to class-wide proof.'"[102] Rather, predominance permits certification so long as at least one common question predominates.[103] What's more, that *one* question of law or fact need not even be the dispositive question.[104] Fundamentally, predominance requires that "the group aspiring to class status [must be] seeking to remedy a common

---

[96] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).
[97] *Id.* (internal quotation omitted).
[98] *Id.* (internal quotation omitted).
[99] *Id.* (internal quotation omitted).
[100] *Smith*, 632 S.W.3d at 808.
[101] *Id.*
[102] *Amgen*, 568 U.S. at 469 (brackets removed); *see also State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) ("[P]redominance is not precluded when there needs to be an inquiry as to individual damages.").
[103] *DaimlerChrysler*, 204 S.W.3d at 175; *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 557 (9th Cir. 2019).
[104] *Hootselle v. Mo. Dept. of Corrections*, 624 S.W.3d 123, 134 (Mo. banc 2021); *DaimlerChrysler*, 204 S.W.3d at 175.

legal grievance."[105] "**When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members**."[106] Put another way, predominance "isn't a counting game []."[107] "Rather, more important questions apt to drive the resolution of the litigation' carry greater weight than less significant individualized questions,"[108] such as damages.[109] Further, if the predominant issues are susceptible to at least a "prima facie showing" through common proof, class treatment is appropriate notwithstanding a defendant's efforts to hypothesize differences among class members.[110] Likewise, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate."[111] Consistent with these principles, the Supreme Court has observed that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud."[112] This observation certainly holds true here.

Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case,"[113] so plaintiffs do not even have to show that their theory of liability is viable.[114] Further, where there are differences in the measure of damages for individual class members that may "require[] individual

---

[105] *DaimlerChrysler*, 204 S.W.3d at 175.
[106] *Tyson Foods*, 577 U.S. at 453 (internal quotation omitted) (emphasis added); *see also Naylor Farms v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) ("Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3) – even if there remain individual issues.").
[107] *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 474 (N.D. Cal. 2020).
[108] *Glumetza*, 336 F.R.D. at 474 (quoting *Hyundai*, 926 F.3d at 557).
[109] *See Naylor Farms*, 923 F.3d at 789.
[110] *See Tyson Foods*, 577 U.S. at 453.
[111] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014).
[112] *Amchem*, 521 U.S. at 625.
[113] *Amgen*, 568 U.S. at 460.
[114] *Custom Hair Designs by Sandy*, 984 F.3d at 601; *see also DaimlerChrysler*, 204 S.W.3d at 176 (the question "is not whether the plaintiff can make a submissible case or prevail at trial, but whether the requirements for class certification have been satisfied."); *Nieberding* 302 F.R.D. at 609 ("The Court need not reach the ultimate question on the merits of the claims—the brackets' defectiveness, or not—to decide the commonality touchstone of the Rule 23 analysis.").

proof at the damages phase," such variation "in *actual damages* does not defeat predominance if there are common legal questions and common facts."[115]

As noted above regarding commonality, in this case Defendants have acted on grounds generally applicable to the proposed class, making the questions and evidence overwhelmingly common. Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case,"[116] so Plaintiff does not even have to show that their theory of liability is viable.[117] No individual evidence is needed to demonstrate the impropriety of Defendant's public filing of the bank account and routing numbers.

There's no dispute that Defendant publicly filed the unredacted bank account and routing information for each class member. Notably, Defendant follows its standardized policy as to each putative class members' account, so the common questions will necessarily predominate.[118] This inquiry, then, focuses on whether this filing breached the duty of care.[119]

The way one goes about filing documents in Missouri state courts do not vary from class member to class member, for the electronic filing systems are uniform. In Missouri, one cannot e-file any document without first affirmatively certifying compliance with the state's rules concerning redaction of confidential information, which includes bank account and routing numbers.[120]

---

[115] *Custom Hair Designs by Sandy*, 984 F.3d at 601-02 (emphasis in original).

[116] *Amgen*, 568 U.S. at 460.

[117] *Custom Hair*, 984 F.3d at 601; *see also Daimler-Chrysler*, 204 S.W.3d at 176 (The question "is not whether the plaintiff can make a submissible case or prevail at trial, but whether the requirements for class certification have been satisfied."); *Nieberding* 302 F.R.D. at 609 ("The Court need not reach the ultimate question on the merits of the claims—the brackets' defectiveness, or not—to decide the commonality touchstone of the Rule 23 analysis.").

[118] *See Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096, 1114 (D. Colo. 2015).

[119] *See Reardon for Estate of Parsons v. King*, 310 Kan. 897, 904-06 (Kan. 2019).

[120] Mo. Sup. Ct. Op. R. 2.05(c) (defining "personal information" to include "financial institution account numbers"); Mo. Sup. Ct. Op. R. 2.02 (imposing redaction requirements and requiring filers to "affirmatively certify compliance with the redaction requirements").

Defendant's internal procedures are also uniform. Defendant "electronically compile[s] and review[s]" contract documents "prior to filing."[121] Defendant further uses the JST/Collect Max computer program to generate form pleadings.[122] None of this varies from file to file—it is uniformly applied. Accordingly, common evidence will yield the answer to this common question.

Plaintiff's claim requires a showing of injury. The proof for this will be common, including expert testimony.[123] But even where there are differences in damages that may "require[] individual proof at the damages phase," such variation "in *actual damages* does not defeat predominance if there are common legal questions and common facts."[124]

The prospect of punitive damages raises no individualized questions, since whether to award punitive damages (and in what amount) "hinges, not on facts unique to each class member, but on the defendant's own conduct toward the class as a whole."[125]

**b. A class action is superior to other ways of adjudicating the controversy.**

A class action must first be "unwieldy . . . before it can be pronounced an inferior alternative— no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all."[126] Rule 52.08(b)(3) provides a non-exhaustive list of factors to be considered in determining whether a class action is the superior vehicle for a case: (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the

---

[121] **Exhibit 5** (Defendant's Third Supplemental Response to Plaintiff's First Interrogatories) at No. 9.
[122] *Id.*
[123] *See generally* **Exhibit 3**.
[124] *Custom Hair Designs by Sandy v. Central Payment Co., LLC*, 984 F.3d 595, 601-02 (8th Cir. 2020) (emphasis in original).
[125] *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 WL 3844326, at *16 (N.D. Cal. July 15, 2016) (quotation omitted).
[126] *Carnegie v. Household Int'l Inc.*, 376 F.3d 656 (7th Cir. 2004).

particular forum; and (4) the difficulties likely to be encountered in the management of a class action.[127]

Missouri courts analyze these elements and balance them "in terms of fairness and efficiency" against

those of "alternative available methods" of adjudication.[128]

       Joinder or intervention would be unmanageable here. As explained, there are well over nine-

hundred class members. Such problems with coordinating the logistics of joining so many people are

one of the reasons Rule 52.08 exists in the first place. Even the Supreme Court has recognized that

concerns of fairness and efficiency make a class action superior to hundreds of separate, individual

trials:

> The policy at the very core of the class action mechanism is to overcome the problem
> that small recoveries do not provide the incentive for any individual to bring a solo
> action prosecuting his or her rights. A class action solves this problem by aggregating
> the relatively paltry potential recoveries into something worth someone's (usually an
> attorney's) labor.[129]

       Denial of class certification due to manageability concerns is disfavored.[130] This case does not

present any manageability difficulties and will be easily structured such that the common issues would

be resolved without having to impanel the numerous juries that would be the only alternative. Further,

because Sims seeks certification of an opt-out class, any class member who wished to control the

prosecution of their claim would have the right and ability to do so, which stands in stark contrast to

the mandatory classes found in Rule 52.08(b)(1) and (b)(2). Sims is not aware of any other pending

litigation with this same claim and has no reason to believe that there would be the need for numerous

follow-up mini-trials.

       Even if there were a need for follow-up mini-trials, this would not overwhelm the other reasons

a class is superior. For example, the Court could certify an issue class under Rule 23(c)(4), or could

---

[127] Rule 52.08(b)(3); *DaimlerChrysler*, 204 S.W.3d at 181.
[128] *DaimlerChrysler*, 204 S.W.3d at 181.
[129] *Amchem*, 521 U.S. at 617.
[130] *Elsea*, 463 S.W.3d at 423; *Craft*, 190 S.W.3d at 386-87.

bifurcate the individual issues.[131] Those measures, however, are unnecessary here, for the common issues clearly predominate, such that no individual issues need to be bifurcated.

**CONCLUSION**

For the foregoing reasons, Sims respectfully requests the Court grant this motion and certify the Rule 52.08(b)(3) class as proposed, appoint Sims as class representative, and appoint Sims' counsel as class counsel.

---

[131] *See Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 618 (D. Kan. 2014).

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell      MO#66841
Jenilee V. Zentrich    MO#72781
T. Grant Honnold    MO#75844
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system on January 10, 2023, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

PATRICIA A. SIMS,       )
on behalf of herself and others    )
similarly situated,          )
                   )
      Plaintiff,      )    **Case No. 2316-Cv13284**
                   )
v.                  )
                   )
KAHRS LAW OFFICES, P.A.,   )
                   )
      Defendant.     )

**PLAINTIFF'S REPLY TO DEFENDANT'S SUGGESTIONS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND PETITION**

COME NOW, Plaintiff, by and through her undersigned counsel of record, and respectfully provides her Reply to Defendant's Suggestions in Opposition to Plaintiff's Motion for Leave to Amend Petition. For the reasons outline below, Plaintiff's Motion for Leave to Amend Petition should be granted in its entirety.

I.    **Defendant's response in opposition to Plaintiff's Motion for Leave to Amend Petition is unjustifiably more than two weeks late.**

As an initial matter, Defendant's response in opposition to Plaintiffs' Motion for Leave to Amend Petition is late and should be disregarded by this Court. Plaintiffs' Motion for Leave to Amend Petition ("Plaintiffs' Motion") was filed with this Court on December 15, 2023. Accordingly, Defendant's Motion in response was due December 26, 2023. Local Rule 33.5 ("Within ten (10) days following service and filing of such motion, any party opposing the motion shall serve and file suggestions in opposition with citations of authorities and affidavits to be considered in opposition to the motion."). Defendant did not respond on December 26, 2023—as required by Rule 33.5—nor did Defendant provide any explanation or good cause for its late filing.

Electronically Filed - JACKSON - INDEPENDENCE - January 16, 2024 - 07:40 PM

Rather, Defendant filed its Suggestions in Opposition to Plaintiff's Motion for Leave to Amend Petition ("Defendant's Response") January 9, 2024—making Defendant's Response fifteen (15) days late. Therefore, Plaintiff respectfully request that this Court disregard Defendant's Response to her Motion for Leave to Amend Petition on the grounds that it was inexcusably untimely.

**II.     Plaintiff's Motion is supported by Missouri's five factors to consider in determining whether to allow pleadings to be amended.**

The five factors used to determine whether amended pleadings are to be permitted weigh in favor of Plaintiff.[1]  The five factors are: (1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in previous pleadings; (3) timeliness of the application; (4) whether an amendment would cure any defects in the previous pleadings; and (5) injustice to the party(ies) opposing the motion.[2] While one of these factors, at the most, might arguably be neutral—none of these consideration-factors weigh in favor of Defendant.

**a.  Consideration factor one weighs in Plaintiff's favor**

Plaintiff would suffer hardship if leave to amend were not granted by this Court. Plaintiff would certainly be prejudiced if this amendment is not granted. Plaintiff's proposed amended pleadings are a result of Plaintiff's continuous review of information learned during discovery and of holdings from the District Court of Kansas as well as of this Court's dismissal of Count I and Count III of her Petition. Plaintiff would be prejudiced by being deprived an opportunity to assert new legal theories that were revealed, researched, and formulated during discovery and in considering court rulings.[3]

---

[1] *Moore v. First Star Bank,* 96 S.W.3d 898, 904 (Mo. App. S.D. 2003).
[2] *Id.*
[3] *See* Plaintiff's Motion at 2.

### b. Consideration factor two weighs in Plaintiff's favor

Plaintiff has good reasons for not previously including the legal theories she advances in her proposed amended pleadings. The bottom line is that Plaintiff was continuing to research the viability of her legal theories and claims in light of information obtained and learned throughout discovery. These legal theories and claims were further evaluated and refined after this Court dismissed Count I and Count III of her Petition.[4]

Defendant, in Defendant's Response, attacks consideration factor two by arguing that "[b]ecause these facts were known to Plaintiff at the time the Petition was filed in this Court, Plaintiff should be denied leave to amend her Petition."[5] Plaintiff does not dispute that: (1) the core of Plaintiff's claims remain unchanged; (2) Plaintiff seeks to add additional theories; and (3) these new theories arise out of the same facts and circumstances as the current claims.[6] However, Plaintiff disagrees with Defendant that these facts weigh in Defendant's favor in the context of Plaintiff amending her Petition. At the most, factor two is neutral—as the "rule governing an amended complaint is to be liberally applied, and is based on the concept of whether a defendant has been given notice sufficient to defend against claims relating to a particular transaction or occurrence."[7] Here, Defendant has been given sufficient notice to defend itself from Plaintiff's claims.

After taking into account and analyzing the District Court's rulings, as well as this Court's Order on Defendant's Motion to Dismiss, Plaintiff continued to research the viability of her legal theories. This sort of research prior to an amendment is not improper and is similar to the permitted

---

[4] *See* Plaintiff's Motion at 2.
[5] Defendant's Response at 2.
[6] Plaintiff's Motion at 2.
[7] *Thompson v. Brown & Williamson Tobacco Corp.,* 207 S.W.3d 76, 116 (Mo.App. W.D. 2006).

conduct in the *Thompson v. Brown & Williamson Tobacco Corp.*, case where Plaintiff, after research and consideration, brought a loss of consortium claim against Defendant.[8]

### c. Consideration factor three weighs in Plaintiff's favor

Plaintiff's Motion was timely and made in good faith. On December 1, 2023, "Plaintiff requested a two-week extension in which to file the present Motion. While that extension has not yet been ruled upon by the Court, Plaintiff had good cause to request the extension and requested the extension prior to the expiration of the deadline to Amend Pleadings [deadline of December 1, 2023]."[9] Plaintiff requested the extension to December 15, 2023 to file her Plaintiff's Motion due to the holiday and the press of other business. Consistent with her extension request, Plaintiff filed Plaintiff's Motion on December 15, 2023. Therefore, Plaintiff's Motion was made timely and in good-faith.

### d. Consideration factor four is neutral

This factor is neutral because the Court has not found that Plaintiff's previous pleadings contained defects.

### e. Consideration factor five weighs in Plaintiff's favor

There will be no prejudice to Defendant if Plaintiff's Motion were granted. There is no chance for Defendant to be prejudiced here. Should Defendant need to depose Plaintiff again, Defendant may, as Discovery does not close until July 15, 2024. Defendant argues that the fact it may have to depose Plaintiff again is prejudicial, however, Defendant's argument is flawed as "[u]nder Missouri law, prejudice is measured by whether the party opposing the motion to amend is deprived of a legitimate claim or defense because they were caught by surprise after that party's

---

[8] *Thompson v. Brown & Williamson Tobacco Corp.,* 207 S.W.3d 76, 116 (Mo.App. W.D. 2006).
[9] *Id.*

strategy had been developed."[10] Defendant will certainly not be deprived a claim or defense, as Plaintiff merely seeks to add legal and factual allegations that were learned and developed over the course of discovery and that are based on the same underlying facts and circumstances of her Petition.

**III.    The new claims asserted in Plaintiff's Proposed Amended Petition do not lack merit.**

As detailed below, all of Plaintiff's amended claims are meritorious. Furthermore, Plaintiff's claims do not lack merit as she has sufficiently plead all the elements of each of her claims.

**a.    Plaintiff recognizes that the Court dismissed Count One and Count Three on September 17, 2023, and includes it in her Proposes Amended Petition solely for purposes of preserving the record for appeal.**

Plaintiff has no improper or ulterior motive for including Count One and Count Three in her proposed First Amended Petition. Rather, Plaintiff has left them in her First Amended Petition to preserve them in the record for purposes of appeal. If this Court finds that Plaintiff does not need to keep Count One and Count Three in her First Amended Petition for preservation purposes, Plaintiff can remove them from her First Amended Petition as she is not reasserting the dismissed claims of Injunctive Relief and Violations of the Missouri Right to Privacy Act.

**b.    This Court has not ruled on the Defendant's violations of the Fair Debt Collection Practices Act.**

While the United States District Court of Kansas has previously dismissed Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim for lack of standing, standing in a Missouri state

---

[10] Plaintiff's Motion at 3; quoting *Clark v. Kinsey*, 488 S.W.3d 750, 763 (Mo. App. E.D. 2016).

court differs from the standing requirements under Article III—and this Court has not yet ruled on Plaintiff's FDCA claim.

### i. Plaintiff has standing under Missouri law for her FDCPA claim.

A party is required to have standing to bring a claim for damages under Missouri law.[11] "'Standing requires that a party have a personal stake arising from a threatened or actual injury.'"[12] "Reduced to its essence, 'standing' roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote; this personal stake is shown by alleging a threatened or actual injury resulting from the challenged action."[13] In other words, for a litigant to demonstrate standing in Missouri, the party "seeking relief must have some personal interest at stake in the dispute, *even if that interest is attenuated, slight, or remote*."[14]

Plaintiff clearly has standing under Missouri law to pursue her FDCPA claim.[15] In Plaintiff's Proposed Amended Petition, Plaintiff had plead that "Plaintiff and the putative FDCPA Sub-Class members have suffered garden variety emotional distress."[16] Additionally, Plaintiff has plead that "Plaintiff and the putative FDCPA Sub-Class members have suffered, and will continue to suffer, damages including, but not limited to: (i) the unconsented lost value of the PII and loss of control over the same; (ii) non-consensual publication of the PII; (iii) anxiety, emotional distress, loss of privacy, and other non-economic injuries; (iv) compensation for reasonable-use value of PII; and (v) any nominal damages deemed appropriate."[17] Given the goal of the FDCPA

---

[11] *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. 2013).
[12] *Id.*, quoting *State ex rel Williams v. Mauer,* 722 S.W.2d 296, 298 (Mo. banc 1986).
[13] *Crumbaker v. Zadow*, 151 S.W.3d 94, 96 (Mo.App. E.D. 2004).
[14] *Ste. Genevieve Sch. Dist. R-II v. Bd. Of Alderman of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2011) (emphasis added).
[15] *Crumbaker v. Zadow*, 151 S.W.3d 94, 96 (Mo.App. E.D. 2004).
[16] Plaintiff's Proposed First Amended Petition at paragraph 113.
[17] *Id.,* at paragraph 114.

to protect consumers from harmful practices, courts have found that it logically follows that the harmful practices are themselves a concrete injury to consumers.[18] Defendant engaged in harmful and unfair practices "when it publicly filed Plaintiff and the putative FDCPA Sub-Class members' personal financial information and placed them at risk of identity theft/identity fraud."[19]

### ii. Plaintiff sufficiently states a FDCPA claim.

Whether a consumer actually owes a debt has no bearing on their FDCPA claims—the purpose of the FDCPA is to prohibit abusive and unfair debt collection practices.[20] "The FDCPA is a strict liability statute; proof of one violation is sufficient to support judgment for the consumer. Statements contained in pleadings and other court filings are actionable under the FDCPA."[21] Here, Plaintiff has sufficiently plead a FDCPA violation.[22] Plaintiff's alleged debt arose out of a personal loan, as defined by 15 U.S.C. § 1692a(5).[23] This personal loan is a debt as defined by 15 U.S.C. § 1692a(5).[24] Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).[25] The FDCPA prohibits unfair conduct in connection with collection of a debt beyond the specifically enumerated conduct in the FDCPA.[26] Plaintiff and the putative Class have been damaged as a result of "Kahrs commit[ing] an unfair practice when it publicly filed Plaintiff and the putative FDCPA Sub-Class members' personal financial information and placed them at risk of identity theft/identity fraud."[27] Contrary to Defendant's assertion, this is not merely a legal conclusion.

---

[18] See *Linehan v. Allianceone Receivables Management, Inc.,* 2016 WL 4765839, at *7-8 (W.D. Wa. Sept. 13, 2016) (collecting cases).
[19] Plaintiff's Proposed First Amended Petition at paragraph 112.
[20] *Portfolio Recovery Associates, LLC v. Schultz,* 449 S.W.3d 427, 435 (Mo.App. E.D. 2014).
[21] *Id.*
[22] See 15 U.S.C. § 1692 *et seq.*
[23] Plaintiff's Proposed First Amended Petition at paragraph 104.
[24] *Id.,* at 106.
[25] *Id.,* at 109.
[26] *Id.,* at paragraphs 110-111.
[27] *Id.,* at paragraphs 112.

Electronically Filed - JACKSON - INDEPENDENCE - January 16, 2024 - 07:40 PM

### c. Plaintiff sufficiently pleads a claim for breach of an implied contract.

Under Missouri law, "a contractual relationship may be established without written contract where circumstances and acts and conduct of the parties support reasonable inference of mutual understanding and agreement that one party perform and that the other party compensate for such performance."[28] "Agreement between parties who have no written contract arises from their intention, implied or presumed from their acts, where there are circumstances which, according to ordinary course of dealing and common understanding of men, show mutual intent to contract."[29] Plaintiff, in her Proposed First Amended Petition, sufficiently pleaded a claim for breach of an implied contract.[30]

Plaintiff, as part of her loan agreement with Advance Financial, provided her PII to Advance Financial.[31] This loan agreement stated that Advance Financial may use third-party collection efforts.[32] Plaintiff, by providing her PII, entered into "an implied contract with Advance Financial and any of its debt collectors, including Defendant, whereby they became obligated to reasonably safeguard Plaintiff's and the putative class member's PII."[33] "Under the implied contract, Defendant was obligated to not only safeguard the PII, but also to provide Plaintiff and the putative class members with prompt, adequate notice of any exposure of said PII."[34] Defendant breached its duty by failing to take reasonable measures to safeguard Plaintiff's PII and by failing to promptly inform Plaintiff of the exposure of her PII.[35] As a result of such breaches, Plaintiff has been damaged.[36] Therefore, Plaintiff has sufficiently pled a claim for breach of an implied contract.

---

[28] *Follman Properties Co. v. Henty Const. Co., Inc.*, 664 S.W.2d 248, 250 (Mo.App. E.D. 1983).
[29] *Id.*
[30] Plaintiff's Proposed First Amended Petition at paragraph 116-124.
[31] Plaintiff's Proposed First Amended Petition at paragraph 118.
[32] Plaintiff's Proposed First Amended Petition at paragraph 119.
[33] Plaintiff's Proposed First Amended Petition at paragraph 120.
[34] Plaintiff's Proposed First Amended Petition at paragraph 121.
[35] Plaintiff's Proposed First Amended Petition at paragraph 122-23.
[36] Plaintiff's Proposed First Amended Petition at paragraph 124.

### d. Plaintiff sufficiently pleads a claim for a violation of the MMPA

Defendant claims that Plaintiff's MMPA claim must fail because Plaintiff did not purchase anything directly from Defendant. But the MMPA cares not whether a consumer has interacted with a defendant entity or if they know of the existence of that entity; and a defendant need not, as a matter of law, have been involved with, in any way, the original sale in order to be liable under the MMPA.[37] Indeed, the Supreme Court of Missouri held, in *Gibbons v. J. Nuckolls, Inc.*, that a vehicle wholesaler, <u>who was completely divorced from the MMPA anchor transaction</u>[38]—i.e., the sale of the subject vehicle to the consumer by a dealership, as opposed to the wholesaler's sale to the dealer (i.e., not a consumer transaction)—was liable under the MMPA because the wholesaler had allegedly concealed an accident history from the *dealer*.[39] Nonetheless, that alleged misconduct was "in connection with" the purchase by the consumer of the vehicle because the alleged omission had concerned the "merchandise" so purchased—i.e., the misrepresentations and/or omissions alleged were *about* the "merchandise's" history.[40]

Defendant attempts to narrow the MMPA by claiming that Plaintiff fails to allege Defendant engaged "in fraud or deception or other illegal conduct." However, the MMPA prhobits "deception, fraud, false pretense, false promise, misrepresentation, **<u>unfair practice</u>** or the concealment, suppression, or omission of any material fact."[41] Here, Plaintiff has alleged that Defendant committed an unfair pracice by failing to perform reasonable due diligence to identify

---

[37] *See, e.g.*, *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007).
[38] *See Gibbons*, 216 S.W.3d at 668-69.
[39] *See id.* ("Nuckolls is an automobile wholesaler. Gibbons purchased a car from a dealership that had purchased the car from Nuckolls. Gibbons sued the dealership and Nuckolls under the MPA . . . Gibbons alleged that Nuckolls violated the MPA by failing to disclose the accident to the dealership.").
[40] *See id.* at 669.
[41] RSMo. 407.020.1 (emphasis added).

information to redact before publicly filing the Agreement. Thus, Plaintiff, in her Proposed First

Amended Petition, sufficiently pleaded a claim for a violation of the MMPA.[42]

### IV.     Conclusion

WHEREFORE, Plaintiff respectfully requests this Court disregard Defendant's untimely

Response in Opposition to her Motion for Leave to Amend and grants her Motion for Leave to

Amend, and for any further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich    MO#72781
T. Grant Honnold       MO#75844
**Bell Law, LLC**
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document
was filed with the Courts' e-Filing system on January 16, 2024 and thereby served upon all
Attorneys of Record.

*/s/ Jenilee V. Zentrich*

---

[42] Plaintiff's Proposed First Amended Petition at paragraph 125-143.

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 2316-CV13284 |
| vs. | ) ) |
| KAHRS LAW OFFICES, P.A., | ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORT
OF ANTHONY D'ANGELO**

COMES NOW Defendant Kahrs Law Offices, P.A., ("Kahrs"), by and through its counsel, pursuant to Section 490.065, and for the reasons stated in its Suggestions in Support of Defendant's Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo requests this Court's Order excluding the expert testimony and report of Anthony D'Angelo.

WHEREFORE, Defendant's pray this Court enter an Order excluding the expert testimony and report of Anthony D'Angelo and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: /s/Daniel F. Church
_____

DANIEL F. CHURCH          #34936
BRITTAIN E. McCLURG     #72016
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
(816) 382-1382
Facsimile: (816) 382-1383
dchurch@mwcattorneys.com
bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 22nd day of January 2023 the above and foregoing was filed with the Clerk of the District Court using the electronic filing system which services notice via electronic mail, to:

Thomas Grant Honnold
Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
tgh@belllawkc.com
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFFS*

 */s/Daniel F. Church*
ATTORNEY FOR DEFENDANT

2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A. SIMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2316-CV13284 |
| | ) | Division 2 |
| v. | ) | |
| | ) | |
| KAHRS LAW OFFICES, P.A. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KAHRS LAW OFFICES, P.A.'S SUGGESTIONS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS REPRESENTATIVE AND CLASS COUNSEL**

COMES NOW Defendant Kahrs Law Offices, P.A. ("Defendant") by and through its counsel of record, and for its Suggestions in Opposition to Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel, Defendant states:

Rule 52.08 of the Missouri Rules of Civil Procedure establishes four initial criteria for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Smith v. Leif Johnson Ford, Inc.*, 632 S.W.3d 798 (Mo. App. E.D. 2021). Once the pre-requisites of Rule 52.08(a) are established, the Court must determine whether one of the three additional standards set forth in Rule 52.08(b) are satisfied. *Id.*[1]

**Plaintiffs have not established commonality as required by Rule 52.08(a)(2).**

To establish commonality, Plaintiff must demonstrate that there are "questions of law or fact common to the class." Mo. R. Civ. P. 52.08(a)(2). As such, Plaintiff must show that all class members have "the same interest and suffer the same injury as the class members." *Id.* In this case,

---

[1] Plaintiff has sought leave to assert additional claims, which are referenced in Plaintiff's Motion for Class Certification, Defendant has filed its Suggestions in Opposition to Plaintiff's Motion for Leave arguing that the newly asserted claims fail to state a claim upon which relief can be granted. Defendant incorporates its Suggestions in Opposition as if set forth fully herein.

members of the putative class do not have the same interest or the same injury. Plaintiff's bank account (which was included in the court filing in the Underlying Suit) is still open. Plaintiff Patricia Sims' Responses and Objections to Defendant Kahrs Law Offices, P.A.'s First Set of Interrogatories to Plaintiff Patricia, Answer No. 10, attached hereto as **Exhibit A**. However, a substantial portion of the putative class's bank accounts were closed at the time their respective suits were filed. The account number for a loan that is in default and is in litigation for collection does not present a realistic risk of harm since accessing a closed account does not subject the account holder to any harm. Rebuttal Expert Report of Shawn Tuma, ¶ 21, attached hereto as **Exhibit C**. As such, Plaintiff and other members of the putative class have different circumstances and injuries, such that Plaintiff's alleged damages are not common to the class.[2]

**Plaintiffs have failed to satisfy the requirement of typicality as required by Rule 52.08(a)(3).**

Similarly, Plaintiff fails to satisfy the requirement of typicality because Plaintiff's circumstances are different from the putative class. Plaintiff filed claims of *inter alia* malicious prosecution and abuse of process against Advance Financial, which was later referred to arbitration, *In the Matter of the Arbitration Between: Patricia Sims v. Lakshmi Financial*. In that case, Plaintiff filed claims against Lakshmi Financial, LLC, which does business as Advance Financial. Kahrs represented Lakshmi Financial in *Lakshmi Financial v. Patricia Sims*, 2116-CV07115 in the Circuit Court of Jackson County ("Underlying Suit"), wherein Kahrs attached the Account Agreement containing Sims' routing and account number as Exhibit A to the Petition. Bell Law represents Ms. Sims in the arbitration case as well.

---

[2] With respect to alleged damages, Plaintiff relies extensively on the report of her expert, Anthony D'Angelo, however, Defendant filed its Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo and suggestions in support which Defendant filed contemporaneously with the instant motion, and Defendant incorporates that motion by reference as if set forth herein.

In the arbitration, Advance Financial moved for summary judgment, and in support of its motion for summary judgment, Advance Financial produced call logs dated April 16, 2019, attached hereto as **Exhibit D**, Affidavit of Joseph Hagan authenticating Exhibit D attached as **Exhibit D-1**. On that date, Advance Financial received three phone calls from a number which was identified as xxx-xxx-8901, which was consistent with the number Ms. Sims had used in her application for a line of credit. During those phone calls, the caller, purporting to be Patricia Sims, requested that Advance Financial update Ms. Sims' account with a new phone number, new email, and new debit card. The caller produced a debit card bearing the name "Patricia Sims." When presented with these facts, Mr. D'Angelo testified that "The fact that she didn't receive money from her line of credit and somebody else did, they took that account over without her knowledge." Deposition of Anthony D'Angelo, attached hereto as **Exhibit E**, at 72:19-22.

> Well, that's what an account takeover is, when somebody takes a small step to take over an account. In this case, somebody called up and said, "Oh, you know, this is my account, but I want you to move the money over her." So that is part of an account take over.

*Id*. at 73:10-15. Notably, this incident predated the filing of the Underlying Suit by nearly two years. See Petition at ¶ 27. (Underlying Suit was filed on or about March 24, 2021).

Because Plaintiff was a victim of account takeover before Defendant filed her account information in the Underlying Suit, her circumstances are not typical of the putative class.

Additionally, Plaintiff cannot demonstrate typicality or commonality because Plaintiff has not undertaken efforts to survey the putative class to determine if Plaintiff's claims are common or typical of the putative class, and Plaintiff has not submitted such evidence for the court to evaluate. This is Plaintiff's burden.

WHEREFORE, Defendant Kahrs Law Offices, P.A. requests this Court's Order denying class certification and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: /s/Daniel F. Church

| | |
|---|---|
| DANIEL F. CHURCH | #34936 |
| BRITTAIN E. McCLURG | #72016 |

8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
(816) 382-1382
Facsimile: (816) 382-1383
dchurch@mwcattorneys.com
bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 22nd day of January 2023 the above and foregoing was filed with the Clerk of the District Court using the electronic filing system which services notice via electronic mail, to:

Thomas Grant Honnold
Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
tgh@belllawkc.com
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFFS*

/s/Daniel F. Church
ATTORNEY FOR DEFENDANT

Electronically Filed - JACKSON - INDEPENDENCE - January 22, 2024 - 07:00 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

PATRICIA A. SIMS, on behalf of herself )
and others similarly situated, )
)
                             Plaintiff, )    Case No. 2316-CV13284
)
vs. )
)
KAHRS LAW OFFICES, P.A., )
)
                         Defendant. )

**<u>DEFENDANT'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO EXCLUDE THE
EXPERT TESTIMONY AND REPORT OF ANTHONY D'ANGELO</u>**

COMES NOW Defendant Kahrs Law Offices, P.A., ("Kahrs"), by and through its counsel,

pursuant to Section 490.065, and for the reasons stated in its Suggestions in Support of Defendant's

Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo requests this Court's

Order excluding the expert testimony and report of Anthony D'Angelo.

In support of its motion, Kahrs states:

**Legal Standard**

Section 490.065.2 governs the admissibility of expert testimony, and it provides that a

witness "qualified as an expert by knowledge, skill, experience, training, or education" may

provide opinion testimony if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the
    trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the
    case.

Section 490.065.2 requires trial courts to act as gatekeepers to ensure the testimony sought to be

admitted is not only relevant but reliable. *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700

(Mo. App. E.D. 2020) (citing *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 317 (Mo. App. E.D. 2018). "This Court since has held that because the language of Section 490.065 now mirrors [Federal Rule of Evidence] 702 and 703, and because FRE 702 and 703 are interpreted under *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)] and its progeny, the cases interpreting those federal rules remain relevant and useful in guiding our interpretation of Section 490.065." *Id*. (quoting *State v. Suttles*, 581 S.W.3d 137, 147 (Mo. App. E.D. 2019).

The gatekeeping function of trial courts under FRE 702 involves a three-part test: "(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable." *Id*. (citing *Suttles*, 581 S.W.3d at 147; *Jones v. City of Kan. City*, 569 S.W.3d 42, 54 (Mo. App. W.D. 2019) (overruled on other grounds)).

**Argument**

Plaintiff intends to offer the report and testimony of Anthony D'Angelo's report and testimony regarding the potential risks associated with the disclosure of Ms. Sims' account information and the potential damages stemming therefrom for the purpose of qualifying the putative class. However, Mr. D'Angelo's report and testimony should be excluded because it does not meet the requirements of Section 490.065.2 because his report and testimony are not based on sufficient facts or data; are not the products of reliable principles and methods; and Mr. D'Angelo has not reliably applied the principles and methods to the facts of the case.

**Mr. D'Angelo's testimony and report are not based on sufficient facts or data.**

In his report, attached hereto as **Exhibit A**, Mr. D'Angelo indicated he reviewed the following:

    a.  Plaintiff's Class Action Complaint;
    b.  Verified Petition for Relief for Breach of Contract, Case No. 2116-CV07115;
    c.  Exhibit A to Petition, Case No. 2116-CV07115;

2

     d.   Defendant Kahrs Law Offices, P.A.'s Answers and Objections to Plaintiff's First Set of Interrogatories to Defendant;

     e.   Defendant Kahrs Law Offices, P.A.'s Second Supplemental Answers and Objections to Plaintiff's First Set of Interrogatories to Defendant;

     f.   Correspondence sent to Advance Financial's counsel regarding the exposure of Sims' PII in January of 2022.

**Exhibit A,** p. 2-3, ¶ 7. In his deposition taken on February 7, 2023, Mr. D'Angelo testified that in addition to the documents referenced in his report, that he also reviewed:

> I believe I reviewed the deposition by Laurie Kahrs. I reviewed the deposition by Mark Kahrs. I reviewed some of the Missouri and Kansas Statutes and Supreme Court rules and orders. I reviewed multiple websites and documents in formulating my expert report.

Deposition of Anthony D'Angelo, attached hereto as **Exhibit B**, 29:4-9. Notably, however, Mr. D'Angelo did not review any deposition testimony of Patricia Sims. *Id*. at 30:9-12; 49:23-50:3. However, Bell Law provided some information about her deposition with Mr. D'Angelo. *Id*. at 30:9-12. Mr. D'Angelo did not record his conversation with Bell Law and did not make any notes from that conversation. *Id*. at 30:21-31:8.

During his conversation with Bell Law, Mr. D'Angelo asked "if [Sims] had suffered any derogatory or negative consequences subsequent to her PII being exposed in the public domain." *Id*. at 31:9-13. Bell Law informed him that "either her debit or credit card had been breached subsequent to her information being exposed." *Id*. at 31:14-18. He further summarized his call with Bell Law as follows:

> I can't recollect her losing money, but I can recollect the fact that she had to - - experienced a lot of frustration in that she had to go to the bank and have her debit card canceled and had to wait a significant amount of time to get a new card issued. And so she - - had to go through the hassle of going to the bank and trying to mitigate the fact that her debit card had been breached.

*Id*. at 31:21-32:3.

However, with respect to these occurrences, Mr. D'Angelo testified as follows:

Electronically Filed - JACKSON - INDEPENDENCE - January 22, 2024 - 07:00 PM

Q.      Okay. Incidentally, the debit card breach to which you spoke about a moment ago, do you know what actually was the cause of that debit card breach?

A.      Can you clarify that question, please?

Q.      Do you know what caused the debit card breach that Ms. Sims suffered? do you know what actually - - I mean how it happened?

A.      My understanding was there were unauthorized charges on the card.

Q.      And do you know how the unauthorized charges were caused to occur?

A.      I still may be having a little problem trying to understand your question. How the charges occurred?

Q.      Sure.

A.      Do you mean did they her card or - -

Q.      Yeah. How did that happen, do you know.

A.      I don't know.

*Id*. at 35:12-36:7. Because Mr. D'Angelo does not know how the two unauthorized charges occurred, he cannot opine that they were caused by Kahrs' filing of Ms. Sims' routing and account number.  Therefore, that portion of his report and deposition testimony should be stricken.

Mr. D'Angelo further testified that Ms. Sims "experienced some negative emotional consequences, negative physical consequences, [and] social consequences." *Id*. at 33:2-10.

Mr. D'Angelo referenced that Ms. Sims was "having problems sleeping, having problems eating. It was affecting her emotionally. She couldn't sleep. She was worried and agitated, things like that." *Id*. at 35:4. However, it bears repeating that Mr. D'Angelo did not obtain this information from Ms. Sims' deposition or any conversation that he had with her. *Id*. at 30:9-12; 49:23-50:3. Instead, he relied solely on the hearsay summarization by Ms. Sims' counsel. *Id*. at 30:9-12. Mr. D'Angelo did not know whether Ms. Sims was treated by a doctor or medical professional for any of those conditions. *Id*. at 37:2-7. He further did not know "any specific details

4

regarding Ms. Sims' complaints about not being able to sleep[.]" *Id.* at 86:8-11. As such, Mr. D'Angelo's references to Ms. Sims' complaints about sleep should be stricken because he lacks sufficient data.

Mr. D'Angelo indicated that the social consequences stemmed from the fact "that her neighbors were aware that a process server was trying to find her." *Id.* at 33. However, the social stigma associated with the process servers trying to locate Ms. Sims is not a relevant factor in this suit. Ms. Sims alleges that her damages stem from the disclosure of PII in court filings. *See* Class Action Petition, ¶ 1 (alleging that Kahrs breached its duty when it publicly filed Agreement without redacting Plaintiff and the putative class members' bank account numbers and/or routing numbers). Mr. D'Angelo testified that he did know which neighbors were contacted by the process server and that he did not know "specifically what was said to the neighbors" by the process servers. "It was [his] understanding that they were looking to serve her." *Id.* As such, Mr. D'Angelo lacks sufficient data or information to opine whether Ms. Sims' sustained social stigma attributed to the filing of her financial information in a court exhibit, and any portion of his report or testimony relating to that topic should be stricken.

Additionally, Mr. D'Angelo did not review any testimony or pleadings from the related arbitration case, *In the Matter of the Arbitration Between: Patricia Sims v. Lakshmi Financial*. *Id.* at 48:9-22. In that case, Ms. Sims filed claims against Lakshmi Financial, LLC, which does business as Advance Financial. Kahrs represented Lakshmi Financial in *Lakshmi Financial v. Patricia Sims*, 2116-CV07115 in the Circuit Court of Jackson County ("Underlying Suit"), wherein Kahrs attached the Account Agreement containing Sims' routing and account number as Exhibit A to the Petition. Bell Law represented Ms. Sims in the arbitration case as well.

In the arbitration, Advance Financial moved for summary judgment, and in support of its motion for summary judgment, Advance Financial produced call logs dated April 16, 2019. (Motion and relevant exhibits are attached hereto as **Exhibit C**). On that date, Advance Financial received three phone calls from a number which was identified as xxx-xxx-8901, which was consistent with the number Ms. Sims had used in her application for a line of credit. During those phone calls, the caller, purporting to be Patricia Sims, requested that Advance Financial update Ms. Sims' account with a new phone number, new email, new debit card. The caller produced a debit card bearing the names "Patricia Sims." When asked about this in his deposition, Mr. D'Angelo testified:

> Q.  Sure. And I understand you're not aware of any facts that would support the notion that there was somebody purporting to be Patricia Sims giving them the name of a different debit card for them to use to deposit the funds?
>
> A.  I'm not aware of any of that, no.

**Exhibit B,** 62:19-25. However, when presented with these facts, Mr. D'Angelo testified that "The fact that she didn't receive money from her line of credit and somebody else did, they took that account over without her knowledge." *Id*. at 72:19-22.

> Well, that's what an account takeover is, when somebody takes a small step to take over an account. In this case, somebody called up and said, "Oh, you know, this is my account, but I want you to move the money over her." So that is part of an account take over.

*Id*. at 73:10-15. Notably, this incident predated the filing of the Underlying Suit by nearly two years. Class Action Petition, ¶ 27 (Underlying Suit was filed on or about March 24, 2021). The fact that Mr. D'Angelo was never informed of these events undermines his entire report. It clearly demonstrates that Ms. Sims' identity was compromised well before Kahrs' filed the Underlying Suit.

Finally, Plaintiffs rely in large part on Mr. D'Angelo's report for the purpose of certifying the putative class. When asked if he had identified any member of the putative class that has suffered any monetary damages by reason of the Kahrs' court filings, Mr. D'Angelo testified that he "wasn't retained to do a survey of the class members, so [he] never interviewed them to see if they'd had that problem." *Id.* at 69:22-70:4. Likewise, he did not survey the putative class members to determine if any of them had their accounts taken over. *Id.* at 71:10-15. Further he could not indicate if any passwords pertaining to putative class members had been harvested because he had not surveyed the putative class members. *Id.* at 74:25-75:5. Mr. D'Angelo testified that the value of PII "depends on your circumstances." *Id.* at 77:5-11. Mr. D'Angelo identified various factors that would influence the value of PII including: the size of your bank account, the size or assets, financial activity, having multiple business accounts, multiple personal accounts, brokerage accounts. *Id.* at 77:12-20. Even after identifying these factors, Mr. D'Angelo testified that "PII is equally valuable to all people, but it's very valuable and protecting it is extremely important." *Id.* at 78:5-8. After identifying those factors, Mr. D'Angelo acknowledged that he had not surveyed the putative class members to survey their financial activities or their net worth. *Id.* at 78:9-12. Because Mr. D'Angelo has not taken any efforts to survey the members of the putative class, he is not in a position to opine as to their potential damages as it "depends on [their] circumstances." *Id.* at 77:5-11.

As such, Mr. D'Angelo's report and testimony is insufficient to comply with Section 490.065.2(1)(b).

**Mr. D'Angelo's report and testimony is not the product of reliable principles and methods.**

Mr. D'Angelo opines that:

> Because consumers and debtors unredacted sensitive PII was exposed in the public domain and disseminated to third parties, impacted victims will be subject to a *continuing and substantial risk* of fraudulent activity associated with identity theft and the resulting time and costs necessary to prevent, detect, contest, mitigate and repair the prospective consequences and hard. Consumers and debtors will likewise need to remain vigilant in perpetuity to include purchasing and maintaining identity protection, monitoring, and recovery services to mitigate the potential derogatory consequences of having ones [sic] sensitive PII exposed in the public domain.

**Exhibit A**, p. 19 ¶ 101. However, standing requires that an injury be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Allegations of future injury "suffice if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). A substantial risk means a "realistic danger of sustaining a direct injury." *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988). Plaintiffs are not required "to demonstrate that it is literally certain that the harms they identify will come about," a "possible future injury"—even one with an "objectively reasonably likelihood" of occurring—is not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

Even after *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), Courts addressing whether there is a "substantial risk" of future identity theft analyze: (1) the nature of the information at issue; (2) whether there has been an actual acquisition of the information by a malicious threat actor or simply a fear over exposure of information; and (3) whether there are any actual examples of harmful use of the information that has occurred or simply a fear that such information could possibly be misused in the future. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3rd Cir. 2022); *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2nd Cir. 2021); *In re SuperValu*, 870 F.3d 763 (8th Cir. 2017).

In *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3rd Cir. 2011), the Court held that the plaintiffs' allegations of a "hypothetical, future injury" were insufficient because they rely on speculation that the hacker:

> (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [Plaintiffs] by making unauthorized transactions in [Plaintiffs'] names.

The Court further held that, "unless and until these conjectures come true, [Plaintiffs'] have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id*.

Similarly, in *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021), the plaintiff alleged that the defendant had been the target of a cyberattack, his credit card information may have been accessed in the attack, and that he cancelled his credit cards as a result. The Eleventh Circuit dismissed for lack of standing because conclusory allegations of a continuing risk of identity theft "without specific evidence of some misuse of class members' data" does not establish a concrete injury. *Id*. at 1343-44.

Likewise in *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2nd Cir 2021), the Court affirmed the dismissal for lack of standing because a mere increase risk of identity theft can be a concrete injury, but that the allegations that personal identifying information was found in a data breach because the data was not intentionally targeted or misused in anyway.

A.      **Potential for Identity Theft**

As such, Courts require that there be some evidence of intentional targeting to obtain information or that the obtained information has been misused. Mr. D'Angelo's report foregoes any of this analysis and a substantial part of his report rests on pure speculation. *See* **Exhibit A,** pp. 6, ¶ 27 (account takeover fraud); p. 9 ¶¶ 43 (tax return fraud); p. 9, ¶ 46 (social security fraud); p. 10, ¶ 51 (negative credit reporting); p. 10, ¶ 52 (false arrest). p. 11, ¶ 56 (medical identity fraud).

9

### 1. Account Takeover Fraud

Mr. D'Angelo opines that the exposure of bank routing and account numbers along with names, addresses, phone numbers and other information increases the risk of account takeover fraud. **Exhibit A**, p. 6, ¶ 27. In his deposition, Mr. D'Angelo pointed to the occurrence referenced above on April 16, 2019 (which predates the filing of the Underlying Suit by nearly two years), where Ms. Sims' "didn't receive money from her line of credit and somebody else did, they took that account over without her knowledge." **Exhibit B**, 72:19-22. He further testified that "the fact that her debit card was breached means that that account was taken over by someone else." *Id*. at 71:20-22.

However, as addressed previously, Mr. D'Angelo does not, and in fact cannot, opine that the debit card breaches were causally related to the Kahrs' filing of Ms. Sims' bank account information. Mr. D'Angelo acknowledged that he was not aware of any harvesting of passwords by anyone ins Ms. Sims' instance. *Id*. at 74:22-24. Possession of account information by itself without corresponding credentials, does not create an environment for debit card takeover. Rebuttal Expert Report of Shawn Tuma, attached hereto as **Exhibit D**, ¶ 22; *See* **Exhibit B**, p. 7, ¶ 33 (noting that additional efforts such as phishing, viruses, or malware are needed to harvest passwords).

Notably, consumer protection statutes codified as K.S.A. § 50-7a01(g) defines "personal information" to include a "financial account number . . . *alone or in combination* with any required security code, access code or password *that would permit access to a consumer's financial account.*" (emphasis added). Similarly, Missouri's consumer protection statute codified at Mo. Rev. Stat. § 407.1500.1(9) defines "personal information" to include a "financial account number, credit card number, or debit card number *in combination* with any required security code, access

code, or password that would *permit access to an individual's account*." (emphasis added). There is no evidence that the publication of Ms. Sims' account number alone provides access to her access to her financial account.

In his report, Mr. D'Angelo opines that:

Kahrs provided malicious actors a leg up in facilitating [account take overs] identity fraud. With sensitive exposed PII in hand, identity theft criminals *can thereafter* acquire login and password information via phishing, viruses, malware and brute force credential hacking to utilize information gleaned from numerous data breaches to augment aggrieved consumers and debtors exposed sensitive PII to commit identity fraud.

**Exhibit A**, p. 7 ¶ 33. However, Mr. D'Angelo's is even more speculative than the allegations in *Reilly*, where the plaintiff speculated that a hacker:

(1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [Plaintiffs] by making unauthorized transactions in [Plaintiffs'] names.

*Reilly*, 664 F.3d at 42. Here, there is no evidence that any individual aside from Ms. Sims', counsel in the related cases, the process server[1], and court personnel[2] have accessed Ms. Sims' account information. Mr. D'Angelo assumes that either these individuals or some unknown individual[3] will use this information to conduct further malicious acts to obtain her account credentials to take over her account. There is simply no evidence to support this egregious allegation.

As such, references to account takeover contained in Mr. D'Angelo's report and testimony should be stricken like in *Reilly, Tsao,* and *McMorris* because his opinion that Ms. Sims or

---

[1] Mr. D'Angelo testified that he was not aware of any instance where the process servers used by Kahrs had misused personal information. **Exhibit B**, 54:7-11; He also testified that he was "not specifically" aware of any instance where process servers misused PII, but "they're not always the most reputable group of people." **Exhibit B**, 53:14-19.

[2] Mr. D'Angelo testified that he was not "specifically aware" of any instance where a court official misused PII, "but [he] know[s] it probably happened." **Exhibit B**, 53:10-14

[3] Mr. D'Angelo testified that he was not aware of the security system utilized by Missouri courts with respect to its e-filing system, Case.net. **Exhibit B**, 58:23-25.

members of the putative class will face a substantial risk of account takeover it is a hypothetical risk as opposed to an imminent risk.

### 2. Tax Return Fraud

Mr. D'Angelo opines that Ms. Sims and the putative class "are much more likely to suffer other types of identity fraud and/or identity theft to include but not limited to having criminals file bogus tax returns to fraudulently claim refunds. **Exhibit A**, p. 9, ¶¶ 43, 45. In his deposition, Mr. D'Angelo acknowledged that he was not "aware of any tax return fraud concerning Patricia Sims." **Exhibit B**, 79:1-3. As such, this is another example of a hypothetical risk as opposed to an imminent risk under *Reilly*, *Tsao*, and *McMorris*, and Mr. D'Angelo's opinions relating to tax return fraud should be stricken.

### 3. Social Security Fraud

In the instant case, there is no allegation that Kahrs published Ms. Sims' complete Social Security Number. In fact, Mr. D'Angelo testified that only the last four digits of Ms. Sims' Social Security Number was contained in the Petition in the Underlying Suit. **Exhibit B**, 24:5-8. Mr. D'Angelo opines that:

> Kahrs repeated exposure of consumers and debtors sensitive PII *can* lead to the compromise of a victims Social Security account number which *can* impact a victims Social Security Income Credits. Imposters who steal and use another's Social Security number *can* cause chaos when the rightful Social Security number holder *tries* to apply for benefits.

**Exhibit A**, p. 9, ¶ 46 (emphasis added). Again, Mr. D'Angelo testified that he was unaware of "Mrs. Sims' Social Security account being stolen in this case[.]" **Exhibit B**, 79:4-7. Furthermore, Mr. D'Angelo does not establish how the disclosure of Ms. Sims' routing and account number could lead to Social Security fraud. Instead, he assumes that it *can* happen and that it *can* impact one's life if it does. There is an insufficient foundation to establish that Ms. Sims faces an

imminent risk of Social Security Fraud or how such the disclosure of her banking information could increase that risk. For these reasons, Mr. D'Angelo's rank speculation that it simply could happen, without more, should be stricken.

### 4. Negative Credit Reporting

Mr. D'Angelo opines that:

> Other adverse consequences *can* result from the exposure of victims sensitive PII in as much as derogatory information reflected in credit report files and databases *can* negatively impact a victims opportunity costs, including employment prospects, automobile loans and home insurance premiums, the ability to procure insurance coverage, opening utility accounts, purchasing a home, renting an apartment, securing cellular phone service, purchasing an automobile along with other problems.

**Exhibit A**, p. 10, ¶ 51. In fact, Mr. D'Angelo has not seen Ms. Sims' credit report. **Exhibit B,** 80:22-23. He is further unaware of any situation wherein Ms. Sims has faced negative credit reporting as a result of the filing of her account information. *See* **Exhibit B**, 79:21-25 (no adverse employment impact); 80:1-3 (automobile loan); 80:4-6 (home insurance premiums); 80:7-8 (utility accounts); 80:9-12 (cellular phone).

He further indicated that the Underlying Suit should be contained in Ms. Sims' credit report, and that its presence would "definitely impact [her] credit." **Exhibit B**, 80:24-81:5. As such, even if there was evidence that Ms. Sims had suffered negative consequences as a result of her credit report, which there is not, Mr. D'Angelo cannot establish that those consequences were the result of the filing of her account number as opposed to the filing of the Underlying Suit. Therefore, his opinion that Ms. Sims *can* be negatively impacted because of the filing is speculation, and Mr. D'Angelo's opinions related to the negative credit reporting should be stricken.

### 5. False Arrest

In general, Mr. D'Angelo opines that identity theft can lead to instances of false arrest when an identity thief commits a crime purporting to be the identity theft victim. *See* **Exhibit A**, p. 10, ¶¶ 52-54. He opines that victims could be required to contact law enforcement, submit fingerprints, photographs, and identifying information to obtain a "clearance record" or "certificate of release" to demonstrate their innocence. *Id*. at ¶ 54. These false arrests could affect an individual's social standing, mental health, employment, housing, and financial matters. *Id*. at ¶ 53. Mr. D'Angelo's opinion regarding the possibility of false arrest relies on supposition and rank speculation. He makes no effort to establish how the filing of Ms. Sims' account number could potentially lead to her false arrest. It should be stricken on that basis alone.

Furthermore, Mr. D'Angelo testified that he was unaware if Ms. Sims was in any criminal record database, if she had ever been false arrested, or any instance where someone has committed a crime using her name or identity. **Exhibit B**, 81:10-19. As established by *Reilly*, *Tsao*, and *McMorris*, the mere possibility that an event could occur in the future is insufficient, instead, Mr. D'Angelo must establish that it is "certainly impending." For this reason, Mr. D'Angelo's references to potential criminal activity by a third-party cannot withstand scrutiny, and these references should be stricken.

### 6. Medical Identity Fraud

Mr. D'Angelo devotes one paragraph to opine that there is a potential risk of medical identity fraud:

> Compromised PII *can* also *expose* affected persons to medical identity fraud, providing an identity thief *the opportunity* to use compromised PII to procure health insurance, schedule and see a physician, purchase prescription drugs, file claims with the affected persons' insurance provider, and receive other health-related benefits. According to the Office of Inspector General, U.S. Department of Health and Human Services, medical identity theft *can disrupt a victim's life*, which can be life-threatening if inaccurate information ends up in a victim's personal medical records.

**Exhibit A,** p. 11, ¶ 56 (emphasis added). There is no evidence to support Mr. D'Angelo's conclusion that the risk of medical identity fraud is imminent. Furthermore, in that one paragraph, he does not establish how a malicious threat actor could perpetuate medical identity fraud with an individual's routing and account number. As such, Mr. D'Angelo's speculation that there is a risk of potential medical identity fraud lacks foundation and should be stricken.

### Conclusion

In his conclusion, Mr. D'Angelo opines that:

> Because consumers and debtors unredacted sensitive PII was exposed in the public domain and disseminated to third parties, impacted victims will be subject to a continuing and substantial risk of fraudulent activity associated with identity theft and the resulting time and costs necessary to prevent, detect, contest, mitigate and repair the prospective consequences and harm. Consumers and debtors will likewise need to remain vigilant in perpetuity to include purchasing and maintaining identity protection, monitoring, and recovery services to mitigate the potential derogatory consequences of having ones sensitive PII exposed in the public domain.

**Exhibit A**, p. 19 ¶ 101. However, in reaching his conclusion, Mr. D'Angelo does not consider or address whether there has been an actual acquisition of the information by a malicious threat actor or whether any of the material filed with the courts have been misused. *Clemons*, 48 F.4th 146. As such, the hypothetical threats identified by Mr. D'Angelo are not the product of reliable principles and methods delineated by the Courts. Therefore, Mr. D'Angelo's report and testimony does not satisfy the requirements of Section 490.065.2(1)(c), and they should be stricken.

**Mr. D'Angelo has not reliably applied the principles and methods to the facts of the case.**

Mr. D'Angelo references "PII" or "sensitive PII" throughout his report. Statutes, rules, and regulations provide specific definitions for "personal information" or "personally identifiable information" that are operable in specific contexts. Mr. D'Angelo's report does not a cite a single

statute, regulation, or rule, and in fact, his report does not provide a definition for "PII" or "sensitive PII." *See generally,* **Exhibit A**. However, in his report he provides examples including: full name, address, phone number, bank account number and bank routing number. **Exhibit A**, p. 4, ¶ 19. In his deposition, he broadly defined as "information either by itself or in combination with other information that can be used to identity, locate or contact an individual." **Exhibit B**, p.50:4-8. However, Mr. D'Angelo could not provide a specific statute or reference to support that definition. He referred to HIPAA, Gramm-Leach-Bliley Act, and the Federal Trade Commission, however, it is unclear how any of these statutes would apply under these facts. *Id.* at 51:24-52:6.

In the Class Action Petition, Ms. Sims' relies on Missouri Supreme Court Operating Rule 2.05(c) defining "personal information" to include:

1) Social Security numbers;
2) Motor vehicle operator license numbers;
3) Victim information including name, address, and other contact information;
4) Informant information including names, address, and other contact information;
5) Witness information including name, address, and other contact information;
6) State identification numbers; and
7) Financial institution account numbers, credit card numbers, personal identification numbers, or passwords used to secure accounts.

Class Action Petition, ¶¶ 61-63.

Missouri Supreme Court Operating Rule 2.05(c) does not define "personally identifiable information" as broadly as Mr. D'Angelo. As such, Mr. D'Angelo's broad interpretation of "PII" or "sensitive PII" is inconsistent with the relevant statutes and rules governing this case. Therefore, his analysis does not apply the principles and methods to the facts of the case, and thus, his opinion is inadmissible under Section 490.065.2(1)(d).

**Inadmissible conclusions of fact and law**

In paragraph 23, Mr. D'Angelo opined that Kahrs was required by statute and rule of law to "affirmatively certify compliance" . . . In many instances Kahrs intentionally mislead [sic] and

deceived the courts when Kahrs falsely certified that they were in compliance with the redaction mandates . . . ." **Exhibit** A, p. 5, ¶ 23. However, whether the statutes and "rule of law" required affirmative compliance is a question of law for the Court to determine as opposed to Mr. D'Angelo. Additionally, whether the filing of account information was intentional or negligent is a question of fact for the jury. As such, paragraph 23 of Mr. D'Angelo's report should be stricken. Similarly, paragraph 20 states that Kahrs' actions were unlawful, which should be stricken as it is a conclusion of law.

Finally, in paragraph 100, Mr. D'Angelo opines that Missouri consumers/debtors were entitled to $1,000 in statutory damages, which is another conclusion of law, and it should be stricken.

WHEREFORE, Defendant's pray this Court enter an Order excluding the expert testimony and report of Anthony D'Angelo and for such further relief as the Court deems just and proper.

Respectfully submitted,

MORROW WILLNAUER CHURCH, L.L.C.

By: /s/Daniel F. Church
     DANIEL F. CHURCH       #34936
     BRITTAIN E. McCLURG   #72016
     8330 Ward Parkway, Suite 300
     Kansas City, Missouri 64114
     (816) 382-1382
     Facsimile: (816) 382-1383
     dchurch@mwcattorneys.com
     bmcclurg@mwcattorneys.com

*ATTORNEYS FOR DEFENDANT*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY on this 22nd day of January 2023 the above and foregoing was filed with the Clerk of the District Court using the electronic filing system which services notice via electronic mail, to:

Thomas Grant Honnold
Bryce B. Bell
Jenilee V. Zentrich
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
tgh@belllawkc.com
bryce@belllawkc.com
jz@belllawkc.com
*ATTORNEYS FOR PLAINTIFFS*

        */s/Daniel F. Church*
        ATTORNEY FOR DEFENDANT

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDPENDENCE**

PATRICIA A. SIMS, on behalf of herself )
and others similarly situated, )
 )
     Plaintiff, )
 )
vs. )     **Case No. 2316-CV 13284**
 )
KAHRS LAW OFFICES, P.A., )
 )
     Defendant. )

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE**
**RESPONSE TO MOTION TO EXCLUDE THE EXPERT TESTIMONY AND**
**REPORT OF ANTHONY D'ANGELO**

COMES NOW, Plaintiff, by and through her undersigned counsel, and respectfully moves this Court for an Order extending her deadline 15 days, up to and including February 16, 2024, to file her Response to the Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo. In support of this Motion, Plaintiff states the following:

1.     The operative scheduling order for this matter was entered October 4, 2023.

2.     The operative scheduling order provided that Defendants shall disclose, designate, and make their retained expert witnesses available for deposition by no later than January 31, 2024.

3.     Defendant's Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo was filed on January 22, 2024.

4.     Plaintiff's deadline to file the Response to the Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo will be February 1, 2024.

5.     Due to a week-long professional commitment the week of January 29, 2024, and a four-day trial the week of February 5, 2024, Plaintiff's counsel requests an additional 15

1

days, up to and including February 16, 2024, to file their Response to the Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo.

6.    Plaintiff has contacted Defendant with respect to this motion, but Defendant has not yet responded. Therefore, Plaintiff does not know Defendant's position.

7.    The extension of this deadline would cause no prejudice as no other deadlines would be affected.

8.    Plaintiff submits that this requested extension is sought in the interest of justice and not for any undue purpose or delay.

9.    This is Plaintiff's first request for an extension to file her Response to the Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo.

WHEREFORE, Plaintiff, respectfully requests the Court grant her up to, and including, February 16, 2024 to file her Response to the Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo.


Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich    MO#72781
T. Grant Honnold       MO#75844
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
***Attorneys for Plaintiff***

## <u>Certificate of Service</u>

The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court's e-Filing system on January 29, 2024, and thereby served upon all attorneys of record.

<u>*/s/ Jenilee V. Zentrich*</u>

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| PATRICIA SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2316-CV13284** |
| | ) | **Division 2** |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

In its Suggestions in Opposition to Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel, Defendant Kahrs Law Offices, P.A. ("Defendant") contends that the only criteria for class certification that Plaintiff does not meet are commonality and typicality. As such, Plaintiff will only address these two requirements in this reply brief.

### I.      Plaintiff has established commonality as required by Rule 52.08(a)(2).

As an initial matter, despite making the bold claim that "a substantial portion of the putative class's bank accounts were closed at the time their respective suits were filed," Defendant provides no evidence to support this expansive statement. Moreover, Defendant provides no analysis as to why *even if* true, this would preclude commonality. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[1] Here, Plaintiff has provided a multitude of common questions whose common answers would materially advance the resolution of the present case. The alleged issue raised by Defendant may go towards the *extent* of damage, which may vary from class member to class

---

[1] *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*, 524 S.W.3d 116, 129-30 (Mo. Ct. App. W.D. 2017) (citing *Dukes*, 564 U.S. at 350) (emphasis in original).

member, but the nature of the relief sought is common through the class, and the relief is uniformly calculable using the same methodology.[2] Defendant's attempt to throw an "individual question" into the mix does nothing to obscure the narrow and straightforward common questions posed by Plaintiff.

Second, the Court may disregard Defendant's arguments related to the account number for a loan that is in default as Plaintiff has not asserted any claims related to Defendant's inclusion of the loan account number at issue in each of the underlying suits.

## II.    Plaintiff has established typicality as required by Rule 52.08(a)(3).

The arbitration, *In the Matter of the Arbitration between Patricia Sims v. Lakshmi Finance, LLC d/b/a Advance Financial*, that Defendant discusses in its Opposition has no bearing on the claims in this matter. Defendant focuses on the fact that Plaintiff was a victim of account takeover before Defendant publicly filed her bank account information in the underlying lawsuit. However, while this *may* be a difference between Plaintiff and the putative class members, it does not make her situation atypical of the putative class members. Typicality does not require the claims be identical; to the contrary, "[f]actual variations in the individual claims will not normally preclude class certification if the *claim arises from the same event or course of conduct as the class claims*, and gives rise to the same legal or remedial theory."[3] Indeed, Defendant does not even articulate *why* this difference makes Plaintiff's claims atypical of the putative class members. For instance, the account takeover issue that was litigated in the arbitration matter did not involve the same bank account whose information Defendant publicly filed; rather, it involved Sims' line of credit through Advance Financial. Therefore, Plaintiffs'

---

[2] *See generally* **Exhibit 3** to Motion.
[3] *DaimlerChrysler*, 204 S.W.3d at 169 (citing *Carpe v. Aquila, Inc*., 224 F.R.D. 454, 457 (W.D. Mo. 2004)) (emphasis in original); *see also Smith v. Leif Johnson Ford, Inc.*, 632 S.W.3d 798 (Mo. Ct. App. E.D. 2021) ("Typicality is fairly easily met so long as other class members have claims similar to the named Plaintiff."); *Moore v. Scroll Compressors, LLC*, 632 S.W.3d 810, 816 (Mo. Ct. App. S.D. 2021) (quoting *Elsea*, 463 S.W.3d at 420).

2

claims, like the putative class members' claims, arise from the same event: Defendant's public filing of personal bank account information.

### III. Conclusion

WHEREFORE, Plaintiff respectfully requests the Court grant her Motion to certify the Rule 52.08(b)(3) class and sub-class as proposed, appoint Sims as class representative, and appoint Plaintiff's counsel as class counsel.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich     MO#72781
T. Grant Honnold       MO#75844
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system on January 29, 2023, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

Electronically Filed - JACKSON - INDEPENDENCE - January 29, 2024 - 10:37 AM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2316-CV 13284 |
| KAHRS LAW OFFICES, P.A., | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES

COMES NOW, Plaintiffs, by and through their counsel of record, and hereby provides the following Designation of Expert Witnesses:

## RETAINED EXPERTS:

**1. Anthony D'Angelo**

Anthony D'Angelo
President at Pinnacle Consulting Services
1841 S Calumet Avenue 2001
Chicago, IL 60616
anthonypdangelo@yahoo.com
adangelo@hallwines.com

Mr. D'Angelo has had 24 years of experience with FBI Security Clearances. His areas of expertise include the following: international and domestic security; financial fraud investigations; SME airport security and critical infrastructure matters; training and communication; multidisciplinary collaboration (public/private sectors); identity theft and mortgage fraud; and counterrorism. Mr. D'Angelo is a graduate of University of Kentucky with a B.A. in Political Science, a graduate of University of Louisville College of Law with a J.D., and a graduate of Naval Post Graduate School for Homeland Security and Defense with a M.A. in

Electronically Filed - JACKSON - INDEPENDENCE - January 31, 2024 - 01:17 PM

Security Studies. If called to testify in this matter, Mr. D'Angelo is expected to testify to his professional knowledge regarding the causes and harms associated with identity theft. Mr. D'Angelo will testify consistent with his CV, expert report dated October 10, 2022, and his testimony given in Case No. 2:22-cv-02112; Mr. D'Angelo's qualifications are listed on his CV. Mr. D'Angelo will use his training, education, and experience, as well as other matters, as the basis for his conclusions. Mr. D'Angelo's hourly rate is $250.00 per hour for research and to draft a report. His hourly rate is $300.00 per hour for testimony plus all reasonable out-of-pocket expenses (travel, lodging, etc.). Mr. D'Angelo's curriculum vitae will be provided to Defendant's counsel contemporaneously with this filing.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell          MO#66841
Jenilee V. Zentrich    MO#72781
T. Grant Honnold       MO#75844
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court's e-Filing system on January 31, 2024, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| PATRICIA A. SIMS, on behalf of herself and others similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )      Case No. 2316-CV 13284 |
| | ) |
| KAHRS LAW OFFICES, P.A., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE THE
EXPERT TESTIMONY AND REPORT OF ANTHONY D'ANGELO**

COMES NOW, Plaintiff, by and through her undersigned counsel, and respectfully moves this Court for an Order denying Defendant's Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo. In support of this Motion, Plaintiff states:

### I.      Background

This case arises out of Defendant's publication of sensitive, personal financial information of the Plaintiff and proposed class. In depositions, Defendant's corporate designee has agreed that this information—bank account and routing numbers—is a form of personally identifying information, or "PII."[1] Defendant's corporate designee has also agreed that both Kansas and Missouri have rules requiring Defendant to have redacted this PII from publicly-filed documents.[2] Because these underlying actions are undisputed, the primary non-legal questions[3] which remain concern Defendant's mental culpability and the damages which stem from the conduct. Relevant

---

[1] Deposition of Mark Kahrs at 11:10-24.
[2] Deposition of Mark Kahrs at 12:1-19, 13:2-14:17, 15:24-3, Deposition Exhibit 49, Deposition Exhibit 52; *see also* Kansas Supreme Court Rule 24; 509.520 R.S.Mo.; Missouri Supreme Court Operating Rule 2.02; Missouri Supreme Court Operating Rule 2.05(c).
[3] There are several legal questions outstanding. *See* Motion for Class Certification at 14-15.

to the class certification stage of this case, this is where Plaintiff's expert Anthony D'Angelo fits in: the classes' damages and Defendant's mental culpability.[4]

## II. Overview of Anthony D'Angelo's Expert Testimony and Conclusions

### a. D'Angelo's qualifications

Defendant does not challenge Mr. D'Angelo's qualifications,[5] so we will give only a summary. Mr. D'Angelo has a Juris Doctor degree and is a former Agent and Principal Legal Advisor[6] with the Federal Bureau of Investigation, having retired in 2008.[7] In 1990, D'Angelo was transferred from the FBI's Minneapolis division to Chicago, whereupon he was "assigned to a white collar crime squad that specialized in financial fraud."[8] Thus, for nearly twenty years, D'Angelo worked with the FBI, specializing in the fraud that he discusses in this case.[9]

### b. D'Angelo's testimony and conclusions

Broadly speaking, D'Angelo gives testimony and conclusions about the potential risks and hazards that can befall someone who is the victim of the type of actions Defendant has committed. That is, D'Angelo speaks to the risks and harms that come to those who have their PII publicly disseminated, as Defendant has done to Plaintiff and the proposed class members.

D'Angelo specifically discusses several types of harm that can befall class members. We discuss this in detail in our class certification motion, in Section III.[10] We won't repeat that discussion here but instead incorporate it by reference.[11]

While Defendant tailored portions of its motion to Plaintiff's Motion for Class

---

[4] Expert Report of Anthony D'Angelo.
[5] *See generally* Defendant's Motion to Exclude Testimony of Anthony D'Angelo.
[6] The title of this role subsequently became the "chief division counsel for the Minneapolis division of the FBI." Deposition of Anthony D'Angelo at 13:2-4.
[7] Deposition of Anthony D'Angelo at 4:22-5:4, 12:19-13:4.
[8] Deposition of Anthony D'Angelo at 13:24-14:9.
[9] *Id.*; *see also* Expert Report of Anthony D'Angelo at ¶ 5.
[10] Motion for Class Certification at 4-8.
[11] *Id.*

Certification,[12] there are a variety of items Defendant challenges and seeks to have excluded which Plaintiff has not cited or utilized in her Motion for Class Certification.[13] While Plaintiff did, at times, cite to D'Angelo's report generally, few, if any, of those instances intersect any of Defendant's instant challenges.[14] Further, Defendant in places challenges opinions D'Angelo only gave after having them elicited by Defendant in his deposition, but Plaintiff does not use any of those opinions in her class certification motion.[15]

### III. Legal Standard

Section 490.065.2 governs the admissibility of expert testimony in this Court, and it provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony provided that certain requirements are met.[16] Because this rule mirrors the Federal Rules of Evidence 701 and 702, which governs the admissibility of expert testimony, "the cases interpreting [the] federal rules remain relevant and useful in guiding our interpretation of Section 490.065."[17] Rule 702 only requires a showing that: (1) the witness is qualified as an expert; (2) the expert's specialized knowledge will the trier of fact to understand the evidence or determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and, (5) the expert has reliably

---

[12] *Compare* Motion for Class Certification at 4-8 (discussing Account Takeover Fraud, Tax Return Fraud, Social Security Fraud, Negative Credit Reporting, Criminal Activity, and Repairing the Damage) *with* Defendant's Motion to Exclude Testimony of Anthony D'Angelo (discussing Account Takeover Fraud, Tax Return Fraud, Social Security Fraud, Negative Credit Reporting, Criminal Activity (False Arrest), and Medical Identity Fraud).

[13] Plaintiff specifically cited the following paragraphs of D'Angelo's report in her Motion for Class Certification: 5-6, 8-16, 21, 26, 28, 29, 31, 32, 41-42, 43-45, 46-54, 58-59, 61, 63-66, 78, 87, 92-93, 95. *See generally* Motion for Class Certification.

[14] *Compare* Motion for Class Certification at 22 n. 123 (expert testimony will be used to prove injury), 14 n. 81 (calculation of relief is uniformly calculable using same methodology) *with, generally,* Defendant's Motion to Exclude Testimony of Anthony D'Angelo.

[15] *See generally* Motion for Class Certification.

[16] RsMo. § 490.065.2

[17] *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (citing State ex rel. Gardner v. Wright, 562 S.W.3d 311, 317 (Mo. App. E.D. 2018) (quoting State v. Suttles, 581 S.W.3d 137, 147 (Mo. App. E.D. 2019).

applied the principles and methods to the facts of the case.[18] Trial courts act as "gatekeepers" to assure these requirements are met, though any doubts should be resolved in favor of admissibility.[19] Generally the District Court should focus on the expert's methodology rather than the conclusions that they generate,[20] and reliability of experts' opinions "go to the weight of those opinions and not . . . their admissibility."[21]

## IV. Argument

Defendant's arguments are either irrelevant, because they attack D'Angelo for opinions he is not giving or which have not yet been used at class certification or are more properly subjects for cross-examination. Given that Defendant clearly adapted its motion based upon Plaintiff's class certification motion,[22] we do not know why Defendant challenges opinions it solicited from D'Angelo which have not been used at class certification. Nevertheless, we'll address Defendant's challenges in turn.

### a. D'Angelo's testimony, opinions, and conclusions are not unduly speculative.

Defendant argues that D'Angelo should not be permitted to "opine" that the "two unauthorized charges" on Plaintiffs' debit card were "caused by Kahrs' filing of Ms. Sims' routing and account number."[23]  D'Angelo only gave this opinion in his deposition after having the opinion elicited by Defendant. Insofar as *Defendant* is the source of the opinion, it cannot properly seek its exclusion. Defendant's basis for excluding this opinion is the contention that "D'Angelo does not

---

[18] *See* Fed. R. Evid. 702.
[19] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (citing State ex rel. Gardner v. Wright, 562 S.W.3d 311, 317 (Mo. App. E.D. 2018).
[20] *Daubert*, 509 U.S. at 579.
[21] *Am. Eagle Waste Indus., LLC v. St. Louis Cnty., Missouri*, 463 S.W.3d 11 (Mo.App. E.D. 2015); *Murrell v. State*, 215 S.W.3d 96 (Mo. 2007).
[22] *Compare* Motion for Class Certification at 9-16 *with* Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 9-15.
[23] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4.

4

know how the two unauthorized charges occurred".[24] This argument should, however, be rejected.

First, this argument confuses fact and expert testimony—if D'Angelo knew *for certain*, then the issue would fall within the realm of fact testimony, not expert testimony.[25] D'Angelo's background and experience gives him a basis to opine that the unauthorized charges are connected with Kahrs' publication of Sims' bank account and routing information.[26] Anything more is grounds for cross-examination and rebuttal testimony, as this is an issue for the trier of fact, not the Court.

Second, Defendant's citation of D'Angelo's deposition testimony is misleading. Defendant cherry-picks a portion of D'Angelo's testimony where he discussed "what an account takeover is," in regard to the Advance Financial account.[27] D'Angelo was not, however, speaking to whether Sims' **personal bank account** had been subject to a takeover.[28] This is no mere trifle, for this case does not surround the **Advanced Financial account**, but Sims' **personal bank account**.

Third, we have not used this opinion at class certification,[29] making discussion of this opinion ultimately irrelevant at this stage of the case. Should we ever seek to use this opinion, D'Angelo (or another expert, should Plaintiff choose) may have additional evidentiary basis for the opinion. Resolution, then, of this opinion is better served for that stage of the case.

    **b. D'Angelo's testimony concerning Sims' negative emotional, physical, and social consequences.**

Defendant argues that D'Angelo's "references to Ms. Sims' complaints about sleep should be stricken because he lacks sufficient data."[30] The sole basis Defendant gives is that D'Angelo

---

[24] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4.
[25] *See* Fed. R. Evid. 701 ("testimony in the form of an ***opinion*** …") (emphasis added).
[26] Expert Report of Anthony D'Angelo (dated October 10, 2022).
[27] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 6.
[28] Deposition of Anthony D'Angelo at 72:15-73:4.
[29] *See generally* Motion for Class Certification.
[30] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 5.

5

did not read Sims' deposition but was instead given the underlying information by Sims' counsel.[31] This argument is misleading at best, as the Sims deposition transcript **was not available** by the time of D'Angelo's deposition. Specifically, Defendant deposed D'Angelo on February 7, 2023. Plaintiff did not receive the transcript from Sims' deposition until February 15, 2023.[32] Further, the consequences D'Angelo testified to are corroborated by Sims' deposition testimony, as Sims testified in her deposition that she experienced problems sleeping,[33] eating,[34] was worried,[35] and was agitated.[36]

       Defendant notes that D'Angelo was unaware of whether Sims sought medical treatment for these issues but does not explain why this renders his opinion unreliable.[37] Medical treatment would go to the severity of the condition, not the source or presence of the condition.[38]

       As to societal impact, Defendant notes that D'Angelo was unaware of what specific neighbors were contacted.[39] But Defendant gives no explanation for why D'Angelo needs to know the names of the neighbors at issue—the societal impact comes from the fact that Sims' "neighbors were aware that a process server was trying to find her."[40] The name of those neighbors is not necessary to understand that impact. Rather, this was yet another opinion Defendant solicited in

---

[31] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4.

[32] *Compare* Expert Report of Anthony D'Angelo (dated October 10, 2022) *and* Deposition of Anthony D'Angelo (taken Feb. 7, 2023); *with* **Exhibit 1** Sims Deposition (taken January 30, 2023). We did not receive the transcript from Ms. Sims' deposition until February 15, 2023. **Exhibit 2** (Errata/read and sign letter).

[33] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4; **Exhibit 1**, Sims Deposition at 72:23-73:3, 73:20-74:3.

[34] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4; **Exhibit 1**, Sims Deposition at 73:20-74:3.

[35] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4; **Exhibit 1**, Sims Deposition at 72:20-73:3.

[36] Defendant's Motion to Exclude Testimony of Anthony D'Angelo; **Exhibit 1**, Sims Deposition at 72:23-73:3, 73:20-74:3. While Sims did not use the word "agitated," her testimony clearly matches the definition of that word. *Compare id. with* https://www.merriam-webster.com/dictionary/agitated ("troubled in mind : disturbed and upset") (accessed March 7, 2023)

[37] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 4.

[38] *See, e.g.*, *Cruz v. MO. Dept. of Soc. Services*, 386 S.W.3d 899 (Mo.App. W.D. 2012).

[39] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 5.

[40] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 5.

6

D'Angelo's deposition.[41] Defendant should not be permitted to solicit an opinion from Plaintiff's expert in a deposition where such an opinion was not given in the report, and then complain to the Court about that opinion once given.[42]

Defendant challenges D'Angelo's testimony because he did not review any testimony or pleadings given in a different case with different parties, different claims, and different issues but gives virtually no explanation for why that matters.[43] The summary judgment motion Defendant references was denied by the arbitrator[44] and the dispute in the underlying arbitration is not a matter of Sims' identity being "compromised"[45]—as Defendant articulates it—but a malicious prosecution claim concerning, *inter alia*, the lender's choice to sue Sims instead of investigating her report(s) that the alleged debt was not hers.

Finally, we again do not use D'Angelo's testimony about Sims' *specific* emotional and societal conditions at class certification.[46] Thus, exclusion of this opinion, only given by D'Angelo because it was solicited by Defendant, is unnecessary at this stage of the case.

c. **Class members' monetary damages.**

Defendant next challenges D'Angelo's opinions for failing to survey the putative class members.[47] This reflects a misunderstanding of the purpose of D'Angelo's testimony and the conclusions he has given **at the class certification stage of this case**.

D'Angelo's testimony is ultimately that the class members' damages include credit

---

[41] *See generally* Expert Report of Anthony D'Angelo. D'Angelo was engaged to render opinions concerning the "emotional, physical and social impact of identity theft," Expert Report of Anthony D'Angelo at ¶1, but only in the abstract. Expert Report of Anthony D'Angelo at ¶¶ 21, 22, 26, 52, 67-72. D'Angelo's report does not include, or render, any opinions on whether Sims *personally* experienced any emotional, physical, or social impact. *See generally* Expert Report of Anthony D'Angelo.
[42] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 5.
[43] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 3 and 5.
[44] **Exhibit 3** (Daugherty Email Order denying Motion for Summary Judgment).
[45] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 6.
[46] *See generally* Motion for Class Certification.
[47] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 6-7.

monitoring and protection services, which he shows can be calculated commonly to the class members.[48]  His discussion of the effects that can befall the class members from the disclosure of their PII is a part of his methodology, explaining why the credit monitoring and protection services (i.e., the damages) are necessary.[49] As a result, whether specific class members have *in fact* experienced one or more of the types of harm D'Angelo outlines is not relevant—they all have been damaged and need credit monitoring and protection services, making this case analogous to medical monitoring cases.[50]

Defendant also challenges this testimony and conclusion by way of a lengthy discussion of standing.[51] That, however, is a dispositive motion issue—which the parties have already extensively briefed[52]—not an expert witness motion issue. Defendant cites no authority—and we are aware of none—that a dispositive motion argument can form the basis for excluding an expert's testimony on the grounds Defendant invokes—an alleged lack of "reliable principles and methods."[53]

As we previously noted, Defendant entirely ignores the identity theft-related damages Plaintiff seeks to recover. Specifically, relevant to the issue challenged in Defendant's instant motion, Plaintiff has only ever sought to recover—by way of identity theft-related damages—the cost of identity theft monitoring, specifically analogizing this case to medical monitoring cases. The fact that Defendant's arguments must rely upon the report of its ***rebuttal*** expert shows that these issues are for cross-examination, to be decided by the trier of fact, not by the Court.[54]

---

[48] Expert Report of Anthony D'Angelo at ¶ 96.
[49] *See generally* Expert Report of Anthony D'Angelo.
[50] *See, e.g.*, *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 717-18 (Mo. banc 2007) (medical monitoring cases do not require proof of present injury).
[51] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 7-9.
[52] Defendant's Motion to Dismiss, Plaintiff's Response, and Defendant's Reply.
[53] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 7.
[54] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 10 (citing Rebuttal Expert Report of Shawn Tuma at ¶ 22).

### d. Definitions of "PII" and "sensitive PII."

Defendant challenges D'Angelo for not "cit[ing] a single statute, regulation, or rule" and by not providing a "definition for 'PII' or 'sensitive PII'" in his report.[55] Again, Defendant leaves the reader wanting with regard to why this is a basis for exclusion.

D'Angelo defined the term "PII" in his deposition, and the portions of that definition which he uses to develop his opinions and conclusions with regard to the circumstances of this case match Defendants' own definition and the relevant definition in Missouri Supreme Court Operating Rule 2.05(c):

> Q.      Okay. How do you define PII?
> A.      The 30,000-foot definition would be information either by itself or in combination with other information that can be used to identify, locate or contact an individual.[56]
>
> --------------
>
> Q.      And can you give me some examples of the types of information that fall within the definition of "personally identifiable information"?
> A.      Sure. Name, address, telephone number, Social Security account number, driver's license, bank account numbers and information, credit card, debit card, VIN, state ID, biometrics. I believe its even been expanded to GPS coordinates and so on.[57]

Defendant agrees:

> Q.      Can you tell me what Kahrs Law Office's understanding of personally identifiable information is?
> A.      Under Kansas law Rule 24 it has to do with personally - - personally identifiable information. So it could be Social Security number, it could be date of birth, it could be personal address, it could be banking information, financial information.
> Q.      And that would include bank account routing numbers?
> A.      Correct.
> Q.      And what about in Missouri?

---

[55] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 15-16.
[56] Deposition of Anthony D'Angelo at 50:4-8.
[57] Deposition of Anthony D'Angelo at 107:1-9.

A.      I believe that's pretty similar in Missouri too.[58]

Missouri Supreme Court Operating Rule 2.05(c) defines "personal information" to include "financial institution account numbers."

Defendant's retained expert, Shawn Tuma, is the outlier, attempting to use an entirely different definition rooted in statutes which no one else in this case is referencing or invoking[59] in an effort to exclude unique financial account information from the realm of PII. If anything, this is a basis to exclude Tuma, not D'Angelo.

Pivoting, Defendant argues that D'Angelo's definition is broader than the definitions of the Supreme Court Rules.[60] But Defendant does not articulate what aspects of D'Angelo's definition are broader than the applicable rules, or why that ultimately matters. The portions upon which D'Angelo relies for his opinions in this case are included in the relevant Supreme Court Rules and in Defendants' own definition. That's enough.

### e.   Paragraph 23 of D'Angelo's Report.

Defendants then attack D'Angelo's opinion that Defendant "intentionally mislead and deceived the courts" when it publicly filed this information without redaction.[61] The thrust of D'Angelo's conclusion here is not what the "rule of law" requires. Importantly, that the applicable Missouri rules mandated Defendant redact this information is undisputed—Defendant's corporate designees have already admitted this "rule of law."

This leaves the intentionality aspect, which is the point of D'Angelo's conclusion here. Missouri courts have explicitly held that experts are permitted to draw conclusions and let the jury

---

[58] Deposition of Mark Kahrs at 11:10-24.
[59] Rebuttal Export Report of Shawn Tuma at ¶¶ 19-22.
[60] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 16-17.
[61] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 16-17; Expert Report of Anthony D'Angelo at ¶ 23.

decide the weight of such conclusions—D'Angelo simply cannot claim to definitively know Defendant's intent.[62] And he doesn't. As D'Angelo explained in his deposition:

> Q.    Okay. You go on to say in paragraph 23 that in many instances, Kahrs intentionally misled and deceived the courts. And my question to you is would you agree with me that in order for that to be true, that the Kahrs Law Firm[sic] would have to know that they were providing unredacted information in their court filings and did so knowing that they had violated the law? Isn't that what you're saying?
> A.    I'm not forming -- I wasn't retained to provide a legal conclusion. But ***my impression is*** that by checking that box, you certify that you've reviewed the document and that you've complied with the redaction requirements.[63]

> ---------

> Q.    ***You don't have any information*** that you know or facts ***where you can say, well, I know Mark Kahrs filed this because*** -- and knew that he was filing this information improperly because he said this or there's documentation that says this, you don't have anything where he intentionally tried to deceive the court, any facts to support that, do you?
> A.    Well, ***I think they misled*** the court by saying they reviewed the documents and completed the redaction requirements, because if they had actually reviewed the documents, they would have seen that there was PII being exposed.[64]

D'Angelo's testimony makes plain that he is only drawing conclusions about Defendant's intent— something courts in Missouri have expressly held to be permissible—while disclaiming having *actual knowledge* of Defendant's intent.[65]

The only basis Defendant gives for striking paragraph 23 of D'Angelo's report is that it is a legal conclusion.[66] But the purported legal conclusion is something not in dispute in this case, as Defendant has already admitted that Missouri has rules requiring this information to be redacted from publicly filed documents.[67] A reference and reliance upon legal conclusions is not a basis to

---

[62] *Whitnell v. State*, 129 S.W.3d 409 (Mo.App. E.D. 2004); *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. 1967); *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214 (Mo.App. E.D. 2017).
[63] Deposition of Anthony D'Angelo at 65:9-21 (emphasis added).
[64] Deposition of Anthony D'Angelo at 67:9-21 (emphasis added).
[65] *Whitnell v. State*, 129 S.W.3d 409 (Mo.App. E.D. 2004).
[66] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 16-17.
[67] Deposition of Mark Kahrs at 12:1-19, 13:2-14:17, 15:24-3, Deposition Exhibit 49, Deposition Exhibit 52; *see also* 509.520 R.S.Mo.; Missouri Supreme Court Operating Rule 2.02; Missouri Supreme Court Operating Rule 2.05(c).

exclude an expert's testimony especially when that underlying legal conclusion is agreed to by all parties.[68]

In any event, this is yet another instance of Defendant seeking to exclude an opinion which we have not yet used at class certification. As such, determination of the admissibility of this opinion is improper here.

### f.  Paragraph 20 of D'Angelo's Report.

In Paragraph 20 of his report, D'Angelo ultimately opines that Defendant's conduct was unnecessary and unreasonable. However, he also described the conduct as "unlawful." While Plaintiff did not use this paragraph of D'Angelo's report in her motion for class certification, Defendant tries to leverage this one word as a basis to strike the entirety of paragraph 20, claiming that this constitutes "a conclusion of law."[69] But the legality of Defendant's conduct is not in dispute. Defendant has admitted that it filed the PII without redactions, and that doing so was in violation of the relevant Supreme Court Rules.[70] This makes the word "unlawful" accurate, bolstering the reliability of D'Angelo's conclusions.

### g.  Paragraph 100 of D'Angelo's Report.

In paragraph 100 of his report, D'Angelo ultimately opines that Missouri consumers/debtors were entitled to $1,000 in statutory damages. While Plaintiff did not use this paragraph of D'Angelo's report in her motion for class certification, Defendant attempts to strike the entirety of paragraph 100 on the basis that this constitutes "a conclusion of law."[71] However, an expert may assume that a legal theory is correct and calculate damages based on that

---

[68] *See State Bd. of Registration for Healing Arts v. McDonagh*, 123 S.W.3d 146 (Mo. 2003).
[69] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 17.
[70] Deposition of Mark Kahrs at 12:1-19, 13:2-14:17, 15:24-3, Deposition Exhibit 49, Deposition Exhibit 52; *see also* 509.520 R.S.Mo.; Missouri Supreme Court Operating Rule 2.02; Missouri Supreme Court Operating Rule 2.05(c).
[71] Defendant's Motion to Exclude Testimony of Anthony D'Angelo at 17.

assumption.[72] This is what D'Angelo does here.

### V.    Conclusion

For the foregoing reasons, Defendant's Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo should be denied in its entirety.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell            MO#66841
Jenilee V. Zentrich      MO#72781
T. Grant Honnold         MO#75844
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
***Attorneys for Plaintiff***

### <u>Certificate of Service</u>

The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court's e-Filing system on February 16, 2024, and thereby served upon all attorneys of record.

*/s/ Jenilee V. Zentrich*

---

[72] *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.,* 441 F. Supp. 3d 745 (S.D. Iowa 2019).

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **PATRICIA A. SIMS, on behalf of herself** | ) | |
| **and others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2316-CV 13284** |
| | ) | |
| **KAHRS LAW OFFICES, P.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OF WITHDRAWAL**</u>

Pursuant to Local Rule 21.4.1, T. Grant Honnold hereby withdraws as counsel for Plaintiff

Patricia Sims. Plaintiff Patricia Sims continues to be represented by Bryce B. Bell and Jenilee V.

Zentrich of Bell Law, LLC and all other attorneys of record.

Respectfully submitted,

*/s/ T. Grant Honnold*
MO #75844
2600 Grand Blvd., Ste. 580
Kansas City, MO 64108
816-886-8206
TGH@BellLawKC.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document
was filed with the Court's e-Filing system on March 8, 2024, and thereby served upon all attorneys
of record.

*/s/T. Grant Honnold* _____

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **PATRICIA A. SIMS, on behalf of herself** | ) | |
| **and others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2316-CV 13284** |
| | ) | |
| **KAHRS LAW OFFICES, P.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**JOINT MOTION FOR EXTENSION OF TIME TO MEDIATE**

COME NOW, the Parties, by and through their respective counsel of record, and respectfully move this Court for an Order extending the deadline to mediate by 120 days, up to and including August 28, 2024. In support of this Motion, the Parties state the following:

1.      On October 4, 2023, the Court entered the Civil Case Management Scheduling Order.

2.      Both Parties have made reasonable and good faith efforts to comply with the current October 4, 2023 Scheduling Order. As outlined below, good cause exists to extend the deadline for Mediation.

3.      The Parties have previously mediated the case with William Sanders, Jr., while it was pending in the United States Court for the District of Kansas on February 6, 2024.

4.      Additionally, there are a number of pending motions, including the Motion for Leave to Amend Petition and Motion for Class Certification, that may affect mediation and/or the possibility of settlement.

1

5.    As such, the Parties ask that the present Scheduling Order be amended to extend the date for the Mediation deadline to August 28, 2024, to afford the Court time to rule on the aforementioned pending motions.

6.    This is the first request for an extension of time in this case.

7.    The Parties both consent to this extension and no party will be prejudiced by the extension.

Respectfully submitted,

/s/ Jenilee V. Zentrich
Bryce B. Bell      MO#66841
Jenilee V. Zentrich    MO#72781
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
**Attorneys for Plaintiff**


/s/ Brittain E. McClurg
Daniel F. Church      #34936
Brittain E. McClurg    #72016
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
(816) 382-1382
Facsimile: (816) 382-1383
dchurch@mwcattorneys.com
bmcclurg@mwcattorneys.com
**Attorneys for Defendant**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court's e-Filing system on April 22, 2024, and thereby served upon all attorneys of record.


/s/ Jenilee V. Zentrich

FILED
DIVISION 2
04-May-2024 08:15
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| PATRICIA A SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2316-CV13284 |
| | ) | Division 2 |
| KAHRS LAW OFFICES, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

COMES NOW the Court on Plaintiff's Motion for Leave to File an Amended Pleading, filed herein on December 15, 2023; Plaintiff's Motion for Extension of Time to File a Motion for Class Certification, filed herein on January 3, 2024; Plaintiff's Motion for Extension of Time to File Response to Defendant's Motion to Exclude Witness, filed herein on January 29, 2024; Defendant's Motion to Exclude Witness, filed herein on January 22, 2024; Plaintiff's Motion for Class Certification, filed herein on January 10, 2024; and the Joint Motion for Extension of Time to Mediate, filed herein on April 22, 2024. After reviewing the Motions, considering the Responses and Replies, and being fully advised in the laws and premises of the Motions, the Court finds the following:

**I.     Plaintiff's Motion for Leave to File an Amended Pleading**

Plaintiff moves this Court for leave to file an amended pleading. Along with the Motion, Plaintiff filed a proposed Amended Petition which includes additional claims for violations of the Fair Debt Collection Practices Act, breach of implied contract, and violations of the Missouri Merchandising Practices Act. Plaintiff also reasserts claims for injunctive relief

1

and violations of the Missouri Right to Financial Privacy Act, which were previously dismissed in an Order from this Court entered on September 17, 2023.

A trial court has broad discretion in allowing amendments to pleadings. *In re Estate of Goldschmidt*, 215 S.W.3d 215, 223 (Mo. App. E.D. 2006). "We will not disturb a trial court's denial of a motion to amend a pleading unless the decision is clearly erroneous." *Id.* "A trial court does not err when it denies a motion to amend a pleading to assert a claim that possesses no merit" *Curnutt v. Scott Melvin Transport*, Inc., 903 S.W.2d 184, 194 (Mo. App. W.D. 1995). However, it is considered an abuse of discretion to refuse to grant leave to amend a pleading when justice so requires. *Sloan-Odum v. Wilkerson*, 176 S.W.3d 723, 725 (Mo. App. E.D. 2005).

Rule 55.33(a) requires that motions such as this be freely granted when justice requires. Missouri sets forth five factors to consider in determining whether to allow pleadings to be amended: (1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in previous pleadings; (3) timeliness of the application; (4) whether an amendment would cure any defects in the previous pleadings; and (5) injustice to the party(ies) opposing the motion. *Moore v. First Star Bank*, 96 S.W.3d 898, 904 (Mo. App. S.D. 2003). These factors must be analyzed against the backdrop that Missouri's rules "stress granting amendments to pleadings liberally." *Id.* at 903. The Court will analyze each factor,

1. <u>Hardship to Plaintiff</u>

Plaintiff states she would be prejudiced if this motion is not granted because they

would be denied the ability to plead important allegations derived from review of discovery and consideration thereof as well as the opportunity to assert different legal theories.

2. Reason for not previously including

Plaintiff contends she did not previously include the legal theories she now seeks to advance in her proposed amended pleadings because she was continuing to research the validity of her legal theories and claims in light of the information obtained and learned throughout discovery which were further evaluated and refined after this Court dismissed Counts I and III from her Petition.

3. Timeliness

Plaintiff filed a for Extension of Time to File a Motion to Amend Pleadings on December 1, 2023. The Court granted this Motion giving Plaintiff up to and including December 15, 2023 to file their Motion. The present Motion was filed on December 15, 2023 making this Motion timely.

4. Defects in prior pleading

There are no defects in the prior pleading aside from the claims which were already dismissed by the Court and Plaintiff is not seeking to read these claims.

5. Injustice to Defendant

Plaintiff argues that Defendant will not  be prejudiced because the additional claims are based on the same facts and circumstances as the existing claim nor will the addition of factual allegations based on discovery in this matter deprive Defendant of any defenses as Discovery is ongoing and does not close until July 15, 2024.

3

Defendant opposes Plaintiff's Motion for Leave because they argue that Plaintiff already knew or should have known all claims at the time the original petition was filed because of the procedural history of the case. In support of this position, Defendant points to Plaintiff's initial filling of this action in the United States Court for the District of Kansas on March 23, 2022 which was dismissed for lack of jurisdiction. During the pendency of that action in federal court, the parties engaged in extensive discovery including interrogatories, requests for production, and depositions of the parties. Further, Plaintiff acknowledges in her Petition that: "Class discovery is complete; class certification has previously been fully briefed and ready to be filed" Petition ¶ 3. Plaintiff's Motion also sates "The core of Plaintiff's claims remains unchanged. Rather, Plaintiff seeks to assert additional legal theories." Plaintiff's Motion for Leave to Amend ¶ 3. Plaintiff also concedes that these new theories "arise out of the same set of facts as the current claims, i.e. based on Defendant's unredacted filing of Plaintiff and the putative class members' personal bank account number and routing number." Plaintiff's Motion for Leave to Amend ¶ 2. Defendant argues that all facts that Plaintiff's new claims are based on were already known to Plaintiff when they filed their initial Petition and that a failure to fully research legal theories at that time is not a justifiable reason to grant Plaintiff leave to amend their petition. Defendant argues that allowing Plaintiff to amend its pleading will be prejudicial to Defendant because it will need to depose Plaintiff a second time and that Plaintiff will likely seek to depose Defendant again as well.

However, the "rule governing an amended complaint is to be liberally applied, and is based on the concept of whether a defendant has been given notice to defend claims

relating to a particular transaction or occurrence." *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 116 (Mo. App. W.D. 2006). Plaintiff has not plead any new facts to which Defendant will need to formulate a defense. Rather, Plaintiff wishes to plead new legal theories which were devised in consideration of rulings from both the federal Court and this Court. Moreover, discovery does not close in this case until July 15, 2024, almost two and a half months away. Under Missouri law, prejudice is measured by whether the party opposing the motion to amend is deprived of a legitimate claim or defense because they were caught by surprise after the party's strategy had been developed. *Clark v. Kinsey,* 488 S.W.3d 750, 763 (Mo. App. E.D. 2016). Conducting another deposition, while inconvenient, is not prejudicial to Defendant and granting this Motion for Leave gives Defendant sufficient notice. In weighing the *Moore* factors, liberally and as justice so requires, this Court finds that the factors weigh towards Plaintiff. For these reasons,

**IT IS THEREFORE ORDERD** that Plaintiff's Motion for Leave to File an Amended Pleading is **GRANTED.**

## II. Plaintiff's Motion for Extension of Time to File Motion for Class Certification

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to File Motion for Class Certification is **GRANTED.**

## III. Plaintiff's Motion for Extension of Time to File response to Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo

5

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time is to File response to Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo is **GRANTED.**

### IV.    Defendant's Motion to Exclude Expert the Expert Witness Testimony and Report of  Anthony D'Angelo

Defendant seeks to exclude the expert testimony and report of Anthony D'Angelo. This motion was filed contemporaneously with their suggestions in opposition to Plaintiff's Motion for Class Certification. Portions of Plaintiff's Motion for Class Certification rely on the report of her expert, Anthony D'Angelo. As such, the Court first takes up Defendant's Motion to Exclude the Expert Testimony and Report of Anthony D'Angelo before it turns its attention to the Motion for Class Certification.

Defendant moves this Court to Exclude the Expert Testimony and Report of Anthony D'Angelo pursuant to Section 490.065. Section 490.065.2 governs the admissibility of expert testimony, and it provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Section 490.065.2 requires trial courts to act as gatekeepers to ensure the testimony sought to be admitted is not only relevant but reliable. *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (*citing State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 317 (Mo. App. E.D. 2018). "This Court since has held that because the language of Section

6

490.065 now mirrors [Federal Rule of Evidence] 702 and 703, and because FRE 702 and

703 are interpreted under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)

and its progeny, the cases interpreting those federal rules remain relevant and useful in

guiding our interpretation of Section 490.065." *Id*. (*quoting State v. Suttles*, 581 S.W.3d

137, 147 (Mo. App. E.D. 2019).

      The gatekeeping function of trial courts under FRE 702 involves a three-part test:

"(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether

the testimony is reliable." *Id.* (*citing Suttles*, 581 S.W.3d at 147*; Jones v. City of Kan. City*,

569 S.W.3d 42, 54 (Mo. App. W.D. 2019) (overruled on other grounds)). Generally, the

District Court should focus on the expert's methodology rather than the conclusions they

generate. *Id.* at 579. Reliability of experts' opinions "go to the weight of those opinions

and not… their admissibility." *Am. Eagle Waste Indust., LLC v. St. Louis Cnty., Missouri*,

463 S.W.3d 11 (Mo. App. E.D. 2015); *Murrell v. State*, 215 S.W.3d 96 (Mo. 2007).

      Defendant claims that Mr. D'Angelo's testimony and report should be excluded

because his report and testimony are not based on sufficient facts or data; are not the

products of reliable principles and methods; and Mr. D'Angelo has not reliably applied the

principles and methods to the facts of the case.

      At this class certification stage, Plaintiff has relied on the expert testimony and

report of Anthony D'Angelo in regards to the classes' damages and Defendant's mental

culpability. Defendant's Motion is made in regard to the following:

a. <u>Not based on sufficient facts or data</u>

7

1. Because Mr. D'Angelo does not know how the two unauthorized charges occurred, he cannot opine that they were caused by Kahrs' filing of Ms. Sims' routing and account number;

2. Mr. D'Angelo's references to Ms. Sims' complaints about sleep issues should be stricken because he did not did not obtain that information from reading her deposition or any other conversation with her and so he lacks sufficient data;

3. Mr. D'Angelo's opinions on the social stigma Ms. Sims' experienced due to her neighbors being aware that a process server was trying to find her should be stricken because he could not name the specific neighbors or what was said to them and so lacks sufficient data;

4. Mr. D'Angelo's comments about what an account takeover is should be stricken because he did not review any testimony or pleadings from the related arbitration case, *In the Matter of the Arbitration Between: Patricia Sims v. Lakshmi Financial;* and

5. Mr. D'Angelo did not do a survey of the putative class members and so he does not have information related to their damages and so his report and testimony cannot be used for purposes of certifying the class.

b. <u>Not the product of reliable principles and methods</u>

Defendant argues that Plaintiff has no standing because the damages are too hypothetical or a future injury. However, the motion to exclude expert witness is not the proper medium for a dispositive issue like standing. Defendant further argues that defendant cannot opine on Plaintiff or the putative classes damages because they are too

8

remote and his conclusions are not the product of reliable principles in methods in regards to the potential for identity theft in the areas of:

1. Account takeover fraud;

2. Tax return fraud;

3. Social Security fraud;

4. Negative Credit Reporting;

5. False arrest;

6. Medical Identity Fraud;

   c. <u>Not reliably applied the principles and methods to the facts of the case</u>

Defendant further argues that Mr. D'Angelo does not provide a definition for "PII" or "sensitive PII" and that his understanding of PII is broader than that which is defined by Missouri Supreme Court Operating Rule 2.05(c), and that as such his analysis does not apply the principles and methods to the facts of the case.

Additionally, Defendant argues that the Paragraph 20 and 23 which discuss D'Angelo's opinions that Kahrs was required by statute and court rules to comply with redaction mandates and that misrepresenting compliance to the court was unlawful should be stricken because they are legal conclusions. Finally, they assert that paragraph 100 should also be stricken because Mr. D'Angelo's opinion that Missouri consumer/debtors are entitled to statutory damages is also a legal conclusion.

After review, the Court finds that Defendant's motion fails because Defendant's arguments are either irrelevant, because they attack D'Angelo for opinions he is not giving but were elicited by Defendant in his deposition, or which have not yet been used at class

9

certification or are more properly subjects for cross examination. For these reasons and others not specifically stated herein,

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Motion to Exclude Expert the Expert Witness Testimony and Report of Anthony D'Angelo is **DENIED.**

## V.    Plaintiff's Motion for Class Certification

Sims seeks classification of the following Class:

> All persons against whom Kahrs Law Offices, P.A. filed a lawsuit in Missouri in which Kahrs Law Offices, P.A. filed court documents which included the person's Personally Identifying Information, including but not limited to the complete and unredacted bank account number(s) and/or routing number(s), on or after March 24, 2019 through the date the Class is certified.

Sims also seeks certification of the following Sub-Class:

> All Class members against whom Kahrs Law Offices, P.A. filed a lawsuit on or after March 24, 2021 through the date the Class is certified or who were never served with summons.

"Class actions serve an important function in our system of civil justice," enabling vindication of "the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost*." Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 and n. 11 (1981). Classes also promote judicial economy, by enabling plaintiffs—like here—to pool claims that would be uneconomical to litigate individually. *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2004); *Beatty v. Metropolitan St. Louis Sewer Dist.*, 914

S.W.2d 791, 794 (Mo. banc 1995) (overruled on other grounds); *Phillips Petrol. v. Shutts*, 472 U.S. 797, 808-09 (1985).

"Whether to certify a class is committed to the broad discretion of the trial court. In exercising this discretion, the Court should err on the side of class certification because it has the authority to later redefine or even decertify the class if necessary." *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 503 (D. Kan. 2014); *see also Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 166 (Mo. App. E.D. 2019). In Missouri, this manifests as a presumption in favor of certifying a class because classes may later be modified and/or decertified. *Doyle v. Fluor Corp.*, 199 S.W.3d 784, 787-88 (Mo. App. E.D. 2006); *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 164 (Mo. App. W.D. 2006); see also Mo. Sup. Ct. R. 52.08(c)(1).

Missouri Supreme Court Rule ("Rule") 52.08 governs class actions and imposes four prerequisites for certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Sims seeks to certify a Rule 52.08(b)(3) class, which requires two additional showings: that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Because Rule 52.08 and Federal Rule of Civil Procedure 23 are nearly identical, "it is well settled that federal interpretations of Rule 23 are relevant in interpreting Rule 52.08*." DaimlerChrysler*, 204 S.W.3d at 161.

Sims bears the burden of proof for these elements. *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 617 (D. Kan. 2014). In evaluating this showing, the Court

should not "blindly rely" on any conclusory allegations, but the Court "must accept the substantive allegations of the complaint as true." *Nieberding*, 302 F.R.D. at 617*; see also Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409, 413-14 (Mo. App. W.D. 2015) ("the named plaintiffs' allegations are accepted as true"); *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) (observing that a district court must "accept the substantive allegations of the complaint as true"). Sims' burden of proof is that of a *prima facie* showing of the elements for class certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Sims can meet her burden of proof by relying on his allegations, which are "taken as true to the extent they are uncontroverted by the defendant's [evidence]," or "demonstrate[ed] via affidavit or other written materials." *Am. Land Program, Inc. v. Bonaventura*, 710 F.2d 1449, 1454 (10th Cir. 1983); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by [defendants]." *Am. Land*, 710 F.2d at 1454, n.2.

      i.    <u>Ascertainability</u>

In addition to the express provisions of Rule 52.08, there is an implicit requirement for class certification that the class "cannot be amorphous, vague, or indeterminate." *Dale*, 204 S.W.3d at 178. "[A] sufficiently definite class exists to justify class certification[ ] if its members can be ascertained by reference to objective criteria." *Elsea*, 463 S.W.3d at 425. A "class need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action." *Craft*, 190 S.W.3d at 387-88

Ascertainability tests the definition of the class itself and is ultimately a question of whether class members can be identified by reference to objective criteria. *McKeage v. TMBC, LLC*, 847 F.3d 992, 998-99 (8th Cir. 2017); *see also DaimlerChrysler*, 204 S.W.3d at 178; *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. banc 2008). The goal of the ascertainability requirement is to ensure that the members of a proposed class "can be identified at the commencement of the action." *DaimlerChrysler*, 204 S.W.3d at 178 (*citing Craft v. Philip Morris Cos., Inc.*, 190 S.W.3d 368, 387 (Mo. App. E.D. 2005)). Generally, a class is ascertainable if the class would still exist (i.e., be bound by a judgment) even if the defendant were to win at trial. *Id.* at 179-80; *see also Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985). Ascertainability therefore requires that a class not be defined by subjective criteria or by criteria that require an analysis of the merits of the case. *DaimlerChrysler*, 204 S.W.3d at 178 (*citing Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000)).

These class definitions easily meet the requirements of actionability. Notably, the identity of the class members is already known to the parties, which were derived from a review of Defendant's case files using the same objective criteria which does not turn on the ultimate result of the case. Defendant does not disagree.

ii.    Rule 52.08 (a) Prerequisites

a.    Numerosity

Numerosity is satisfied when joinder of all class members is "impracticable," meaning that "it would be inefficient, costly, time-consuming, and probably confusing." *Dale*, 204 S.W.3d at 167. "Rule 52.08(a) does not require that joinder of all members of a

13

class be impossible, only that it be impracticable." *Elsea*, 463 S.W.3d at 418 (quoting *Dale*, 204 S.W.3d at 167). "A plaintiff does not have to specify an exact number of class members to satisfy the numerosity prerequisite for class certification, but must show only that joinder is impracticable through some evidence or *reasonable, good faith estimate* of the number of purported class members." *Id*. (quoting *Dale*, 204 S.W.3d at 167). In determining whether numerosity is met, "the trial court can accept common sense assumptions." *Id*. In *Dale*, the court noted that classes of 100 or fewer have been granted class certification. 204 S.W.3d at 168.

Plaintiff asserts that the size of the proposed class has approximately 952 members with about half of the class members also being members of the sub-class, making the size of each class and sub-class at least several hundred people. Due to the large number of class members and the fact class members have limited means to pursue individual lawsuits, the class members will suffer serious impediment to litigation and great inconvenience if joinder is required. Joinder is, therefore, impracticable and the class is sufficiently numerous. Defendant does not disagree.

      b.  <u>Common questions of law and fact</u>

The commonality prerequisite requires that "the same evidence will suffice for each member to make a *prima facie* showing as to a given question" of law or fact. *Dale*, 204 S.W.3d at 176. "The common question may be one of fact *or* law and need not be one of each." *Elsea*, 463 S.W.3d at 418; *see also Meyer ex rel. Coplin v. Flour Corp.*, 220 S.W.3d 712, 716 (Mo. banc 2007) ("A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual

14

questions."). The common question must be of such a nature that it is capable of class-wide resolution such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim." *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*, 524 S.W.3d 116, 129-30 (Mo. App. W.D. 2017) (*citing Dukes*, 564 U.S. at 350).

Defendant argues that Plaintiff has not met this requirement because members of the putative class do not have the same interest or the same injury due to the fact that Plaintiff's bank account is still open and a substantial portion of the putative class's bank accounts were closed at the time their respective suits were filed. As such, a class member with a closed account is not subject to the same risk of harm. However, this question goes to the extent of damages. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*, 524 S.W.3d 116, 129-30 (Mo. App. W.D. 2017) (citing Dukes, 564 U.S. at 350) (emphasis in original). Here, Plaintiff has provided a multitude of common questions whose common answers would materially advance the resolution of the present case. Among which are:

1. Did Defendant owe the class members a duty of care to act reasonably under the circumstances?
2. Did Defendant breach its duty of care by publicly filing, without redaction, the class members' bank account and routing numbers?
3. Did Defendant's public filing of the class members' bank account and routing numbers damage the class members and, if so, in what amount?
4. What are the class members' damages?
5. Should punitive damages be assessed against Defendant and, if so, in what amount?

15

Therefore, the commonality requirement is met.

      c.   <u>Typicality</u>

Typicality is satisfied, even if there are variances in the underlying facts, if: "(1) the representative's and the class members' claims arise from the same event or course of conduct (2) the conduct and facts give rise to the same legal theory, and (3) the underlying facts are not 'markedly different.'" *Plubell v. Merck & Co.,* 289S.W.3d 707,715 (Mo. App. W.D. 2009). More simply, typicality "means that class members share the same interest and suffer the same injury." *Hale*, 231 S.W.3d at 223. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Id*.

Defendant argues that because Plaintiff was a victim of account takeover before defendant filed her account information in the Underlying Suit, her circumstances are not typical of the putative class. Additionally, they state that Plaintiff cannot demonstrate typicality or commonality because Plaintiff has not undertaken efforts to survey the putative class to determine if Plaintiff's claims are common or typical of the putative class. However, typicality does not require that all claims be identical. While this difference exists, it does not make Plainitff's claims atypical of the putative class members. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *DaimlerChrysler*, 204 S.W.3d at 169. Therefore, Plaintiff's

claims, like the putative class members' claims, arise from the same event: Defendant's public filing of personal bank account information and this requirement is met.

d. <u>Adequacy of Representation</u>

For class certification, the named plaintiff and her counsel must fairly and adequately protect the interests of the absent class members. *Elsea*, 463 S.W.3d at 420-21. "In determining whether the adequacy prerequisite is satisfied as to a class representative, the circuit court must consider whether the named representative has, or may develop during the course of litigation, any conflicts of interest that will adversely affect the interests of the class." *Id. at* 421 (quoting *Vandyne v. Allied Mortgage Capital Corp*., 242 S.W.3d 698 (Mo. banc 2008)). In other words, the interests of the class representative and that of the absent class members must be compatible. *Id*.

Plaintiff has asserted that neither herself nor her counsel have any conflicts with the interests of the proposed class and they will prosecute the action vigorously on behalf of the class. Defendant does not object. Nothing in the record indicates that Sims has any conflict of interest with any putative class member. Bryce B. Bell and Jenilee V. Zentrich are adequate class counsel, having extensive experience in consumer protection cases and class actions. Bryce Bell has previously been appointed as class counsel in other consumer protection classes in the District of Kansas and both have been appointed by other Courts in this region, including this one. Plaintiff's counsel have extensive experience litigating consumer protection act claims. Therefore, the prerequisite for class certification of adequacy of representation is satisfied.

iii. <u>Rule 52.08(b) Requirements</u>

17

In addition to satisfying the four prerequisites of Rule 52.08(a), certification of a class action requires that one of the elements of Rule 52.08(b) is also satisfied. Plaintiff seeks certification under Rule 52.08(b)(3), which authorizes a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mo. R. Civ. P. 52.08(b)(3). These requirements, commonly known as predominance and superiority, are both satisfied in this case.

    a. Predominance

Under Missouri law, "[t]he predominance inquiry for class certification asks whether the class is seeking to remedy a common legal grievance." *Plubell*, 289 S.W.3d at 712. The requirement "does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *Elsea*, 463 S.W.3d at 422 (quoting *McKeage*, 357 S.W.3d at 600). The predominant issue(s) "need not be dispositive of the controversy or even be determinative of the liability issues involved," and the predominance standard in Missouri may be satisfied by just one issue: "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Dale*, 204 S.W.3d at 175.

There's no dispute that Defendant publicly filed the unredacted bank account and routing information for each class member. Therefore, there will be common legal

18

grievances as to breach of duty, injury, and damages related to the disclosure of the class members' PII. Defendant does not disagree. The predominance requirement is met.

      b. <u>Superiority of Class Action</u>

The superiority inquiry "requires the trial court to balance, in terms of fairness and efficiency, the merits of a class action in resolving the controversy against those of alternative methods of adjudication." *Dale*, 204 S.W.3d at 182. "The primary focus of the superiority analysis is the efficiency of the class action over other available methods of adjudication." *Id*. Rule 52.08(b)(3) provides a non-exhaustive list of factors to be considered in determining whether a class action is the superior vehicle for a case: (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Rule 52.08(b)(3); *DaimlerChrysler*, 204 S.W.3d at 181. Missouri courts analyze these elements and balance them "in terms of fairness and efficiency" against those of "alternative available methods" of adjudication. *DaimlerChrysler*, 204 S.W.3d at 181.

Joinder or intervention would be unmanageable here. As explained, there are well over nine hundred class members. Such problems with coordinating the logistics of joining so many people are one of the reasons Rule 52.08 exists in the first place. Denial of class certification due to manageability concerns is disfavored. *Elsea*, 463 S.W.3d at 423. Defendant does not object to this requirement. Therefore, the Court finds that the

19

superiority requirement is met and so the requirements of Rule 52.08(b)(3) is satisfied. For these reasons,

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Class Certification is hereby **GRANTED**. Finding all the explicit and implicit requirements of Rule 52.08 satisfied, the Court certifies the class and sub-class and appoints Patricia Sims as class representative, and appoints Bryce B. Bell and Jenilee V. Zentrich and Bell Law, LLC as class counsel. The certified class is defined as

> All persons against whom Kahrs Law Offices, P.A. filed a lawsuit in Missouri in which Kahrs Law Offices, P.A. filed court documents which included the person's Personally Identifying Information, including but not limited to the complete and unredacted bank account number(s) and/or routing number(s), on or after March 24, 2019 through the date the Class is certified.

And the sub-class is defined as

> All Class members against whom Kahrs Law Offices, P.A. filed a lawsuit on or after March 24, 2021 through the date the Class is certified or who were never served with summons.

## VI. Joint Motion for Extension of Time to Mediate

**IT IS FURTHER ORDERED** that the Joint Motion for Extension of Time to Mediate is **GRANTED.**

**IT IS SO ORDERED.**

May 04, 2024
**DATE**                                    **JUDGE KENNETH GARRETT III**

I certify a copy of the above was sent via the E-filing system this day to all counsel of record:

By: Jack C. Barry, Law Clerk to the Honorable Kenneth Garrett, III

**IN THE CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **PATRICIA A. SIMS,** | ) | |
| **on behalf of herself and others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2316-CV13284** |
| | ) | |
| **v.** | ) | **CLASS ACTION PETITION** |
| | ) | |
| **KAHRS LAW OFFICES, P.A.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED CLASS ACTION PETITION**

COMES NOW, Plaintiff Patricia A. Sims ("Sims"), on behalf of herself and others similarly situated, by and through her undersigned counsel, and states and alleges as follows:

**NATURE OF THE CASE**

1.      This is a proposed class action which seeks injunctive relief and damages on behalf of consumers whose personally identifiable information ("PII") was publicly disclosed by Kahrs Law Offices, P.A. ("KLO") in court filings, including their full bank account number and full routing number.

**PROCEDURAL HISTORY**

2.      This case was previously filed in the District of Kansas, Case No. 22-2112-JWB-TJJ, on March 23, 2022. The case was dismissed without prejudice as to refiling on March 31, 2023 by the Court after the Court held that Plaintiff lacked Article III standing. Pursuant to 28 U.S.C. § 1367(d) and RSMo. § 516.230, this matter was filed on May 17, 2023 in Jackson County, Missouri.

3.      Class discovery is complete; class certification has previously been fully briefed and ready to be filed.

1

**TOLLING OF THE STATUTE OF LIMITATIONS**

4.      Plaintiff's and the putative classes' claims have been tolled while the District of Kansas action was pending.

5.      28 U.S.C. § 1367(d) provides that the period of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Missouri law does so provide: RSMo. § 516.230 provides that a plaintiff who has a timely brought action dismissed without prejudice may "commence a new action . . . within one year . . .."

6.      Plaintiff's prior action in the District of Kansas was timely brought before expiration of the statute of limitations.

7.      As such, Plaintiff has commenced this action within a year of the dismissal of the District of Kansas action, thus making her claims timely. Further, under *American Pipe* tolling, the timely filing of a class action lawsuit tolls or pauses the statute of limitations for all members of the putative class.

**PARTIES**

8.      Plaintiff Patricia A. Sims is a Missouri resident and consumer.

9.      Defendant KLO is a Kansas professional association. KLO can be served by serving its registered agent, Jim Spencer, at 1617 N Waterfront Parkway, Suite 400, Wichita, Kansas 67206.

**JURISDICTION & VENUE**

10.      This Court has jurisdiction over these claims because, Defendant has submitted itself to the jurisdiction of the courts of this state by transacting business within the state pursuant to RSMo. § 506.500.1.

Electronically Filed - JACKSON - INDEPENDENCE - May 06, 2024 - 11:04 AM

11.     Venue in this Court is proper pursuant to RSMo. § 508.010.4 because Plaintiff was first injured in Jackson County, Missouri.

**FACTS COMMON TO ALL COUNTS**

12.     Defendant KLO is a debt collector which collects debts owed to others in Kansas and Missouri, and perhaps other surrounding states.

13.     One of KLO' clients is Lakshmi Finance, LLC d/b/a Advance Financial ("Advance Financial").

14.     Advance Financial is a lender who predominantly lends money online. Its only brick-and-mortar locations are in Tennessee but, according to its website, it also lends in other states, including Kansas, Nebraska, and Missouri.[1]

15.     Advance Financial uses a substantially similar agreement with each of its consumers.

16.     In filing lawsuits to collect alleged debts on behalf of Advance Financial, KLO attaches a copy of the agreement to the petition as the basis on which the debt is allegedly owed.

17.     KLO filed approximately 1,000 lawsuits on behalf of Advance Financial in Missouri since 2020.

18.     KLO has filed a copy of the debtor's alleged Agreement on each one of those lawsuits.

19.     KLO did not make any redactions to those Agreements or take other precautions to seal the Agreement or increase security so as to limit access to the Agreement to parties and counsel of parties when it filed those Agreements.

20.     KLO disseminated copies of the unredacted Agreements to process server(s) and/or

---

[1] https://www.af247.com/online-loans/ (last accessed May 11, 2023).

a process service company.

21. Thus, KLO filed approximately 1,000 lawsuits in Missouri publicly disclosing debtors' PII.

22. Upon information and belief, KLO made similar public disclosures as to debtors' bank account and routing numbers in its Kansas filings on behalf of Advance Financial.

**PLAINTIFF PATRICIA A. SIMS**

23. In March 2018, Sims was concerned that she might not have enough funds available to cover the taxes on her house.

24. Due to that concern, Patricia decided to see if she would qualify for a loan and what the terms of such loan might be.

25. Sims found Advance Financial online and decided to initiate the loan application process in case she needed additional funds.

26. Sims filled out an application and was approved, but she never requested nor received any funds from Advance Financial, a fact which was admitted later at the final arbitration hearing on March 28, 2023 by Advance Financial's corporate representative.

27. Despite this, on or about March 24, 2021, Advance Financial, through its attorney and agent KLO, filed a lawsuit in Jackson County, Missouri (Case No. 2116-cv07115; hereinafter "the Lawsuit") against Sims seeking $4,047.42.

28. Sims was served with the petition and summons on July 5, 2021.

29. In filing the Lawsuit, KLO filed a petition along with Exhibit A, a copy of the purported Advance Financial Line of Credit Disclosure and Account Agreement ("Agreement").

30. This Agreement contains the full bank account number and routing number for Sims' personal bank account.

Electronically Filed - JACKSON - INDEPENDENCE - May 06, 2024 - 11:04 AM

31.     Additionally, this Agreement contains Sims' full name, address, and telephone number.

32.     KLO filed a complete, *unredacted* copy of the Agreement with the Court, meaning that KLO made Sims' personal and confidential information publicly available at a minimum to court staff, process servers, and anyone with credentials to access Missouri's case net system.

33.     Further, KLO had Sims personally served with the summons and petition, including a copy of the Agreement. This means that KLO disseminated the unredacted Agreement to a process server and/or a process service company.

34.     On or about July 12, 2021, Sims' counsel left a voicemail for Advance Financial's counsel to inform it that Sims was represented by an attorney. Sims' counsel also mailed Advance Financial's counsel a Notice of Representation and Preservation the same day.

35.     Approximately a week later, on or about July 19, 2021, Advance Financial proceeded to dismiss its lawsuit against Sims *without* prejudice, and without providing an explanation to Sims or Sims' counsel.

36.     Approximately three months after Advance Financial dismissed its lawsuit, Sims brought a lawsuit against Advance Financial in Jackson County, Missouri.

37.     After discovering her PII was filed in unredacted format, Sims' counsel informed Advance Financial that it had discovered it filed her Agreement in its initial lawsuit without taking precautions to protect her PII.

38.     Upon information and belief, Advance Financial informed KLO of this disclosure of PII. As a result of Sims' notice, KLO moved to seal the Agreement. However, this meant Sims' bank account number and routing number were publicly available as a result of Defendant's conduct for nearly a year before the information was sealed by KLO.

39.     KLO has moved to seal similar Agreements in other cases on behalf of Advance Financial. However, KLO has not been successful in sealing the record in all cases where it filed unredacted copies of the Agreement. Therefore, certain consumers' PII remains exposed to this day.

40.     Ms. Sims' claims against Advance Financial relates to the malicious prosecution of her by Advance Financial and are separate and distinct from those claimed in this action which relate solely from the damages relating to the exposure of her PII.

## EFFECTS OF DATA INCIDENTS ON IMPACTED INDIVIDUALS

41.     Given the sensitive nature of the PII published and/or publicly disclosed during the data incident, and its subsequent publication on underground websites, fraudsters across the globe have the ability to commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class members, both currently and on an indefinite, prospective basis.

42.     Further, the impacts of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2013-2016 described that the identity theft they experienced affected their ability to obtain credit, such as student loans, mortgages, and credit cards.[2]

43.     It is no wonder, then, that identity theft exacts a severe emotional toll on its victims. A 2022 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft, including:

- 84% of respondents reported feeling worried or anxious;
- 76% reported feeling violated;
- 65% reported feeling vulnerable;

---

[2] IDENTITY THEFT RES. CTR., *The Aftermath 2017*, https://www.idtheftcenter.org/images/page-docs/Aftermath_2017.pdf (last visited Sept. 28, 2023).

- 57% reported feeling sad or depressed; and
- 10% reported feeling suicidal.[3]

44. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft, including:

- 90% of respondents reported sleep problems;
- 87% experienced heightened stress;
- 57% reported changes in eating or drinking habits;
- 40% reported new physical illnesses (e.g., aches and pains, heart palpitations, sweating, stomach issues); and
- 23% reported a start or relapse into unhealthy or addictive behaviors.[4]

45. Annual monetary losses from identity theft are well into the billions of dollars. According to a 2007 FTC report on identity theft:

In addition to the losses that result when identity thieves fraudulently open accounts . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft—for example, health-related or criminal record fraud—face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.[5]

---

[3] IDENTITY THEFT RES. CTR., *2022 Consumer Impact Report*, https://www.idtheftcenter.org/wp-content/uploads/2023/03/2022-Consumer-Impact-Report_V4.1_2023-Update.pdf (last visited Sept. 28, 2023).
[4] *Id.*
[5] FTC, The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan* (Apr. 2007), at 11, https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited Sept. 28, 2023).

46.     The unauthorized disclosure of sensitive personal identifying information to data thieves also reduces the value to its owner, which has been recognized by courts as an independent form of harm.[6]

47.     And consumers are injured every time their data is published and/or publicly disclosed and placed on the dark web—even if they have been victims of previous data incidents. Indeed, the dark web comprises multiple discrete repositories of stolen, published, and/or publicly disclosed information that can be aggregated or accessed by different criminal actors who intend to use it for different fraudulent purposes. Each data incident increases the likelihood that a victim's personal information will be exposed to more individuals who are seeking to misuse it at the victim's expense, thereby fostering an ongoing, and potentially exponential, form of injury.

48.     Because of the data incident, Plaintiff and Class members have suffered, and will continue to suffer, economic loss and actual non-economic harms for which they are entitled to damages, including, but not limited to, the following:

    a.     invasion of privacy via the non-consensual disclosure of confidential information to third parties;
    b.     diminished value of the PII;
    c.     the value of the unauthorized access of the PII;
    d.     diminished value of explicit and implicit promises of data security;
    e.     costs of fraud related to the theft of the PII;
    f.     costs, both realized and ongoing, associated with the detection and prevention of identity theft;
    g.     unauthorized use of financial accounts and costs related thereto;
    h.     anxiety, emotional distress, and loss of privacy, both realized and ongoing;
    i.     diminished credit scores resulting from credit inquiries following fraudulent activities; and
    j.     costs associated with time spent, lost productivity, stress, and reduced enjoyment of life because of the need to identify, monitor, and mitigate realized and likely future consequences of the data incident.

---

[6] *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp.3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

49.     Even in instances where an individual is reimbursed for a financial loss due to identity theft or related fraud, that does not make that individual whole again as there is typically significant time and effort associated with seeking reimbursement that is not refunded. Likewise, the DOJ's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" caused by identity theft or associated fraud.[7]

50.     There may also be a significant lag between when personal information is published and/or publicly disclosed and when it is actually misused. According to the GAO, which conducted a study regarding data incidents: "law enforcement officials told us that, in some cases, stolen, published, and/or publicly disclosed data may be held for up to a year or more before being used to commit identity theft. Further, once stolen, published, and/or publicly disclosed data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[8]

51.     Plaintiff and Class members seek to recover the value of the unauthorized access to the PII permitted by Defendant's wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property. Like a technology covered by a trade secret or patent, use or access to a person's PII is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret-protected technology.

---

[7] U.S. DEP'T OF JUSTICE, Office of Justice Programs, Bureau of Justice Statistics, Erika Harrell, "Victims of Identity Theft, 2014" (revised Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited Sept. 28, 2023).
[8] U.S. GOV'T ACCOUNTABILITY OFF., Report to Congressional Requesters: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited Sept. 28, 2023).

52.     Nevertheless, a plaintiff may generally recover the reasonable-use value of such intellectual property—i.e., a "reasonable royalty"—from an infringer. This is true even though an infringer's use did not interfere with the owner's own use (as in the case of a nonpracticing patentee) and even though the owner would not have otherwise licensed such intellectual property to an infringer.

53.     A similar royalty or license measure of damages is appropriate here under common-law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a) Plaintiff and Class members have a protectible property interest in the PII; (b) the minimum damages measure for the unauthorized use of personal property is its rental value; and (c) that rental value is established with reference to market value—i.e., based on evidence as to the value of similar transactions.

54.     As a result of Defendant's failure to protect the PII with which it was entrusted, Plaintiff and Class members have been placed at an imminent and ongoing risk of harm from identity theft and identity fraud.

<strong>CLASS ACTION ALLEGATIONS</strong>

55.     Pursuant to Missouri Rule 52.08(b)(2), Plaintiff brings this action on behalf of herself and the following proposed class ("Class"):

> All persons against whom Kahrs Law Offices, P.A. filed a lawsuit in Missouri in which Kahrs Law Offices, P.A. filed court documents which included the person's Personally Identifiable Information, including but not limited to the complete and unredacted bank account number(s) and/or routing number(s), on or after March 24, 2019 through the date the Class is certified.

56.     Pursuant to Missouri Rule 52.08(b)(3), Plaintiff brings this action on behalf of herself and the following sub-class ("FDCPA Sub-Class"):

> All Class members against whom Kahrs Law Offices, P.A. filed a lawsuit on or after March 24, 2021 through the date the Class is certified or who were never

served with summons.

57.    "Class Period" shall thus be defined as on or after March 24, 2019 through the date a Class is certified.

58.    Excluded from the proposed Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned; that judge(s)' spouse; and members of the judge(s)' staff(s).

59.    **Numerosity**: As stated, Defendant has filed approximately 1,000 lawsuits on behalf of Advance Financial against Missouri debtors. Thus, the proposed class would comprise at least 1,000 individuals.

60.    **Commonality and Predominance**: Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include:

   a. Whether Defendant filed a copy of the Agreement in a debt collection lawsuit without redacting the debtor's financial account information;
   b. Whether Defendant was negligent with regard to its filing of lawsuits;
   c. Whether Defendant knew, or should have known, of the PII on the Agreement;
   d. Whether Defendant failed to implement reasonable and adequate redaction policies, procedures, and/or practices;
   e. Whether Defendant took adequate measures to protect Plaintiff and Class members' PII after notification that it failed to redact PII in public filings;
   f. Whether Defendant owed a duty to Plaintiff and Class members to protect their PII;
   g. Whether the public disclosure of a debtor's private financial account number violates various state laws;
   h. Whether Defendant breached its duty to protect the PII of Plaintiff and Class members by failing to redact PII prior to publicly filing it;
   i. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the loss of the PII;
   j. Whether, as a result of Defendant's conduct, Plaintiff and Class members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled; and

k. Whether Plaintiff and Class members are entitled to injunctive relief, monetary damages, restitution, declaratory relief, and/or other remedies.

61. **Typicality**: Plaintiff's claims are typical claims of members of the proposed Class. Plaintiff and the members of the proposed Class all reside in Missouri and were sued by Advance Financial for an alleged debt pursuant to an Agreement. Further, all such claims:

a. Present the same elements and burden of proof;
b. Rely upon Defendant's same course of conduct;
c. Rely upon the same legal arguments; and
d. Rely upon the same methods to measure damages.

62. **Adequacy**: Plaintiff is an adequate representative of the proposed Class because her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class-action litigation and will prosecute this action vigorously on the Class members' behalf.

63. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the same issues, individualized litigation increases the delay and expense to all parties and the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. Likewise, particular issues are appropriate for certification under Rule 52.08(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but

are not limited to:

    a.   Whether Defendant owed a legal duty to Plaintiff and Class members to exercise due care in collecting, storing, and safeguarding the PII; and

    b.   Whether Defendant failed to take reasonable steps to safeguard the PII;

**COUNT ONE:[9]**
**Injunctive Relief**
**Plaintiff individually and on behalf of the proposed Class**

65.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

66.    Plaintiff brings this Count One individually and on behalf of the proposed Class. This injunction is, and should be considered, a public injunction.

67.    On behalf of herself and all Missouri consumers, Plaintiff seeks an injunction preventing KLO from disclosing consumer's personal bank account information in public filings now and in the future. To the extent KLO have previously disclosed consumer's personal bank account information in public filings, Plaintiff seeks an injunction requiring KLO to take actions to seal and/or increase security on such filings if not already completed.

68.    As a result of KLO' actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their PII has been publicly disseminated, such that they are at risk for identity theft and identity fraud.

69.    Further, Plaintiff and the putative class members have suffered a loss of privacy and have been deprived of the value of their PII.

70.    This harm far outweighs any conceivable damage to KLO that could arise from such injunction.

---

[9] Plaintiff recognizes that the Court dismissed this claim on September 17, 2023. Plaintiff includes this claim in her amended petition solely for purposes of preserving the record for appeal.

71.     If not enjoined, KLO will continue to injure the general public through its unlawful practices as alleged herein, which are directed at the consuming public, including Missouri residents.

72.     An injunction, if issued, would be well within the public interest in enforcing confidentiality of personally identifiable information and protecting consumers from an increased risk of identity theft.

73.     Plaintiff and the putative class have no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests the Court enter a preliminary and/or permanent injunction, directing Defendant to remedy the previous public filing of personally identifiable information and not to disclose such information in public filings now and in the future.

## COUNT TWO:
### Negligence
**Plaintiff individually and on behalf of the proposed Negligence Sub-Class**

74.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

75.     Plaintiff brings this Count Two individually and on behalf of the proposed Class.

76.     Pursuant to RSMo. § 509.520.1(2), KLO owed a duty to Plaintiff and the putative class members not to file any pleadings, attachments, or exhibits with the court that contained the "financial account number of any party."

77.     Missouri Supreme Court Operating Rule 2.05(c) defines "Personal information" to include "Financial institution account numbers, credit card numbers, personal identification numbers, or passwords used to secure accounts."

78.     Similarly, Missouri Supreme Court Operating Rule 2.02 requires redaction of personal information in filings and further provides that "the responsibility for any mandatory

redaction of personal information rests solely with counsel, the parties, or any other person filing the document."

79.     At the time KLO filed the Lawsuit and Agreement, KLO was required to "affirmatively certify compliance with the redaction requirements of this [Missouri Supreme Court Operating Rule 2.02]". Missouri Supreme Court Operating Rule 2.02(b).

80.     KLO breached its duty when it publicly filed the Agreement without redacting Plaintiff and the putative class members' bank account numbers and/or routing numbers.

81.     It is reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding Plaintiff's and Class members' PII would result in an unauthorized party gaining access to such information.

82.     But for KLOs' negligence in failing to redact and/or seal Plaintiff and the putative class members' financial account number in the Agreement, Plaintiff and the putative class members would not be damaged.

83.     As a direct and proximate result of KLO's breach, Plaintiff and the putative class members have suffered, and will continue to suffer, damages including, but not limited to: (i) the unconsented lost value of the PII and loss of control over the same; (ii) non-consensual publication of the PII; (iii) anxiety, emotional distress, loss of privacy, and other non-economic injuries; (iv) compensation for the reasonable-use value of the PII; and (v) any nominal damages as deemed appropriate.

84.     Because of the clear statutory obligation, Kahr's conduct also constitutes negligence per se.

85.     Because KLO was required to "affirmatively certify" compliance with the redaction requirements, its conduct was at best grossly negligent.

86.     As a result of KLO's actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their PII has been publicly disseminated, such that they are at risk for identity theft, identity fraud, and/or account takeover.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

<u>**COUNT THREE:**</u>[10]
**Violations of the Missouri Right to Financial Privacy Act**
**Plaintiff individually and on behalf of the proposed Missouri Sub-Class**

87.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

88.     Plaintiff brings this Count Three individually and on behalf of the proposed Class.

89.     Under RSMo. § 408.680, a financial institution, or officer, employee, or agent thereof shall not provide to any government authority access to the financial record of any customer.

90.     Plaintiff and the putative class members are a "customer" as defined by RSMo. § 408.675.2(1) as they each "utilized services of" a financial institution.

91.     Advance Financial is a "financial institution" as defined by RSMo. § 408.675.2(2). Additionally, all, or substantially all creditors on whose behalf KLO filed cases would qualify as a "financial institution."

92.     By acting as a debt collector on behalf of Advance Financial, KLO is an agent of

---

[10] Plaintiff recognizes that the Court dismissed this claim on September 17, 2023. Plaintiff includes this claim in her amended petition solely for purposes of preserving the record for appeal.

Advance Financial.

93.     The Missouri Judiciary is a "government authority" as defined by RSMo. § 408.675.2(4).[11]

94.     The Agreement is a "financial record" as defined by RSMo. § 408.675.2(3) because it is an original or copy of a record held by a financial institution pertaining to a customer's relationship with the financial institution.

95.     By publicly filing the Agreement with the Missouri Judiciary, KLO disclosed Plaintiff and the putative class members' financial records in violation of RSMo. § 408.680.

96.     Plaintiff and the putative class members are given a private cause of action by RSMo. § 408.696.

97.     As a result of this violation, Plaintiff and the putative class members are entitled to statutory damages of $1,000.00, their actual damages, and reasonable attorneys' fees and costs.

98.     As a result of KLO' actions as alleged herein, Plaintiff and the putative class members have suffered and will continue to suffer severe and irreparable harm and injury in that their personally identifiable information has been publicly disseminated, such that they are at risk for identity theft and identity fraud.

99.     Further, Plaintiff and the putative class members have suffered a loss of privacy and have been deprived of the value of their PII.

100.    Plaintiff and the putative class members' actual damages include, but are not limited to, aggravation, inconvenience, embarrassment, frustration, stress, and anxiety.

101.    Defendant's conduct was intentional, willful, wanton, fraudulent, and/or with reckless disregard to the rights of Plaintiff and the putative class members.

---

[11] https://www.mo.gov/search-results?mode=state_agencies.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for her costs and reasonable attorneys' fees, and for other and further relief as may be just and proper under the circumstances.

<u>**COUNT FOUR:**</u>
**Violations of the Federal Debt Collection Practices Act**
**Plaintiff individually and on behalf of the proposed FDCPA Sub-Class**

102.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

103.    Plaintiff brings this Count Four individually and on behalf of the proposed FDCPA Sub-Class.

104.    Plaintiff and the putative FDCPA Sub-Class members' alleged debt arose out of a personal loan, which Plaintiff and the putative class members had filled out an application for personal, family, and/or household purposes.

105.    By filing lawsuits against Plaintiff and the putative FDCPA Sub-Class members, Kahrs has alleged that Plaintiff and the putative FDCPA Sub-Class members owe an obligation to pay money for that personal loan, as outlined more fully above.

106.    These personal loans are a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

107.    Kahrs is in the business of collecting debts. Specifically, Kahrs regularly collects debt on behalf of Advance Financial and, upon information and belief, other creditors.

108.    In this instance, Kahrs did in fact attempt to collect and/or actually collected an alleged debt from Plaintiff and the putative FDCPA Sub-Class members.

109.    Thus, Kahrs is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

Electronically Filed - JACKSON - INDEPENDENCE - May 06, 2024 - 11:04 AM

110.     Additionally, the FDCPA prohibits Kahrs from engaging in unfair practices in connection with attempts to collect a debt. 15 U.S.C. § 1692f.

111.     Violations of § 1692f are not limited to the specifically enumerated conduct.

112.     Kahrs committed an unfair practice when it publicly filed Plaintiff and the putative FDCPA Sub-Class members' personal financial information and placed them at risk of identity theft/identity fraud.

113.     As a result of these actions, Plaintiff and the putative FDCPA Sub-Class members have suffered garden variety emotional distress.

114.     As a result of Kahrs' actions as alleged herein, Plaintiff and the putative FDCPA Sub-Class members have suffered, and will continue to suffer, damages including, but not limited to: (i) the unconsented lost value of the PII and loss of control over the same; (ii) non-consensual publication of the PII; (iii) anxiety, emotional distress, loss of privacy, and other non-economic injuries; (iv) compensation for the reasonable-use value of the PII; and (v) any nominal damages as deemed appropriate.

115.     Pursuant to 15 U.S.C. § 1692k, Plaintiff and the putative FDCPA Sub-Class members are entitled to recover their actual damages, statutory damages in the amount of $1,000.00, and their reasonable attorneys' fees and expenses.

WHEREFORE, Plaintiff, individually and on behalf of the proposed FDCPA Sub-Class, prays for judgment against Kahrs in such amount as is allowable by law and to be determined at trial, for her actual damages, statutory damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT FIVE:**
**Breach of Implied Contract**

**Plaintiff individually and on behalf of the proposed Class**

116.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

117.    Plaintiff brings this Count Five individually and on behalf of the proposed Class.

118.    Plaintiff and the putative class members, as part of their loan agreement with Advance Financial, provided Advance Financial their PII.

> CREDIT AUTHORIZATION. When you request a Cash Advance we will seek to deliver the funds directly to your deposit account via an electronic credit. You authorize us (which includes, for the purposes of this Authorization, our service providers, successors, and assigns) to initiate an electronic credit to the following deposit account or any substitute deposit account you later designate (the "Deposit Account") in the amount of any Cash Advance you request: Account type: checking; Bank routing and transit number: [redacted] and Account Number: [redacted] or some other bank account you provide to us at a later date ("Bank Account").

119.    The loan agreement indicates that Advance Financial may use third-party collection efforts, including attorneys, under the provision "Our Rights in the Event of Default."

> Our Rights in the Event of Default. If you are in default under this Agreement, then following any required notice and cure period we may, at our option and as permitted by law, do any one or more of the following: (i) declare your entire Account balance immediately due and payable and proceed to collect it; (ii) close your Account or lower your Credit Limit; (iii) exercise all other rights, powers, and remedies given by law; and (iv) recover from you all charges, costs and expenses, including
>
> all collection costs, court costs, and reasonable attorney's fees as allowed by law. We may charge and collect interest following default or judgment in our favor at the Periodic Interest Rate disclosed above.

120.    In providing the PII, Plaintiff and the putative class members entered into an implied contract with Advance Financial and any of its debt collectors, including Defendant, whereby they became obligated to reasonably safeguard Plaintiff's and the putative class members' PII.

121.    Under the implied contract, Defendant was obligated to not only safeguard the PII, but also to provide Plaintiff and the putative class members with prompt, adequate notice of any exposure of said PII.

122.    Defendant breached the implied contract with Plaintiff and the putative class members by failing to take reasonable measures to safeguard their PII.

123.    Defendant breached the implied contract with Plaintiff and the putative class

members by failing to provide them prompt, adequate notice of the exposure of the PII.

124.     Plaintiff and the putative class members suffered, and will continue to suffer, damages including, but not limited to: (i) the unconsented lost value of the PII and loss of control over the same; (ii) non-consensual publication of the PII; (iii) anxiety, emotional distress, loss of privacy, and other non-economic injuries; (iv) compensation for the reasonable-use value of the PII; and (v) any nominal damages as deemed appropriate.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Kahrs in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed, and for such other and further relief as may be just and proper under the circumstances.

<u>COUNT SIX:</u>
**Violations of the Missouri Merchandising Practices Act**
**Plaintiff individually and on behalf of the proposed Class**

125.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

126.     The Missouri Merchandising Practices Act ("MMPA"), R.S. Mo. § 407.010 *et seq.*, proscribes "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ."

127.     Pursuant to 15 C.S.R. § 60-8.020, **Unfair Practice in General**, an "Unfair Practice" is any practice which – (A) either (1) offends any public policy as it has been established by the . . . U.S. Constitution, federal statutes, Federal Trade Commission regulations, or statutes or common law of this state, or (2) is unethical, oppressive or unscrupulous; and (B) represents a

risk of, or causes, substantial injury to consumers.

128.     Pursuant to 15 C.S.R. § 60-8.070, **Unilateral Breach of Contract**, "(1) It is an unfair practice for any person in connection with the sale of merchandise to unilaterally breach unambiguous provisions of consumer contracts."

129.     Pursuant to 15 C.S.R. § 60-8.080, **Unconscionable Practices**, "(1) It is an unfair practice for any person in connection with the sale of merchandise to engage in any unconscionable act or practice, or to use any unconscionable contract or contract term."

130.     Pursuant to 15 C.S.R. § 60-8.090, **Illegal Conduct**, "(1) It is an unfair practice for any person in connection with advertisement or sale of merchandise to engage in any method, use or practice which – (A) violates state or federal law intended to protect the public; and (B) presents a risk of, or causes, substantial injury to consumers."

131.     Pursuant to 15 C.S.R. § 60-9.010(1)(C), **Definitions**, a material fact is "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, **or** which would be likely to induce a person to manifest his/her assent, **or** which the seller knows would be likely to induce a particular consumer to manifest his/her assent, **or** which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner." (emphasis added).

132.     Pursuant to 15 C.S.R. § 60-9.020, **Deception in General**, "(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression."

133.     Pursuant to 15 C.S.R. § 60-9.040, **Fraud in General**, "(1) Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious

advantage over another is obtained."

134.    Pursuant to 15 C.S.R. § 60-9.070, **Misrepresentation in General**, "(1) A misrepresentation is an assertion that is not in accord with the facts."

135.    Pursuant to 15 C.S.R. § 60-9.110, **Concealment, Suppression or Omission of Any Material Fact in General**, "(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers … (3) Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."

136.    Plaintiff and Defendant are both a "person" for the purposes of the MMPA.

137.    The legal services that Plaintiff was compelled to obtain because of Defendant's actions was/are "merchandise" for the purposes of the MMPA.

138.    Plaintiff's purchase of the aforementioned merchandise, including legal services, constituted a "sale" in "trade" or "commerce" for the purposes of the MMPA.

139.    Plaintiff acted reasonably with regard to such transactions.

140.    Defendant's violations as outlined herein would cause a reasonable person to enter into the transactions outlined above.

141.    Plaintiff's damages can be proven with sufficiently definitive and objective evidence to allow the losses to be calculated with a reasonable degree of certainty.

142.    Defendant's violations of § 407.020 R.S.Mo. include, but are not necessarily limited to, employing deception, fraud, misrepresentation, false pretense, false promise, unfair practice, concealment, suppression, and/or omission through:

    a.    Failing to perform reasonable due diligence to identify information to redact before publicly filing the Agreement;

143.    Plaintiff and the putative class members suffered, and will continue to suffer,

damages including, but not limited to: (i) the unconsented lost value of the PII and loss of control over the same; (ii) non-consensual publication of the PII; (iii) anxiety, emotional distress, loss of privacy, and other non-economic injuries; (iv) compensation for the reasonable-use value of the PII; and (v) any nominal damages as deemed appropriate.

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Kahrs in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed, reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF JURY TRIAL

Plaintiff designates Independence, Missouri as the place for this case to be tried to a jury.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
Bryce B. Bell     MO#66841
Jenilee V. Zentrich     MO#72781
T. Grant Honnold     MO#
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com
TGH@BellLawKC.com
***Attorneys for Plaintiff and***
***the Proposed Class***